## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ELECTION SYSTEMS & SOFTWARE, LLC, | ) |
| Plaintiff, | ) ) ) ) |
| v. | ) Case No. _____ ) |
| SMARTMATIC USA CORPORATION, | ) ) ) |
| Defendant. | ) **JURY TRIAL DEMANDED** ) ) |

## COMPLAINT

Plaintiff Election Systems & Software, LLC ("ES&S"), for its Complaint of patent infringement against Defendant Smartmatic USA Corporation ("Smartmatic"), hereby alleges as follows:

### Parties

1. ES&S is a Delaware limited liability company with its principal place of business located at 11208 John Galt Blvd., Omaha, Nebraska 68137.

2. Smartmatic is a Delaware corporation with its principal place of business in the United States located at 1001 Broken Sound Pkwy, Suite D, Boca Raton, Florida 33487.

### Jurisdiction and Venue

3. This is an action for patent infringement under 35 U.S.C. § 271 *et seq.* The Court has subject matter jurisdiction over this action under 28 U.S.C. §§ 1331 and 1338(a).

4. The Court has personal jurisdiction over Smartmatic because Smartmatic is a Delaware corporation and registered with the State of Delaware to transact business in Delaware.

5. Venue is proper in this judicial district under 28 U.S.C. § 1400(b) because Smartmatic is incorporated in this district.

## Patents-In-Suit

6. On January 17, 2012, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 8,096,471 (the "'471 patent"), entitled "Ballot Marking Device Having Attached Ballot Box" to co-inventors Eugene M. Cummings and Sean Brockhouse. A true and accurate copy of the '471 patent is attached as Exhibit A.

7. ES&S is the owner by assignment of the '471 patent, including all rights to sue for past, present, and future infringement of the '471 patent.

8. The application that matured into the '471 patent was filed on December 17, 2008. The '471 patent claims priority to provisional patent application No. 61/008,089, filed on December 18, 2007.

9. On July 13, 2010, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 7,753,273 (the "'273 patent"), entitled "Ballot Marking System and Apparatus Utilizing Multiple Key Switch Voter Interface" to inventor Eugene M. Cummings. A true and accurate copy of the '273 patent is attached as Exhibit B.

10. ES&S is the owner by assignment of the '273 patent, including all rights to sue for past, present, and future infringement of the '273 patent.

11. The application that matured into the '273 patent was filed on June 4, 2003. The '273 patent claims priority to provisional patent application No. 60/398,919, filed on July 26, 2002.

## Facts Relating to the '471 Patent and the '273 Patent

12. The '471 patent contains three independent claims and seventeen dependent claims. Independent claim 1 of the '471 patent follows:

1. A ballot marking device adapted to mark a ballot in accordance with selections made by a voter and to either directly deposit the marked ballot into an attached ballot box or return the marked ballot to the voter, the device comprising:

> a presentation device operable to present to the voter a plurality of election choices and a plurality of ballot handling choices;
>
> an input device operable to receive from the voter at least one selection corresponding to the election choices and at least one instruction corresponding to the ballot handling choices;
>
> a marking mechanism operable to record the received voter selection on the ballot;
>
> a transport mechanism operable to transport the ballot through a ballot channel of the device;
>
> a diverter operable to direct the ballot from the transport mechanism into the attached ballot box; and
>
> wherein the presentation device, the input device, the marking mechanism, the transport mechanism, and the diverter are integrated in a single unit.

13.    The '273 patent contains four independent claims and fifteen dependent claims. Independent claim 13 of the '273 patent follows:

> 13. A voting system comprising:
> a ballot marking device;
> one or both of a display screen and a set of headphones in communication with said ballot marking device and configured to present a plurality of contests and a plurality of options associated with each of said contests; and
> a navigation device in communication with said ballot marking device and having a center push-button switch, a first pair of push-button switches positioned above and below said center push-button switch, and a second pair of push-button switches positioned left and right of said center push-button switch, wherein said navigation device is configured such that one of said first and second pairs of push-button switches enables scrolling among said contests, wherein the other of said first and second pairs of push-button switches

enables scrolling among said options; and wherein said center push-button switch enables the entry of at least one voting selection for each of said contests by selecting at least one of said without providing any input on other of said options.

14. Traditionally, elections in the United States were conducted utilizing a paper ballot in which a voter hand-marked his or her votes. Hand-marked selections could be done by pen and paper or by punching holes in a designated space on the ballot.

15. A voter using this traditional hand-marked ballot would take his or her marked ballot and insert it into a ballot box to subsequently be counted in the election.

16. In the years leading to the date of invention in the '471 patent and the '273 patent, the traditional hand-marked paper-based voting system was improved through the use of a ballot scanner to tally hand-marked ballots.

17. Hand-marking paper-ballots and using a ballot scanner system had drawbacks, however, as voters with a physical impairment were unable to vote by manually marking a ballot.

18. In an attempt to remedy this drawback with traditional hand-marked paper ballots, certain elections began using electronic voting terminals where voters could electronically enter a vote directly through an electronic terminal and the vote was tallied on the voting terminal.

19. The prior art electronic voting terminals also had drawbacks, as there was no way to audit the voting process and confirm that each vote is properly tallied. Similarly, there was no way for a voter to confirm that his or her vote was actually counted.

20. Attempts to remedy this drawback resulted in confusing and hard to interpret tapes and slips.

21. Another drawback of electronic voting terminals is they proved to be less efficient because voters required more time to electronically vote than they did to vote by hand-marking paper ballots. Voters had to navigate a plurality of races that may have had a plurality of candidates, which was time consuming. This required a large number of electronic voting terminals at each polling place.

22. The invention claimed in the '471 patent represents a technological improvement over prior art voting machines by, for instance, including a ballot marking device that can return a marked ballot to a voter to feed into a ballot box, or can automatically feed the ballot into the ballot box.

23. The invention claimed in the '471 patent solves the problems of the prior art voting machines and allows for more accurate, secure, and efficient voting.

24. The claimed ballot marking device and method of marking a ballot includes, among other hardware components, a presentation device to present the ballot to the voter, an input device so the voter can input his or her vote, a marking mechanism so that the entered vote can be recorded on the ballot, a transport mechanism that transports a ballot to the ballot box or ejects the ballot from the device, and a diverter which diverts the ballot into the ballot box.

25. The invention claimed in the '273 patent similarly represents a technological improvement over the prior art as it provides, for example, an improved voting system and method of voting that utilizes multiple key switches to allow a voter to navigate and mark his or her selection on a ballot that can contain a plurality of races with a plurality of candidates.

26. The improved voting system and method of voting claimed in the '273 patent includes a display screen that is viewable by the voter, a central push-button switch for making a selection, a pair of push-button switches above and below the central button to allow the voter to

scroll up and down in the display to select between a plurality of candidates, and a second pair of push-button switches horizontally on either side of the central push-button for scrolling between races in the election.

27. This improved system and method allows a voter to more quickly and efficiently navigate a ballot and make voting selections, even if the ballot has multiple races and multiple candidates.

28. The claimed system and method in the '273 patent is a technological improvement over the prior art for voters with disabilities, such as voters with impaired vision, as the improved system and method give the disabled voter increased access to vote in elections and allows the voter to vote independently, confidentially, and accurately.

**Facts Relating to Smartmatic's Infringement**

29. On September 18, 2017, the County of Los Angeles – California ("LA County") issued a Request for Proposals (RFP) Phase 1 – Prequalification, in which LA County requested proposals from voting machine manufacturers to act as prime contractors in providing LA County voting machine implementation and support services for LA County's Voting Solutions For All People (VSAP) project.

30. The September 18, 2017 RFP was the Phase 1 prequalification for the two phase RFP. This RFP was labeled RFP Phase 1 of 2: #17-008.

31. LA County issued its VSAP RFP in an effort to modernize LA County's voting system by contracting with a voting machine manufacturer to manufacture certain ballot marking devices (BMD) and associated hardware and software, as well as by contracting with a company for validation of a ballot tally system with specific requirements requested by LA County.

32. On January 2, 2018, LA County issued Phase 2 of its VSAP RFP. Phase 2 was labeled RFP Phase 2 of 2: #17-008.

33. Only companies that qualified under Phase 1 were eligible to submit proposals as part of the Phase 2 RFP.

34. Both ES&S and Smartmatic participated in the LA County VSAP Phase 1 RFP and qualified to submit a proposal in response to VSAP Phase 2 RFP.

35. ES&S submitted a proposal specific to the requested ballot marking device in accordance with the specifications of LA County's VSAP Phase 2 RFP. ES&S's proposal to LA County was for ES&S to provide ballot marking hardware, software, and firmware that incorporated ES&S's intellectual property, including the patents identified herein. ES&S's proposal provided that ES&S would manufacture, sell, and/or license its ballot marking equipment directly to LA County or indirectly to LA County through a subcontract with the winning prime contractor.

36. Smartmatic makes, uses, imports, offers to sell, and sells voting systems and voting equipment such as voting machines and tabulators that are used to vote in elections.

37. ES&S and Smartmatic are direct competitors in the voting machine industry.

38. On February 23, 2018, ES&S notified Smartmatic and LA County, by letter, that ES&S owns the '471 patent and the '273 patent. ES&S attached copies of the '471 patent and the '273 patent to its February 23, 2018 letter to Smartmatic.

39. Despite ES&S's letter to Smartmatic giving it notice of ES&S's patents on February 23, 2018, in March 2018, Smartmatic submitted an offer as a prime contractor in response to LA County's VSAP Phase 2 RFP for the implementation of voting machines and support services relating to LA County's proposed voting system.

40. On or around June 7, 2018, ES&S became aware that LA County selected Smartmatic as the winning bidder for LA County's VSAP project and that Smartmatic would be manufacturing and selling its BMD voting machines to LA County.

41. On June 7, 2018, ES&S submitted a Freedom of Information Act (FOIA) request to LA County to gather information relating to LA County's VSAP project and, specifically, Smartmatic's proposal to provide BMD voting machines to LA County for LA County's VSAP project.

42. ES&S's FOIA request to LA County sought, for example, the technical documents relating to Smartmatic's proposal for the LA County's VSAP project and the final design of Smartmatic's BMD for the LA County VSAP project.

43. On June 27, 2018, ES&S received a response from LA County to ES&S's FOIA request. In its response (attached as Exhibit C), LA County notified ES&S that it would be withholding documents that are responsive to ES&S's FOIA request. One basis that LA County asserted for withholding responsive documents was that certain documents contained allegedly "confidential, proprietary, and trade secret information, such as financial and technical information . . . ." Exhibit C.

44. On July 9, 2018, ES&S received documents from LA County that were not withheld in response to ES&S's FOIA request. These documents contained, for example, Smartmatic's offer to sell BMD voting machines to LA County to fulfill the VSAP project, as well as the contract between LA County and Smartmatic for Smartmatic to manufacture BMD voting machines for the LA County VSAP project. LA County's production of documents contained redactions of certain information.

45. LA County's production did not contain the technical drawings and other technical documents referenced in the Smartmatic-LA County contract. LA County withheld these technical documents that were requested by ES&S.

46. Despite LA County's withholding of certain technical documents from its FOIA production, a review of the documents produced by LA County were consistent with ES&S's belief that the BMD offered by Smartmatic to LA County as part of Smartmatic's winning VSAP project bid infringed the '471 patent and the '273 patent.

47. In addition to the information produced by LA County in response to ES&S's FOIA request, a review of other publicly available information provides further information regarding the LA County VSAP BMD that is consistent with ES&S's infringement beliefs.

48. Based on the publicly available information, and the information produced by LA County in response to ES&S's FOIA request, ES&S sent a letter to Smartmatic's outside counsel on July 19, 2018, informing Smartmatic that ES&S believed Smartmatic's participation in the LA County VSAP project infringed and continues to infringe the '471 patent and the '273 patent. ES&S's July 19, 2018 letter to Smartmatic is attached as Exhibit D.

49. In its July 19, 2018 letter to Smartmatic, ES&S identified and explained ES&S's belief that Smartmatic's BMD offered to LA County for LA County's VSAP project infringes ES&S's patents. Through publicly available information, ES&S identified how Smartmatic's BMD meets each limitation of certain claims of the '471 patent and the '273 patent.

50. In its July 19, 2018 letter, ES&S asked Smartmatic the following: "If it is your position that [your BMD voting machine] design is not covered by the '273 patent [or the '471 patent], then please provide the basis for your position and documents that support your position by July 27, 2018. If it is your position that the above images do not represent the final design of

Case 1:18-cv-01259-RGA   Document 1   Filed 08/17/18   Page 10 of 16 PageID #: 10

the VSAP ballot marking device, then please provide ES&S with the final design of the VSAP ballot marking device and documents to support your position by July 27, 2018." Exhibit D.

51. On July 26, 2018, counsel for Smartmatic responded to ES&S's July 19, 2018 letter by stating, in part, that "Smartmatic intends to respond in due course and anticipates providing a written response in the next one to two weeks."

52. On July 27, 2018, counsel for ES&S responded to Smartmatic's counsel's July 26, 2018 email stating that "Smartmatic has been on notice of these patents for a long time in the context of the LA County VSAP project." Counsel for ES&S further stated that if Smartmatic "believes [it has] a meritorious defense concerning any of the [patents asserted in ES&S's July 19 letter], then please send it to me by next Friday, August 3, 2018." Exhibit E.

53. Smartmatic's counsel responded on August 3, 2018 by refusing to either "confirm or deny ES&S's . . . assumptions, let alone provide ES&S with Smartmatic's legal analysis and documents" relating to ES&S's infringement allegations. Exhibit F.

54. On August 6, 2018, counsel for ES&S gave Smartmatic a final opportunity to explain why Smartmatic's BMD design offered for sale to LA County as part of the LA County VSAP project does not infringe ES&S's patents. Exhibit G.

55. On August 10, 2018, counsel for Smartmatic responded and again failed to provide any basis for why the BMD offered by Smartmatic in response to the LA County VSAP RFP did not infringe ES&S's patents, other than to imply that Smartmatic's response to the LA County's RFP was not an "offer for sale" to LA County. Exhibit H.

56. Based on publicly available information, and after reasonable inquiry, ES&S believes, to the best of its knowledge, information, and belief, that Smartmatic is infringing ES&S's '471 patent and '273 patent.

57. Had Smartmatic respected the intellectual property rights of ES&S, then ES&S would have made the sale of all ballot marking equipment, voting machines, and software to LA County for LA County's VSAP project. ES&S has suffered a loss of its profits on such sales as a direct result of Smartmatic's tortious conduct as alleged more fully herein.

58. On information and belief, Smartmatic has made, used, sold, or offered for sale its BMD for the LA County VSAP project which, based on publicly available information and pre-suit correspondence with Smartmatic, implements the specific elements described and claimed in ES&S's '471 patent and '273 patent. In accordance with Fed. R. Civ. P. 11(b)(3), based at least on publicly available information and pre-suit correspondence between ES&S and Smartmatic, ES&S believes that its allegations will have additional evidentiary support after a reasonable opportunity for discovery.

## COUNT I

### Infringement of U.S. Patent No. 8,096,471 by Smartmatic

59. ES&S realleges and incorporates by reference Paragraphs 1 through 58 above, as if fully set forth herein.

60. ES&S is the assignee and owner of all rights, title, and interest in and to the '471 patent.

61. Smartmatic has directly infringed at least claims 1 and 16 of the '471 patent under 35 U.S.C. § 271(a) by making, using, importing, offering to sell, and/or selling the Smartmatic BMD to LA County, within the United States, for LA County's VSAP project. Smartmatic's direct infringement is ongoing.

62. Smartmatic was objectively aware of, and had knowledge of, the '471 patent at least as early as February 23, 2018, when ES&S sent a copy of the '471 patent to Smartmatic.

63. Smartmatic has committed and continues to commit acts of infringement under 35 U.S.C. § 271 by making, using, importing, offering to sell, and/or selling the Smartmatic BMD to LA County for LA County's VSAP project. In committing these acts of infringement, Smartmatic acted despite having knowledge of the '471 patent and knowledge that its actions constituted infringement of at least one valid and enforceable claim of the '471 patent.

64. At a minimum, Smartmatic acted with knowledge of the '471 patent and despite an objectively high likelihood that its actions constituted infringement of at least one valid and enforceable claim of the '471 patent. And Smartmatic knew or should have known that its actions constituted an unjustifiably high risk of infringement of at least one valid and enforceable claim of the '471 patent.

65. Smartmatic's intentional and knowing infringement of the '471 patent occurred despite multiple warnings from ES&S that ES&S owned the '471 patent and Smartmatic's offering of a BMD for the LA County VSAP project would likely infringe the '471 patent.

66. Smartmatic's infringement of the '471 patent has been knowing and willful.

67. Smartmatic's infringement and behavior was egregious in light of ES&S's notice to Smartmatic.

68. As a direct and proximate result of Smartmatic's acts of infringement, ES&S has suffered and continues to suffer damages and irreparable harm.

69. ES&S has no adequate remedy at law for Smartmatic's acts of infringement and unless Smartmatic's acts of infringement are enjoined, ES&S will continue to be damaged and irreparably harmed.

## COUNT II

### Infringement of U.S. Patent No. 7,753,273 by Smartmatic

70. ES&S realleges and incorporates by reference Paragraphs 1 through 69 above, as if fully set forth herein.

71. ES&S is the assignee and owner of all rights, title, and interest in and to the '273 patent.

72. Smartmatic has directly infringed at least claim 13 of the '273 patent under 35 U.S.C. § 271(a) by making, using, importing, offering to sell, and/or selling the Smartmatic BMD to LA County, within the United States, for LA County's VSAP project. Smartmatic's direct infringement is ongoing.

73. Smartmatic was objectively aware of, and had knowledge of, the '273 patent at least as early as February 23, 2018, when ES&S sent a copy of the '273 patent to Smartmatic.

74. Smartmatic has committed and continues to commit acts of infringement under 35 U.S.C. § 271 by making, using, importing, offering to sell, and/or selling the Smartmatic BMD to LA County for LA County's VSAP project. In committing these acts of infringement, Smartmatic acted despite having knowledge of the '273 patent and knowledge that its actions constituted infringement of at least one valid and enforceable claim of the '273 patent.

75. At a minimum, Smartmatic acted with knowledge of the '273 patent and despite an objectively high likelihood that its actions constituted infringement of at least one valid and enforceable claim of the '273 patent. And Smartmatic knew or should have known that its actions constituted an unjustifiably high risk of infringement of at least one valid and enforceable claim of the '273 patent.

76. Smartmatic's intentional and knowing infringement of the '273 patent occurred despite multiple warnings from ES&S that ES&S owned the '273 patent and Smartmatic's offering of a BMD for the LA County VSAP project would likely infringe the '273 patent.

77. Smartmatic's infringement of the '273 patent has been knowing and willful.

78. Smartmatic's infringement and behavior was egregious in light of ES&S's notice to Smartmatic.

79. As a direct and proximate result of Smartmatic's acts of infringement, ES&S has suffered and continues to suffer damages and irreparable harm.

80. ES&S has no adequate remedy at law for Smartmatic's acts of infringement and unless Smartmatic's acts of infringement are enjoined, ES&S will continue to be damaged and irreparably harmed.

## Jury Demand

Under Rule 38(b) of the Federal Rules of Civil Procedure, ES&S demands a trial by jury of all issues so triable.

## Prayer for Relief

WHEREFORE, ES&S respectfully requests that the Court enter judgment against Smartmatic and respectfully prays that the Court enter an order:

A. Finding that Smartmatic has directly infringed one or more claims of the '471 patent and the '273 patent under 35 U.S.C. § 271(a);

B. Enjoining Smartmatic and its officers, agents, servants, employees, and representatives, and all others in active concert or participation with it, from further infringing the '471 patent and the '273 patent and from further manufacture, use, importation, offer for sale, and sale of the infringing Smartmatic BMD voting machine;

  C. Awarding damages to ES&S to compensate ES&S under 35 U.S.C. § 284 for Smartmatic's ongoing infringement of the '471 patent and the '273 patent, including compensating ES&S for its lost profits;

  D. Finding that Smartmatic's infringement has been willful;

  E. Trebling the damage award under 35 U.S.C. § 284;

  F. Finding this to be an exceptional case under 35 U.S.C. § 285 and awarding ES&S its reasonable attorney fees and expenses in this action;

  G. Awarding ES&S pre-judgment and post-judgment interest;

  H. Awarding ES&S its costs in this action; and

  I. Awarding such other and further relief as the Court deems just and proper.

Dated: August 17, 2018

Respectfully submitted,

ROGOWSKI LAW LLC

By: /s/ Patricia S. Rogowski
Patricia Smink Rogowski, Del. Bar ID #2632
501 Silverside Road, Suite 11
Silverside Carr Executive Center
Wilmington, DE 19809
Tel: (302) 893-0048
pat@rogowskilaw.com

SENNIGER POWERS LLP

Robert M. Evans, Jr., Mo Bar #35613
(*Pro Hac Vice* forthcoming)
Michael J. Hartley, Mo Bar #55057
(*Pro Hac Vice* forthcoming)
Kyle G. Gottuso, Mo Bar #64869
(*Pro Hac Vice* forthcoming)

Micah T. Uptegrove, Mo Bar #69401
(*Pro Hac Vice* forthcoming)
100 North Broadway, 17th Floor
St. Louis, MO 63102
Tel: (314) 345-7000
Fax: (314) 345-7600
revans@senniger.com
mhartley@senniger.com
kgottuso@senniger.com
muptegrove@senniger.com

*Attorneys for Plaintiff Election Systems & Software, LLC*