# EXHIBIT A

UNITED STATES PATENT AND TRADEMARK OFFICE

————————

BEFORE THE PATENT TRIAL AND APPEAL BOARD

————————

SMARTMATIC USA CORPORATION,
Petitioner,

v.

ELECTION SYSTEMS AND SOFTWARE, LLC,
Patent Owner.

————————

IPR2019-00527
Patent 7,753,273 B2

————————

Before GEORGIANNA W. BRADEN, JEFFREY W. ABRAHAM, *and*
SHELDON M. McGEE, *Administrative Patent Judges.*

ABRAHAM, *Administrative Patent Judge*.

JUDGMENT
Final Written Decision
Determining Some Challenged Claims Unpatentable
Granting Patent Owner's Motion to Amend
*35 U.S.C. § 318(a)*

# I.    INTRODUCTION

Smartmatic USA Corporation ("Petitioner") filed a Petition (Paper 1, "Pet.") requesting *inter partes* review of claims 1–19 of U.S. Patent No. 7,753,273 B2 (Ex. 1001, "the '273 patent").  Election Systems and Software, LLC ("Patent Owner") filed a Preliminary Response to the Petition (Paper 10, "Prelim. Resp.").

On August 8, 2019, we instituted an *inter partes* review of all of the challenged claims based on all of the grounds identified in the Petition.  Paper 11 ("Inst. Dec.").  Subsequently, Patent Owner filed a Response (Paper 17, "PO Resp."), Petitioner filed a Reply (Paper 21) and Patent Owner filed a Sur-reply (Paper 26).

Patent Owner also filed a Contingent Motion to Amend (Paper 18, "Motion" or "Mot."), requesting the Board provide preliminary guidance on its Motion, and Petitioner filed an Opposition to Patent Owner's Motion (Paper 20, "Opp.").  On February 18, 2020, we issued our Preliminary Guidance on Patent Owner's Motion to Amend.  Paper 23.  Patent Owner subsequently filed a Reply in support of its Motion (Paper 25, "PO Mot. Reply") and Petitioner filed a Sur-reply (Paper 30, "Pet. Mot. Sur-reply") to Patent Owner's Reply.

An oral hearing was held on May 6, 2020, and a transcript of the hearing has been entered into the record.  Paper 31 ("Tr.").

We have jurisdiction under 35 U.S.C. § 6.  This Final Written Decision is issued pursuant to 35 U.S.C. § 318(a).  For the reasons that follow, we determine Petitioner has shown by a preponderance of the evidence that claims 1–3, 5–7, 9–11, 13–15, and 17–19, of the '273 patent are unpatentable but that Petitioner has not shown that claims 4, 8, 12, and

16 are unpatentable.  We also grant Patent Owner's Contingent Motion to Amend.

### A. Related Proceedings

The parties indicate that the '273 patent is at issue in *Election Systems & Software, LLC v. Smartmatic USA Corp.,* Civil Action No. 1:18-cv-1259-RGA (D. Del.).  Pet. 2; Paper 9, 2.

### B. The '273 Patent

The '273 patent, titled "Ballot Marking System and Apparatus Utilizing Multiple Key Switch Voter Interface," issued on July 13, 2010. Ex. 1001, codes (45), (54).  The '273 patent is directed to "an improved voting system which utilizes a voter-readable and machine-readable physical ballot which can be either hand marked in a voting booth, or electronically marked at an electronic voting station by means of a touch screen voting terminal and associated marking device."  Ex. 1001, 2:12–17.  One embodiment of the improved voting system is shown in Figure 19 of the '273 patent, reproduced below.



Fig. 19

Figure 19 shows voter assistance terminal 300 comprising ballot marking device 302, touch-screen voting terminal 304, headphones 310, and navigation panel 312. Ex. 1001, 13:63–65, 14:25–32. The '273 patent explains that a voter has the option of marking a ballot manually or inserting it into ballot receiving slot 308 for electronic marking. Ex. 1001, 14:8–12. Terminal 300 draws in the ballot and scans it, and presents a series of voting choices on touchscreen 304 corresponding to the scanned ballot. Ex. 1001, 14:12–16. The '273 patent further explains that

> in the event that the voter cannot use the touchscreen 304 due to the severe physical impairment, blindness or any other reason, he or she can navigate through these menus via a headphone 310 and sub-panel 312 combination. More particularly, a blind voter (for example) would wear the headphones 310 which are connected to the marking device 302 via headphone wire 314 and jack 316 into plug 318.

Ex. 1001, 14:26–32. Sub-panel 312 preferably comprises four arrow keys (up, down, left, and right) and an enter key. Ex. 1001, 14:37–39. According

to the '273 patent, a blind voter can navigate through the voting choices using these keys in conjunction with pre-recorded, digitized audio prompts heard through headphones 310. Ex. 1001, 14:41–44. Once the voter has finished with his or her choices, the printing mechanism marks the ballot according to the voter's choices, and feeds the ballot back to the voter through slot 308. Ex. 1001, 14:55–61.

*C. Illustrative Claim*

Petitioner challenges claims 1–19 of the '273 patent. Independent claim 1 is illustrative of the challenged claims and is reproduced below:

> 1. A method of voting that allows a voter to navigate a plurality of contests and a plurality of options associated with each of said contests, said method comprising:
>
> providing a navigation device comprising a center push button switch, a first pair of push-button switches positioned above and below said center push-button switch, and a second pair of push-button switches positioned left and right of said center push-button switch;
>
> presenting said contests and said associated options to the voter, wherein one of said first and second pairs of push button switches enables the voter to scroll among said contests, and wherein the other of said first and second pairs of push-button switches enables the voter to scroll among said options; and
>
> receiving a plurality of voting selections from the voter, wherein said center push-button switch enables the voter to make at least one voting selection for each of said contests by selecting at least one of said options without providing any input on other of said options.

Ex. 1001, 18:14–33.

*D. Reviewed Challenges to Patentability*

| Reference(s) | 35 U.S.C. § | Claims Challenged |
|---|---|---|
| Nguyen[1] | 102 | 1, 4, 9, 12, 13, 16 |
| Nguyen, Marshall[2] | 103 | 2, 3, 10, 11, 14, 15 |
| Nguyen, McDermott[3] | 103 | 17–19 |
| Neff[4], Nguyen | 103 | 5, 8 |
| Neff, Nguyen, Marshall | 103 | 6, 7 |
| Neff, Marshall | 103 | 1–8 |
| Neff, Marshall, McDermott | 103 | 9–19 |

*E. Level of Ordinary Skill in the Art*

Petitioner contends that a person of ordinary skill in the art "would have a Bachelor's degree in electrical engineering or computer science and at least two years' experience with user interface design and voting systems." Pet. 10 (citing Ex. 1022[5] ¶ 63).

Patent Owner argues that the requirement of experience with interface design in Petitioner's proposal is "not in line with the requirements of the

---

[1] Nguyen et al., US 7,128,263 B1, issued Oct. 31, 2006 (Ex. 1005).

[2] Diarmid Marshall et al., *User performance and attitude towards schemes for alphanumeric data entry using restricted input devices,* 3 J. Behaviour & Information Tech., 20 (2001), 167–188 (Ex. 1006).

[3] McDermott et al., US 2002/0072961 A1, published June 13, 2002 (Ex. 1008).

[4] Neff et al., US 2002/0078358 A1, published June 20, 2002 (Ex. 1007).

[5] Declaration of Benjamin B. Bederson, Ph.D ("the Bederson Declaration").

inventions embodied in the Challenged Claims." PO Resp. 21. Instead, Patent Owner contends that a person of ordinary skill in the art "would have at least a Bachelor's degree in electrical engineering or computer science and at least two years' experience with user interfaces and the internal software and electrical and mechanical mechanisms of electronic voting machines." PO Resp. 21.

In its Reply, Petitioner asserts that Patent Owner's definition is "inappropriate" because (1) the '273 patent claims do not involve internal software or mechanical mechanisms of electronic voting machines, (2) the '273 patent is not limited to "electronic voting machines" but instead claims voting systems, and (3) the '273 patent claims are related to interface design, which Patent Owner's definition omits. Reply 1–2 (citing Ex. 1027, 13:8–15, 20:16–21:1, 25:21–26:13, 26:24–27:9; Ex. 1022 ¶ 63; Ex. 1042[6] ¶¶ 21–23).

In light of the record before us, we adopt Petitioner's proposed definition regarding the level of ordinary skill in the art. Petitioner's proposal, which includes two years of experience with interface design and voting systems is sufficiently broad such that it encompasses Patent Owner's definition. For example, experience with voting systems in general, as Petitioner proposes, would include knowledge of the electrical and mechanical mechanisms of electronic voting machines, as recited in Patent Owner's definition. Furthermore, knowledge of user interface designs, included in Petitioner's definition, would include knowledge of the internal software associated with those designs, which Patent Owner includes in its

---

[6] Second Declaration of Benjamin B. Bederson, Ph.D ("the Second Bederson Declaration").

definition. Ex. 1042 ¶ 22. As such, we find that a person meeting Petitioner's definition of a person of ordinary skill in the art would also meet Patent Owner's definition.

In view of the foregoing, we agree with Petitioner that a person of ordinary skill in the art would have had a Bachelor's degree in electrical engineering or computer science and at least two years of experience with user interface design and voting systems. This level of skill is consistent with the field of endeavor of the '273 patent, and is reflected by the prior art of record. *See Okajima v. Bourdeau*, 261 F.3d 1350, 1355 (Fed. Cir. 2001); *In re GPAC Inc.*, 57 F.3d 1573, 1579 (Fed. Cir. 1995); *See, e.g.*, Ex. 1001; Ex. 1027, 13:8–15, 20:16–21:1, 25:21–26:13, 26:24–27:9; Ex. 1022 ¶ 63; Ex. 1042 ¶¶ 21–23. Furthermore, we note that neither party argues that the outcome of this case would differ based on our adoption of a particular definition of one of ordinary skill in the art.

## II. ANALYSIS

### A. Claim Construction

In an *inter partes* review, we construe claim terms according to the standard set forth in *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312–17 (Fed. Cir. 2005) (en banc). 37 C.F.R. § 42.100(b) (2019). Under *Phillips*, claim terms are afforded "their ordinary and customary meaning." *Phillips*, 415 F.3d at 1312. "[T]he ordinary and customary meaning of a claim term is the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention." *Id.* at 1313. "Importantly, the person of ordinary skill in the art is deemed to read the claim term not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent, including the specification." *Id.*

Petitioner proposes constructions for four terms: "push-button switch(es)," "scroll," "auxiliary push-button switches," and "remote." Pet. 11–12; Reply 8–10.

Patent Owner asserts that we should construe the phrases: "presenting said contests and said associated options to the voter," "push-button switches enables the voter to . . .," "presenting said contests and said associated options to the voter, wherein . . ., and wherein . . . ," and "remote." PO Resp. 24–30.

After reviewing the parties' arguments and evidence, we determine that we only need to expressly construe the phrase "presenting said contests and said associated options to the voter, wherein . . ., and wherein . . . ." *See Nidec Motor Corp. v. Zhongshan Broad Ocean Motor Co.*, 868 F.3d 1013, 1017 (Fed. Cir. 2017) (citing *Vivid Techs., Inc. v. Am. Sci. & Eng'g, Inc.*, 200 F.3d 795, 803 (Fed. Cir. 1999) ("[O]nly those terms need be construed that are in controversy, and only to the extent necessary to resolve the controversy."))[7]

> *"presenting said contests and said associated options to the voter, wherein . . ., and wherein . . . ,"*

Independent claim 1 recites the following limitation:

presenting said contests and said associated options to the voter, wherein one of said first and second pairs of push-button switches enables the voter to scroll among said contests, and wherein the other of said first and second pairs of push-button switches enables the voter to scroll among said options.

---

[7] We do not find it necessary to provide an express claim construction of "remote" beyond what we discuss as part of our patentability analysis set forth below in Section II.E. The discussion there provides a better context to explain the dispute relating to this claim term and our resolution of that dispute.

Ex. 1001, 18:23–28.  Claims 5 and 9 contain similar language, with claim 5 requiring visually presenting the contests and options on a display screen, and claim 9 requiring audibly presenting the contests and options via headphones.  Ex. 1001, 18:56–62 (claim 5), 19:22–28 (claim 9).

Patent Owner first argues that "presenting said contests and said associated options" requires "communicating to the voter the name of each of the contests and an identifier for each of the respective options for which a vote may be cast in such contests."  PO Resp. 24–25.  According to Patent Owner, the '273 patent requires contests and options to be communicated to the voter graphically and/or audibly by naming the contest and options separately.  PO Resp. 24.  Patent Owner argues that "presenting" the contest means more than just displaying the options – it requires explaining what the contest is.  Tr. 26:8–10.  Otherwise, the claim language "presenting the contest" would be superfluous, because it would be met simply by presenting the options.  Tr. 26:17–20.

Patent Owner next argues that the two "wherein" clauses "signify that the step of presenting contests is performed via scrolling."  PO Resp. 28.  According to Patent Owner, "[t]he direct link between scrolling and presenting is clear from the syntax," noting the clauses appear in the same sub-paragraph and the use of commas to connect the wherein clauses and the presenting clause instead of semi-colons and paragraph breaks.  PO Resp. 28–29.  Patent Owner further argues that "[t]he specification discloses that the contests and options are visually or audibly presented to the voter as the voter scrolls among options using the vertical arrow buttons 322, 324 and scrolls among the contests using the horizontal arrow buttons 326, 328."  PO Resp. 29 (citing Ex. 2001 ¶¶ 99–100).  Under Patent Owner's

construction, "[w]hen the ballot is presented audibly, a recording of the name of each contest is played as the voter scrolls through the contests and a recording of the name of each candidate/option . . . is played as the voter scrolls among the options for a contest." Sur-reply 1–2.

Petitioner contends that this clause does not require further construction, "as its meaning is readily apparent." Reply 7. Petitioner does not further expressly dispute Patent Owner's proposed construction, other than to argue that it improperly broadens the scope of the claim term because it eliminates the requirement that one pair of push-button switches enables the voter to scroll among contests and the other pair of push-button switches enables the voter to scroll among options. Reply 8. In other words, Petitioner contends that Patent Owner's proposed construction allows for the same pair of push-button switches to enable scrolling among contests and options. Reply 7–8; Tr. 50:17–51:16.

After considering the parties' arguments and evidence, we decline to adopt Patent Owner's proposed construction for the reasons set forth below. Instead, we interpret this phrase according to its plain and ordinary meaning as having three separate requirements, (1) presenting contests and associated options, (2) one of the first and second pairs of push-button switches enables the voter to scroll among said contests, and (3) the other of the first and second pairs of push-button switches enables the voter to scroll among said options.

We begin with the language of the claim itself. *Phillips,* 415 F.3d at 1314 ("[T]he claims themselves provide substantial guidance as to the meaning of particular claim terms."). Nothing in the claim expressly connects the presenting step with scrolling, such that the claim requires the

contest to be presented *as the voter scrolls among the contests*, as Patent Owner contends. Instead, the claim sets forth the step of presenting contests, and separately recites that one pair of push-button switches enables a voter to scroll among the contests. The fact that the clauses are part of the same sub-paragraph and the placement of commas does not justify Patent Owner's attempt to introduce a limitation into the claim requiring a "direct link" between presenting and scrolling. PO Resp. 28.

Patent Owner relies on testimony from Dr. Shamos to support its argument that its construction corresponds to the disclosure in the '273 patent. PO Resp. 29 (citing Ex. 2001 ¶¶ 99–100). According to Dr. Shamos, "[w]hen the headphones 310 are used instead, scrolling with the horizontal arrow buttons 326, 328 causes the voter assistance terminal 300 to play pre-recorded audio with the name of the contest. [Ex. 1001,] 14:41–44." Ex. 2001 ¶ 99. The cited portion of the '273 patent specification states that a visually impaired voter can "navigate[] through the menus using these keys in conjunction with pre-recorded, digitized audio prompts heard through headphones 310." Ex. 1001, 14:41–44. This portion of the '273 patent specification does not establish the "direct link" between presenting and scrolling such that scrolling through the contests necessarily causes the system to audibly present the name of a contest. Rather, this language generally discloses that a visually impaired voter can vote use push-buttons and audio prompts.

Patent Owner also directs us to the portion of the '273 patent specification stating "the left 326 and right key buttons 328 allow the voter to scroll between contests or races such that the previous or next screen is displayed and/or heard on a real-time basis." Ex. 1001, 17:2–4; PO

Resp. 24. Although the disclosure of hearing the content "on a real-time basis" is consistent with Patent Owner's proposed construction, it is clear from the '273 patent specification that this is a characteristic of a "sample election selection process," as opposed to a requirement of the present invention itself. Ex. 1001, 16:60–17:4. Patent Owner has not directed us to evidence sufficient to indicate that this disclosure is anything other than one exemplary way to allow a voter to navigate the voting process "using the key buttons in combination with the digitized audio voting sequence heard through the headphones." *See* Ex. 1001, 16:32–36; *Texas Digital Sys., Inc., v. Telegenix, Inc.*, 308 F.3d 1193, 1204 (Fed. Cir. 2002) (noting that Federal Circuit precedent "counsels against importing limitations into the claims").

Based on the language of the claim itself, and in the absence of any contradictory intrinsic evidence, we interpret the phrase "presenting said contests and said associated options to the voter, wherein one of said first and second pairs of push-button switches enables the voter to scroll among said contests, and wherein the other of said first and second pairs of push-button switches enables the voter to scroll among said options" as having three separate requirements: (1) presenting contests and associated options, (2) one of the first and second pairs of push-button switches enables the voter to scroll among said contests, and (3) the other of the first and second pairs of push-button switches enables the voter to scroll among said options.

### B. Principles of Law

#### 1. Burden of Proving Unpatentability

In an *inter partes* review, the petitioner bears the burden of proving unpatentability of the challenged claims, and the burden of persuasion never shifts to the patent owner. *Dynamic Drinkware, LLC v. Nat'l Graphics, Inc.*,

800 F.3d 1375, 1378 (Fed. Cir. 2015). To prevail in this proceeding, Petitioner must support its challenges by a preponderance of the evidence. 35 U.S.C. § 316(e); 37 C.F.R. § 42.1(d). Accordingly, all of our findings and conclusions are based on a preponderance of the evidence.

### 2. Anticipation

"A claim is anticipated only if each and every element as set forth in the claim is found, either expressly or inherently described, in a single prior art reference." *Verdegaal Bros. Inc., v. Union Oil Co.*, 814 F.2d 628, 631 (Fed. Cir. 1987). Moreover, "[b]ecause the hallmark of anticipation is prior invention, the prior art reference—in order to anticipate under 35 U.S.C. § 102—must not only disclose all elements of the claim within the four corners of the document, but must also disclose those elements 'arranged as in the claim.'" *Net MoneyIN, Inc. v. VeriSign, Inc.*, 545 F.3d 1359, 1369 (Fed. Cir. 2008). Whether a reference anticipates is assessed from the perspective of an ordinarily skilled artisan. *See Dayco Prods., Inc. v. Total Containment, Inc.*, 329 F.3d 1358, 1368 (Fed. Cir. 2003) ("[T]he dispositive question regarding anticipation [i]s whether *one skilled in the art* would reasonably understand or infer from the [prior art reference's] teaching that every claim element was disclosed in that single reference."). In that regard, in an anticipation analysis, "it is proper to take into account not only specific teachings of the reference but also the inferences which one skilled in the art would reasonably be expected to draw therefrom." *In re Preda*, 401 F.2d 825, 826–27 (CCPA 1968). Furthermore, "[i]t is well settled that the recitation of a new intended use for an old product does not make a claim to that old product patentable." *In re Schreiber*, 128 F.3d 1473, 1477 (Fed. Cir. 1997).

*3. Obviousness*

A patent claim is unpatentable under 35 U.S.C. § 103(a) if the differences between the claimed subject matter and the prior art are such that the subject matter, as a whole, would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. *KSR Int'l Co. v. Teleflex Inc*., 550 U.S. 398, 406 (2007). The question of obviousness is resolved on the basis of underlying factual determinations, including (1) the scope and content of the prior art; (2) any differences between the claimed subject matter and the prior art; (3) the level of skill in the art; and (4) objective evidence of nonobviousness.[8] *Graham v. John Deere Co.*, 383 U.S. 1, 17–18 (1966).

"[A] a patent composed of several elements is not proved obvious merely by demonstrating that each of its elements was, independently, known in the prior art." *KSR*, 550 U.S. at 418. Rather, "it can be important to identify a reason that would have prompted a person of ordinary skill in the relevant field to combine the elements in the way the claimed new invention does." *Id.* Furthermore, a party seeking to demonstrate that a patent would have been obvious must show that "a skilled artisan would have been motivated to combine the teachings of the prior art references to achieve the claimed invention, and that the skilled artisan would have had a reasonable expectation of success in doing so." *Kinetic Concepts, Inc. v. Smith & Nephew, Inc.*, 688 F.3d 1342, 1360 (Fed. Cir. 2012) (quoting *Procter & Gamble Co. v. Teva Pharm. USA, Inc.*, 566 F.3d 989, 994 (Fed.

---

[8] The parties do not present any evidence regarding objective indicia of nonobviousness, and, therefore, we do not address this factual determination in our obviousness analyses below.

Cir. 2009)). Ultimately, "there must be some articulated reasoning with some rational underpinning to support the legal conclusion of obviousness." *In re Kahn*, 441 F.3d 977, 988 (Fed. Cir. 2006) (cited with approval in *KSR*, 550 U.S. at 418).

### C. Overview of Asserted References

#### 1. Nguyen (Ex. 1005)

Nguyen relates to "[a] system and method for providing users with visual, English language comprehension, cognitive, or other limitations an intuitive audio interface and navigation method for use in automated systems." Ex. 1005, Abstract. Nguyen indicates that a "particularly useful application of the system is for voting systems whereby users listen to instructions and ballot choices via a telephonic device and use a standard 12-key telephone touchpad to enter selections." Ex. 1005, Abstract. Nguyen attempts to address "the basic need for citizens with certain conditions such as blindness, visual impairments, cognitive disabilities, illiteracy, and other language-comprehension difficulties . . . to cast their own ballots privately and independently." Ex. 1005, 3:25–33. It also provides voters "the opportunity to preview the actual ballot and practice casting votes in the identical manner in which the actual voting will be conducted." Ex. 1005, 3:38–41.

Nguyen discloses the use of a standard 12-key telephone touchpad[9] as a preferred input device that allows a user to navigate a voting system.

---

[9] Nguyen also refers to this as a "12-button telephone keypad." Ex. 1005, 12:14–17. We use the terms "12-button telephone keypad" and "12-key telephone touchpad" interchangeably in this Final Written Decision.

Ex. 1005, 12:9–10. The 12-key touchpad is shown in Nguyen's Figure 7, reproduced below.



FIG. 7

Figure 7 is "a graphical representation of the interface keypad of the preferred embodiment of the input device, illustrating the position of two special-purpose groups of keys on a standard telephone." Ex. 1005, 4:64–67. As shown in the figure, these two groups are the "five-key navigation group 67" and the "special command group 69." Ex. 1005, 12:16–20. According to Nguyen, the five-key navigation group is designed such that

> the '4' and '6' keys are used to navigate within a single level (for example, within the contest for President, the '4' and '6' keys are used to scroll through all the candidates for President). The '4' key is used to go to the previous candidate; the '6' key is used to go to the next candidate; and the '5' key is used to select and deselect a candidate.

In a similarly intuitive manner, the '2' and '8' keys are used to navigate through different levels (for example, to navigate from the contest for President to the contest for Senator to the contest for Representative, and vice versa). The '2' key is used to go to the previous contest and the '8' key is used to go to the next contest.

Ex. 1005, 12:27–41.

### 2. *Marshall (Ex. 1006)*

Marshall investigated the usability of different data input schemes for entering alphanumeric data on television screens. Ex. 1006, 167. According to Marshall,

[w]hile the assumption must be that the keyboard is generally the most useful device for alphanumeric data entry, there are many situations in which either a full keyboard is not available or its use is not convenient so that a more restricted device such as a hand-held remote control unit must be considered.

Ex. 1006, 167.

In its two trials, Marshall used a keyboard with a standard QWERTY layout, and a television remote control having the layout depicted in Figure 2, reproduced below. Ex. 1006, 168–169.



Figure 2 of Marshall shows a television remote control having a standard telephone keypad layout and a navigation keypad consisting of four geometrically arranged arrow keys for directional navigation and a central select key. Ex. 1006, 168–169.

Marshall's first study compared different graphical user interface/data input schemes for the entry of alphanumeric data using only the four navigation keys and the select key on the remote control unit. Ex. 1006, 170–171 (depicting the different graphical user interface/data entry schemes in Figures 4–9). In the second study, the user could utilize the alphanumeric keypad on the remote control, and a QWERTY keyboard was used as a control. Ex. 1006, 169.

Marshall concluded that "if a keyboard is available, it should be used" for the entry of simple alphanumeric data. Ex. 1006, 185. Marshall also concluded that if "a keyboard is not available, the choice of data entry scheme is less clear cut. When only a very limited range of input keys is

available, (such as the navigation keys on the television remote control unit), grid displays are preferred to others, particularly those with a familiar layout." Ex. 1006, 185.

### 3. McDermott (Ex. 1008)

McDermott discloses a voting system comprising "a computer-prepared and computer-printed election ballot generated by input from the voter." Ex. 1008, Abstract. McDermott's system provides the voter the opportunity to inspect the ballot to verify that the ballot correctly recorded his or her votes, and allows for correction of votes if the ballot does not contain the voter's intended selections. Ex. 1008 ¶ 6. McDermott states that the "printed ballot may be produced by the printer by printing the votes of the voter on a pre-printed election ballot, or by printing the votes of the voter concurrently with the printing of the election ballot on the same paper as the election ballot is printed." Ex. 1008 ¶ 12.

### 4. Neff (Ex. 1007)

Neff is directed to an electronic voting system that helps to ensure voter intent is accurately represented in voted ballots. Ex. 1007 ¶ 24. The system includes a digital user interface (e.g., vote clients 134) used by authorized voters to generate voted ballots. Ex. 1007 ¶¶ 24, 28. Neff states that "[i]n some embodiments, the facility presents these displays on a touch-screen monitor so that the voter can select a point on the display by touching a corresponding point on the monitor." Ex. 1007 ¶ 41. Neff's system may also include safeguards against ballot tampering after ballots are voted. Ex. 1007 ¶ 26.

*D. Claims 1, 4, 9, 12, 13, and 16 – Alleged Anticipation by Nguyen*

Petitioner contends claims 1, 4, 9, 12, 13, and 16 are unpatentable as anticipated by Nguyen. Pet. 13–35; Reply 11–17. Petitioner directs us to portions of Nguyen that purportedly disclose all the limitations in the challenged claims. Petitioner also relies on the Declaration of Dr. Bederson to support its arguments.

*1. Claim 1*

With regard to claim 1, Petitioner asserts that "Nguyen discloses a user module 40 for voting that includes an input device 64 that preferably may be a 12-button input device which includes 'a five-key navigation group' and 'a three-key special command group.'" Pet. 14 (citing Ex. 1005, 7:19–26, 12:16–19, Figures 1, 3, 7). According to Petitioner, Nguyen discloses that voters listen to instructions from an audio file and use the input device to choose candidates within a particular contest. Pet. 14. Petitioner thus argues that Nguyen discloses "[a] method of voting that allows a voter to navigate a plurality of contests and a plurality of options associated with each of said contests," as recited in claim 1. Pet. 14.

Claim 1 further requires "providing a navigation device comprising a center push-button switch, a first pair of push-button switches positioned above and below said center push-button switch, and a second pair of push-button switches positioned left and right of said center push-button switch." Ex. 1001, 18:17–22. For this limitation, Petitioner contends Nguyen's 12-key touchpad is a navigation device, and provides an annotated version of the touchpad depicted in Nguyen Figure 7, which is reproduced below from the Petition. Pet. 16–17.



FIG. 7

Nguyen's Figure 7 shows the standard 12-key touchpad configuration of a telephone, which includes five-key navigation group 67 (keys 2, 4, 5, 6, and 8) and three-key special command group 69 (keys *, 0, and #). Ex. 1005, 12:16–19, Fig. 7. Petitioner annotates Figure 7 to demonstrate specifically how, within the "five-key navigation group" of the 12-button keypad, the "5" key corresponds to the recited center push-button switch, the "2" and "8" keys correspond to the recited first pair of push-button switches positioned above and below the center push-button switch, and the "4" and "6" keys correspond to the recited second pair of push-button switches positioned to the left and right of the center switch. Pet. 16–17.

Claim 1 further requires "presenting said contests and said associated options to the voter, wherein one of said first and second pairs of push-button switches enables the voter to scroll among said contests, and wherein

the other of said first and second pairs of push-button switches enables the voter to scroll among said options." Ex. 1001, 18:23–28.

Petitioner argues that Nguyen provides a user with instructions on how to use the buttons on the keypad to navigate through the various contests and voting options. Pet. 18–20 (citing Ex. 1005, 12:27–59, Fig. 8; Ex. 1022 ¶¶ 82, 83). In particular, Petitioner directs us Nguyen's disclosure that audio file 12b includes instructions regarding using the "5" key to vote for a particular candidate, the "4" or "6" keys to hear the previous or next candidate, or the "2" or "8" keys to go to the previous or next contest. Pet. 18. Based on this, Petitioner argues that Nguyen teaches that one of first and second pairs of push-button switches enables the voter to scroll among said contests, and the other of said first and second pairs of push-button switches enables the voter to scroll among said options, as claim 1 requires.

With regard to presenting the names of contests and the names of options to the voter, Petitioner again directs us to Nguyen's disclosure of audio files 12b, which "comprise all of the text that will be needed for all possible voting scenarios, based in part upon the customer-provided information 30." Reply 14 (citing Ex. 1005, 7:13–16) (emphasis omitted); Pet. 18. Petitioner notes that the customer-provided information for audio file 12b includes information about the voting contests and options. Reply 11–12 (citing Ex. 1005, 6:54–67). Petitioner also directs us to Nguyen's disclosure that "audio file 12b might state: ' YOU ARE MAKING YOUR SELECTIONS FOR CITY COUNCIL'" as an example of Nguyen presenting a contest, and Nguyen's disclosure that "audio file 12b might state: JOHN DOE, REPLICAN PARTY, IF YOU WOULD LIKE TO

SELECT THIS CANDIDATE, PRESS "5".'" as an example of Nguyen presenting an option. Reply 14; Pet. 18 (citing Ex. 1005, 12:47–49, 13:13–15).

Petitioner further argues that Nguyen teaches pressing the center "5" key to select or deselect the "current" candidate being announced in the audio file. Pet. 20–22 (citing Ex. 1005, 12:47–53, Fig. 8; Ex. 1022 ¶¶ 84–86). Relying on Figure 8 of Nguyen, Petitioner argues that the selection (or deselection) applies to only the candidate being announced at that time, and to no others in the contest. Pet. 20–22. Petitioner thus argues that Nguyen discloses "receiving a plurality of voting selections from the voter, wherein said center push-button switch enables the voter to make at least one voting selection for each of said contests by selecting at least one of said options without providing any input on other of said options," as claim 1 requires. Ex. 1001, 18:29–33.

Patent Owner argues that Nguyen does not anticipate claim 1 because it does not disclose "presenting said contests . . . to the voter, wherein one of said first and second pairs of push-button switches enables the voter to scroll among said contests." PO Resp. 31. Patent Owner contends that this limitation requires "communicating the names of the contests while moving consecutively among the contests via a pair of push-button switches" (PO Resp. 31), and that Nguyen is "devoid of any disclosure of communicating the names of the contest responsive to using '2' or '8' keys to move among the contests" (PO Resp. 32). Patent Owner argues that Nguyen teaches playing a candidate's name, i.e., presenting a voting option, not a voting contest, after the 2 and 8 keys are used to move to another contest. PO Resp. 31–32 (citing Ex. 1005, Fig. 8).

Patent Owner also argues that Petitioner's reliance on audio file 12b is misplaced because the portion of Nguyen Petitioner relies upon involves instances where a user inputs an invalid key, as opposed to instances when a user uses push-button switches to scroll among the voting contests. Sur-reply 9–10. According to Patent Owner, to the extent this portion of Nguyen discloses presenting a contest, it still fails to disclose the "presenting" limitation because there is no disclosure of communicating the name of a contest *as the voter scrolls among the contests using a pair of push-button switches*, as required according to Patent Owner's interpretation of claim 1. Sur-reply 9–10.

Patent Owner does not challenge Petitioner's arguments and evidence regarding Nguyen's disclosure of the remaining limitations of claim 1. Nonetheless, the burden remains on Petitioner to demonstrate unpatentability. *See Dynamic Drinkware*, 800 F.3d at 1378.

After considering the totality of the record after trial, we agree with Petitioner's arguments and find the evidence demonstrates Nguyen discloses the limitations of claim 1. As Petitioner points out, and Patent Owner does not dispute, Nguyen discloses a method for voting that includes user module 40 having input device 64 that allows users to navigate voting contests and voting options associated with those contests. Ex. 1005, 1:13–21, 7:19–26, 12:9–59, Figs. 3, 8. Nguyen also discloses that its navigation device preferably has a standard 12-button telephone touchpad, divided into a five-key navigation group and three-key special command group. Ex. 1005, 12:9–19, Fig. 7. Nguyen further explains that in one embodiment, the five-key navigation group is configured such that the 4 and 6 keys are used to scroll through candidates (i.e., options) for a contest, the 2 and 8 keys are

used to scroll through different contests, and the 5 key is used to select and deselect candidates. Ex. 1005, 12:27–41. These buttons of Nguyen's navigation device correspond to the center push-button switch and the first and second pairs of push-button switches recited in claim 1. Nguyen also discloses that audio file 12b contains instructions regarding how to use the five-key navigation system to scroll through the available contests and associated options, and select candidates. Ex. 1005, 12:42–59.

Patent Owner's argument that Nguyen does not disclose "presenting said contests and said associated options to the voter, wherein one of said first and second pairs of push-button switches enables the voter to scroll among said contests, and wherein the other of said first and second pairs of push-button switches enables the voter to scroll among said options" (Ex. 1001, 18:23–28), is based on its proposed construction of the phrase, which we decline to adopt. Instead, we interpret this phrase as having three separate requirements: (1) presenting contests and associated options, (2) one of the first and second pairs of push-button switches enables the voter to scroll among said contests, and (3) the other of the first and second pairs of push-button switches enables the voter to scroll among said options.

Nguyen discloses at least one example of audibly presenting the name of a contest, "YOU ARE MAKING YOUR SELECTIONS FOR CITY COUNCIL" (Ex. 1005, 13:14–15) and audibly presenting the name of voting options, "JOHN DOE, REPUBLICAN PARTY" (Ex. 1005, 12:47–48). Nguyen further discloses that audio file 12b contains "all of the text that will be needed for all possible voting scenarios," including all of the information about voting contests and options and instructions to assist the user in navigating the voting choices. Ex. 1005, 6:54–67, 7:13–16, 12:42–59.

Thus, the evidence of record supports a finding that Nguyen discloses "presenting said contests and said associated options to the voter," as claim 1 requires. Additionally, we find Nguyen discloses that one pair of push-button switches on its five-key navigation pad (push-buttons 2 and 8) allows a user to scroll among contests and the other pair of push-button switches on its five-key navigation pad (push-buttons 4 and 6) allows a user to scroll among options, as claim 1 requires. Ex. 1005, 12:19–41.

Based on the foregoing, we determine Petitioner has demonstrated by a preponderance of evidence that Nguyen discloses all of the limitations of claim 1.

## 2. Claim 9

Claim 9 contains limitations similar to those in claim 1, but also requires providing a pair of headphones and audibly presenting the contests and options to the voter. Ex. 1001, 19:13–33. Petitioner points out that Nguyen discloses receiver 62 of module 40 can be a set of headphones, and states that "[t]he first contest is automatically provided and the script from the audio file 12b according to that candidate is played for the voter through the receiver 62 (or headphones connected to a personal digital audio player)." Ex. 1005, 7:19–27, 12:43–47, Fig. 3; Pet. 25. For the common limitations between claims 1 and 9, Petitioner refers back to its arguments presented with respect to claim 1. Pet. 24–27.

Patent Owner relies on the same arguments for claim 9 as it did for claim 1, namely that Nguyen fails to disclose "presenting said contests and said associated options to the voter, wherein one of said first and second pairs of push-button switches enables the voter to scroll among said contests, and wherein the other of said first and second pairs of push-button switches

enables the voter to scroll among said options." PO Resp. 28, 31–33. Patent Owner's arguments are no more persuasive here than they were when considered in connection with claim 1.

After reviewing the evidence developed during the trial, we agree with Petitioner's arguments and find the evidence demonstrates that Nguyen discloses all of the limitations of claim 9. To the extent claim 9 contains limitations similar to those in claim 1, we find Nguyen discloses those limitations for the same reasons discussed above in connection with claim 1. Additionally, we agree with Petitioner that Nguyen discloses providing headphones and audibly providing contests and options to the user via the headphones. Ex. 1005, 7:19–27, 12:43–47.

Based on the foregoing, we determine Petitioner has demonstrated by a preponderance of evidence that Nguyen discloses all of the limitations of claim 9.

### 3. Claim 13

Claim 13 recites a voting system comprising a ballot marking device. Ex. 1001, 20:1–2. For this limitation, Petitioner directs us to Nguyen's disclosure of a voting system that includes a printer used to "print a paper ballot that contains the user's selections." Pet. 31–32 (citing Ex. 1005, 1:13–21, 7:39–45).

Claim 13 further requires "one or both of a display screen and a set of headphones in communication with said ballot marking device and configured to present a plurality of contests and a plurality of options associated with each of said contests." Ex. 1001, 20:3–7. With regard to the headphones limitation, similar to the arguments it presented for claim 9, Petitioner points out that Nguyen states the "[t]he first contest is

automatically provided and the script from the audio file 12b according to that candidate is played for the voter through the receiver 62 (or headphones connected to a personal digital audio player)." Ex. 1005, 7:19–27, 12:43–47, Fig. 3; Pet. 32–33. With regard to presenting contests and options, Petitioner again relies on Nguyen's disclosures regarding audio file 12b, including the specific examples of stating contest and candidate names, as discussed above in connection with claim 1. Pet. 32–33; Reply 12–15.

> Claim 13 additionally requires:

> a navigation device in communication with said ballot marking device and having a center push-button switch, a first pair of push-button switches positioned above and below said center push-button switch, and a second pair of push-button switches positioned left and right of said center push-button switch, wherein said navigation device is configured such that one of said first and second pairs of push-button switches enables scrolling among said contests, wherein the other of said first and second pairs of push-button switches enables scrolling among said options; and wherein said center push-button switch enables the entry of at least one voting selection for each of said contests by selecting at least one of said without providing any input on other of said options.

Ex. 1001, 20:8–22.

These limitations of claim 13 are similar to the navigation device configuration limitations present in claim 1, and Petitioner relies on the same arguments and evidence here as it did for the corresponding limitations in claim 1. Pet. 33. Petitioner further asserts that Figure 3 of Nguyen shows the 12-button keypad, part of the navigation device, in communication with the printer, the ballot marking device, as claim 13 requires. Pet. 33–34.

Patent Owner relies on the same arguments for claim 13 as it did for claims 1 and 9, namely that Nguyen fails to disclose "presenting said

contests and said associated options to the voter, wherein one of said first and second pairs of push-button switches enables the voter to scroll among said contests, and wherein the other of said first and second pairs of push-button switches enables the voter to scroll among said options." PO Resp. 28, 31–33. Patent Owner's arguments are no more persuasive here than they were when considered in connection with claim 1 and claim 9.

After reviewing the evidence developed during the trial, we agree with Petitioner's arguments and find the evidence demonstrates that Nguyen discloses all of the limitations of claim 13. To the extent claim 13 contains limitations similar to those in claims 1 and 9, we find Nguyen discloses those limitations for the same reasons discussed above in connection with claims 1 and 9. Additionally, we agree with Petitioner that Nguyen discloses a voting system having a ballot marking device (printer 66), and a navigation device (the 12-key telephone touchpad) in communication with the ballot marking device. Ex. 1005, 7:19–27, 12:43–47, Fig. 3.

Based on the foregoing, we determine Petitioner has demonstrated by a preponderance of evidence that Nguyen discloses all of the limitations of claim 13.

*E. Dependent Claims 4, 12, and 16 – Alleged Anticipation by Nguyen*

Claims 4, 12, and 16, which depend from claims 1, 9, and 13, respectively, each require the navigation device to include "one or more auxiliary push-button switches located remote from said first and second pairs of push-button switches and said center push-button switch." Ex. 1001, 18:42–45 (claim 4), 19:43–46 (claim 12), 20:31–34 (claim 16).

Petitioner did not provide an express construction of "remote" in the Petition, and Patent Owner did not address the construction of this term in its

Preliminary Response. In our Institution Decision, we invited and encouraged the parties to construe this claim term. Inst. Dec. 15.

In its Response, Patent Owner argues that the proper construction of "remote" is "separated by a space greater than usual." PO Resp. 30. Patent Owner derives its proposed construction from one definition of "remote" in the Merriam-Webster dictionary. PO Resp. 30; Ex. 2002, 989. According to Patent Owner,

> As used in the claims, "remote" [or "located remote"] describes the amount of space between the auxiliary push-button switches and the five-key grouping of other push-button switches (*i.e.*, center and first/second pairs). [Ex. 2001] ¶ 104. Here, the "usual" spacing is determined in reference to the spacing between the push-button switches of the entire five-key grouping. *Id.* at ¶¶ 104–105.

PO Resp. 30.

In its Reply, Petitioner argues that Patent Owner's construction is not appropriate because it is unclear what "usual" means since the spacing between the push-button switches of the five-key grouping varies, and because substituting Patent Owner's proposed construction into the claims results in a grammatically incorrect and confusing limitation. Reply 8–10. Petitioner contends that the dictionary Patent Owner relies upon provides a better definition of "remote," which is "out of the way." Reply 10; Ex. 2002, 989. Petitioner argues that this is the proper construction because when you replace "remote" with "out of the way," the "readability and scope of the claim limitation is maintained." Reply 10.

Patent Owner contends that Petitioner's construction "does not capture the plain and ordinary meaning of ['remote'] and introduces ambiguities into the claim." Sur-reply 8. In particular, Patent Owner

notes that Petitioner does not explain what "out of the way" means and does not provide a way to determine the scope of its proposed definition. Sur-reply 8.

Although the parties present separate constructions, both parties contend that the outcome here would be the same under either party's construction. *See* Reply 17; Sur-reply 10. Petitioner argues that the "three-key special command group" in Nguyen corresponds to the auxiliary push-button switches, and is located remote from the other push-button switches under its proposed construction because the buttons in the command group are "out of the way" from the first and second pairs of push-button switches (2, 4, 6, 8) and center push-button switch (5) in Nguyen. Pet. 22–23 (referring to annotated Fig. 7, reproduced above); Reply 17 (citing Ex. 1042 ¶¶ 47–49). Petitioner contends Nguyen discloses remote auxiliary push-button switches under Patent Owner's construction as well, because

> As depicted in Nguyen's Fig. 7, the "Special Command Group 69" is separated from the "Five-Key Navigation Group 67" by a space greater than the space separating the buttons in the "Five-Key Navigation Group 67" (e.g., the space between "*" button and the "4" button is greater than the space between the "4" and "5" buttons).

Reply 17 (citing Ex. 1042 ¶ 50).

Patent Owner argues that the three-key special command group does not satisfy the auxiliary push-button limitation because it is not "located remote" from the other push-button switches in the standard 12-key telephone touchpad layout used in Nguyen under either party's proposed construction. PO Resp. 34; Sur-reply 10–12. Patent Owner contends that "the three-key special command group 69 is organized in the very same 'standard 12-button telephone keypad' with the five-key navigation group

67," and all the keys in the 12-key telephone touchpad are "set at a uniform spacing." PO Resp. 34–35; *see also* Sur-reply 11 (arguing that the five-key navigation group and special command group are "part of an equidistant pattern of buttons"). Patent Owner thus concludes that "the special command group 69 is not 'remote' from the five-key navigation group 67 because its keys are not spaced from the five-key navigation group by a distance greater than usual." PO Resp. 35. Patent Owner also argues the special command group buttons are not "out of the way" of the five-key navigation group because they are "*immediately adjacent*" to the five key navigation group, and are "just one row (*i.e.,* the bottom row) within the same pattern of buttons on the 12-button telephone keypad." Sur-reply 12.

We agree with Patent Owner that Nguyen's three key special command is not "located remote" from the five-key navigation group under either party's construction of that term.[10] Nguyen's five-key navigation group and three-key special command group are part of the same standard telephone key pad. Ex. 1005, 12:16–19, Fig. 7. Based on Nguyen's Figure 7, we agree with Patent Owner that all the keys in the 12-button telephone keypad are "set at a uniform spacing" and are "part of an equidistant pattern of buttons." PO Resp. 34–35; Sur-reply 11. Because Petitioner relies on keys from the same keypad to satisfy the "located remote" limitation, and all of the keys in the 12-button keypad in Nguyen's Figure 7 are spaced uniformly and in an equidistant pattern, we do not agree that the keys in the special command group are separated by a space greater than usual, as compared to the spacing of the other keys in the keypad.

---

[10] In view of this, we decline to expressly construe "remote" or adopt one party's proposed construction over the other party's construction.

Furthermore, we do not agree that a person of ordinary skill in the art would have considered the three keys in the special command group, which are part of the same keypad as the five-key navigation group, to be "out of the way" of the five-key navigation group. As Patent Owner points out, the three-key special command group is immediately adjacent to the five key navigation group, and are "just one row" below the five-key navigation group within the same 12-button telephone keypad. Sur-reply 12. Petitioner fails to present evidence sufficient to demonstrate why a person of ordinary skill in the art would have considered adjacent keys within a single keypad of uniformly-spaced keys to be "out of the way." Instead, Petitioner simply concludes that the special command group keys are "out of the way." Reply 17. Dr. Bederson's declaration, which Petitioner cites in support of its conclusion, merely parrots the language in the Petition. Ex. 1042 ¶¶ 47–49. Such conclusory statements, absent sufficient support, are entitled to little or no weight. 37 C.F.R. §42.65(a).

We credit Dr. Shamos's testimony that "remoteness is important so that the voter does not confuse the auxiliary push-button switches with those in the five-key grouping and so might push a button inadvertently." Ex. 2001 ¶ 104; *see also* Ex. 1027, 32:25–33:6 (Dr. Shamos testifying at his deposition that "If you have a bunch of keys . . . that I'm manipulating, and I have a different set that perform totally different functions, you don't want them close by. Because if I'm off by one row, I'll end up inadvertently pushing a button I shouldn't be pushing"); Sur-reply 11–12.

We further note the distinction between Nguyen's 12-button telephone keypad and what the parties consider to be a depiction of remote auxiliary push-button switches in the '273 patent. Other than its use in the claims, the

term "remote" does not appear in the '273 patent. According to the parties, however, Figures 19 and 20 of the '273 patent provide some guidance on the meaning of this term. Tr. 8:17–9:2 (counsel for Petitioner referring to Figure 19 when discussing the meaning of the term "remote"); Tr. 31:3–12 (counsel for Patent Owner referring to Figure 20 when discussing the meaning of "remote").

Figures 19 and 20 of the '273 patent are reproduced below.





Fig. 20

Figure 19 shows a perspective view of one embodiment of voter assistance terminal 300. Ex. 1001, 3:53–56. Figure 20 shows voter assistance terminal 300 of Figure 19 in its closed or transport state. Ex. 1001, 3:57–58, 14:62–63. As shown in these figures, voter assistance terminal 300 includes ballot marking device 302, touchscreen or voting terminal 304, and ballot receiving slot 308. Ex. 1001, 13:63–65, 14:8–11. Voting terminal 300 also includes sub-panel 312, comprising four arrow keys and an enter key, which a user can use to navigate through voting menus, and additional sub-panel 348 (shown in Figure 19 and labeled in Figure 20). Ex. 1001, 14:25–44, 15:4–11. The '273 patent teaches that "additional sub-panel 348" can be "an additional sub-panel utilizing a key configuration." Ex. 1001, 15:4–11. As shown in Figures 19 and 20, sub-panel 312 and additional sub-panel 348 are separated by a distance equal to the width of touchscreen 304 or protective cover 338.

Consistent with this description of the figures, during the oral hearing counsel for Patent Owner argued that "remote" in the context of the '273

patent is illustrated by the distance between the "additional buttons indicated by the reference number 348" on the "panel on the lefthand side of the console" in Figure 20 and the "four directional arrows with the select button in the middle on the righthand side of the console." Tr. 30:19–31–12. Counsel for Patent Owner further noted that this distance, which is large enough to "slide a ballot in the space between . . . those buttons," is greater than the usual spacing between the direction buttons and the select button in the navigational pad used for scrolling on the righthand side of the console. Tr. 31:1–12. Counsel for Petitioner agreed that the console depicted in Figure 19, which is the same console as the one shown in Figure 20, shows "something that appears to be either out of the way and/or at a greater than usual distance." Tr. 8:17–9:2 (stating "I think it's figure 19 they show some buttons that are over on I believe the left side of the housing").

The distinction between push-button switches that "appear[ ] to be either out of the way and/or at a greater than usual distance" as depicted in the '273 patent, and Nguyen's three-key special command group is clear. Unlike the spatial relationship between Nguyen's three-key special command group and five-key navigation group, the buttons in "additional keypad 348" are not part of the same keypad as the direction buttons and the select button of the navigation device. Instead, the two keypads are positioned on separate consoles of voting machine 300 and are separated by a distance equal to the width of touchscreen 304, protective cover 338, or ballot 306.

Both Dr. Shamos's testimony and the depiction of remote in the figures of the '273 patent weigh against Petitioner's arguments that buttons

from the same uniformly spaced telephone keypad constitute "remote" push-buttons under either party's construction.

For all of the foregoing reasons, we find Petitioner has not shown, by a preponderance of evidence, that any push-button in Nguyen's three-key special command group constitutes "one or more auxiliary push-button switches located remote from said first and second pairs of push-button switches and said center push-button switch," as claims 4, 12, and 16 require.

Alternatively, Petitioner argues that keypad 59 of Nguyen can act as an input device, and also corresponds to the recited auxiliary push-button switches. Pet. 23. Patent Owner argues that keypad 59 is not part of the claimed navigation device because it is used only by an election official prior to voting, and not used by a voter. PO Resp. 34–36. Petitioner did not respond to Patent Owner's arguments regarding keypad 59 in its Reply.

We agree with Patent Owner's arguments regarding keypad 59. Based on Nguyen's disclosure, it appears that keypad 59, although it is an input device, is not used by a voter to navigate through the different voting contests and associated options. Instead, an election official uses the keypad to configure a processing unit prior to voting. Ex. 1005, 7:51–52. As such, keypad 59 does not constitute "one or more auxiliary push-button switches" of the navigation device as claims 4, 12, and 16 require.

In view of the foregoing, we find Petitioner has failed to demonstrate sufficiently that Nguyen discloses "one or more auxiliary push-button switches located remote from said first and second pairs of push-button switches and said center push-button switch," as claims 4, 12, and 16 require.

As a result, Petitioner has not shown by a preponderance of evidence that claims 4, 12, and 16 are unpatentable as anticipated by Nguyen.

F. *Claims 2, 3, 10, 11, 14, and 15 – Alleged Obviousness in view of Nguyen and Marshall*

Petitioner argues the subject matter of claims 2, 3, 10, 11, 14, and 15 would have been obvious in view of the combined disclosures of Nguyen and Marshall. Pet. 35–43; Reply 17–20. These dependent claims are directed to the shape of the push-button switches on the navigation device. Specifically, claims 2, 10, and 14 depend from claims 1, 9, and 13, respectively, and further require at least two push-button switches are "uniquely shaped." Ex. 1001, 18:34–35 (claim 2), 19:34–35 (claim 10), 20:23–24 (claim 14). Claims 3, 11, and 15 depend from claims 2, 10, and 14, respectively, and require "said first pair of push-button switches are generally triangularly shaped and point up and down respectively, said second pair of push button switches are generally triangularly shaped and point right and left respectively, and said center push-button switch is generally rectangularly shaped." Ex. 1001, 18:36–41 (claim 3), 19:36–42 (claim 11), 20:25–30 (claim 15).

Petitioner directs us to portions of Nguyen and Marshall that purportedly teach or suggest all the limitations in claims 2, 3, 10, 11, 14, and 15, and argues that a person of ordinary skill in the art would have found it obvious to combine the teachings of Nguyen and Marshall.

With regard to the shape limitations of claims 2, 3, 10, 11, 14, and 15, Petitioner contends Marshall discloses a navigation keypad consisting of "four geometrically arranged arrow keys for directional navigation (up, down, left and right) with a central select key." Ex. 1006, 168, Fig. 2;

Pet. 37.  Petitioner contends the arrow keys are uniquely shaped, as claims 2, 10, and 14 require.  Pet. 37, 42.  Petitioner also contends that Marshall discloses a first pair of arrow keys pointing up and down, a second pair of arrow keys pointing right and left, and a center button that is generally rectangular, as claims 3, 11, and 15 require.  Pet. 40; Ex. 1006, Figure 2.

Patent Owner does not dispute that Marshall discloses the limitations recited in claims 2, 3, 10, 11, 14, and 15.  Based on Marshall's description of a navigational keypad with arrow keys for directional navigation, as well as Marshall's depiction of the navigational keypad in Figure 2, we find Petitioner has demonstrated sufficiently that Marshall discloses the shape limitations in claims 2, 3, 10, 11, 14, and 15.

With regard to the combination of Nguyen and Marshall, Petitioner argues that a person of ordinary skill in the art

> would have been motivated to use the uniquely shaped push-buttons as taught in Marshall with the Nguyen system.  A unique button shape would allow a user to distinguish the button from other buttons by touch alone without requiring the user to look at the button.  This is especially important to visually impaired users.  Incorporating a unique shaped button design into Nguyen's input device would increase accessibility of the system.

Pet. 38; *see also* Reply 19–20 (again arguing a person of ordinary skill in the art would have been motivated to make the proposed modification "in order to increase system accessibility"); Ex. 1022 ¶¶ 114–115; Ex. 1042 ¶¶ 56–57.  Petitioner also contends that modifying Nguyen by "simply altering the shape of the push-button switches" as taught by Marshall would involve applying a known technique to a known design, to achieve a predictable result, and a person of ordinary skill in the art would have had a reasonable expectation of success.  Pet. 38–39 (citing Ex. 1022 ¶¶ 114–115).

Patent Owner contends that a person of ordinary skill in the art would not have had any reason to modify Nguyen in view of Marshall to arrive at the claimed invention because: (1) modifying Nguyen in view of Marshall would violate Nguyen's intended purpose and principle of operation; (2) the proposed modification to Nguyen is directly contrary to the teachings and suggestions of Marshall; and (3) Marshall does not provide motivation for the proposed modification.  PO Resp. 39–40.

As to Nguyen's intended purpose, Patent Owner argues Nguyen seeks to "enhance accessibility in voting by providing a system that allows a voter to practice voting from home in the identical manner in which official voting will be conducted."  PO Resp. 41.  Patent Owner further argues Nguyen achieves its intended purpose by "providing a practice-voting system that can be accessed via a public telephone network and facilitating both practice vote entry and official vote entry using a conventional telephone interface."  PO Resp. 41.  Patent Owner contends that Nguyen discloses no other way of achieving its basic aims other than the use of a telephone interface having a standard 12-key touchpad (PO Resp. 41 (citing Ex. 2001 ¶¶ 111–113)), and that "[t]he reference as a whole demonstrates that Nguyen is not willing to accept any change that takes away the ability to conduct practice voting using a standard telephone" (PO Resp. 43 (citing Ex. 2001 ¶¶ 180–181)).

Patent Owner acknowledges the statement in Nguyen that the system can be used with input devices other than the 12-key telephone touchpad, but argues that a person of ordinary skill in the art would interpret this portion of Nguyen as "merely contemplating other types of input systems that allow for practice voting by telephone" because Nguyen expressly lists voice-activation and voice-recognition systems as available alternatives, which can

be carried out using a standard telephone. PO Resp. 44 (citing Ex. 2001 ¶ 182).

Patent Owner further argues that Marshall's navigation pad having directional arrow buttons is not part of a standard phone interface, and by modifying Nguyen to include Marshall's navigation pad, "official vote casting could no longer be conducted with an input device that is found on a standard telephone," which would "disable the core principle of operation by which Nguyen achieves its intended purpose of improved voting accessibility." PO Resp. 45. Moreover, Marshall's unique interface would cause confusion among voters who practiced voting using a telephone with a standard 12-key touchpad. PO Resp. 47. According to Dr. Shamos, "[t]he pre-election practice performed by the voter would go for naught, and the voter would have to learn a new interface, deceptively similar to that of a telephone, but mysteriously different." Ex. 2001 ¶ 172; PO Resp. 47.

Patent Owner also asserts that Nguyen criticizes, and therefore teaches away from, input devices that require special buttons with different physical shapes. Sur-reply 14 (quoting Ex. 1005, 3:1–9). According to Patent Owner, instead of systems that require "special buttons," Nguyen teaches the use of a "'standard, common, and familiar input device' that every voter already has at home connected and already connected via a phone line to the outside world for practice voting," which is the telephone keypad. Sur-reply 14–15.

With regard to its argument that Marshall provides no motivation for the proposed modification, Patent Owner asserts that Marshall studied the effectiveness of various text entry methods carried out on a graphical display, and disclosed that "text entry methods conducted via an audio

interface are not pertinent to the graphical text entry methods to which it pertains." PO Resp. 48 (citing Ex. 1006, 168). Patent Owner also argues that Marshall concluded that telephone-pad based text entry methods were superior to navigation panel based text entry methods, and therefore Marshall teaches away from the use of navigation panels for text entry. PO Resp. 48–49 (citing Ex. 2001 ¶ 188). In view of this, according to Patent Owner, "[i]n the absence of hindsight, a [person of ordinary skill in the art] would have had no reason to modify Nguyen to use the navigation panel of Marshall." PO Resp. 49 (citing Ex. 2001 ¶ 189).

In its Reply, Petitioner argues that Patent Owner relies on "an unreasonably narrow view that Nguyen's disclosure is limited to using a standard telephone keypad as input." Reply 18. Petitioner asserts that Nguyen itself suggests that non-telephone keypads can be used in Nguyen's systems. Reply 18–19 (citing Ex. 1005, 3:56–62 (referring to "keypad-based user input devices"), 4:25–29, 8:21–27). Petitioner further contends that its argument that a person of ordinary skill in the art would have had reason to modify Nguyen in view of Marshall is not derived from Marshall itself. Reply 19–20. Instead, Petitioner reiterates that a person of ordinary skill in the art would have been motivated to modify Nguyen to increase system accessibility, and that neither Patent Owner nor its declarant rebut this motivation to combine. Reply 20.

After reviewing the evidence and arguments presented over the course of this trial, we agree with Petitioner's arguments and find the evidence demonstrates that a person of ordinary skill in the art would have had reason to combine the teachings of Nguyen and Marshall.

Although Nguyen describes its invention in the context of using a conventional telephone interface having a standard 12-key touchpad, it is undisputed that Nguyen is not limited to telephone key pads. *See* Tr. 34:8–9 (counsel for Patent Owner agreeing that Nguyen is not limited to telephones). Nguyen expressly states that

> some components of the invention could be substituted for other components, for example: *various input devices could be used*, including but not limited to voice-activated responses or voice-recognition software. However, for the sake of brevity and for ease of understanding, the description of the system and methods employed in the present invention will be made with reference to voting applications using a standard 12-key telephone touchpad input device.

Ex. 1005, 4:25–33 (emphasis added). This language indicates input devices other than the standard 12-key telephone touchpad input device are considered to be part of the claimed invention. Although Patent Owner is correct that the two examples provided in this paragraph, voice-activated responses or voice-recognition software, are suitable for use by a voter via a standard telephone, we note that Nguyen expressly indicates that the invention includes, but *is not limited to*, these two examples. Ex. 1005, 4:25–33.

Furthermore, Nguyen contains other statements that indicate the input device in its claimed invention is not limited to a standard 12-key telephone touchpad. For example, Nguyen states that "the present invention is directed to a system and method for allowing users to hear automated choices and then use a standard, common, and familiar input device to make selections," and "[i]t should be understood at the outset that the invention relates generally to audio interface and keypad-based user input devices, which can be used in a plethora of applications." Ex. 1005, 3:51–59. The only

qualifier to "keypad-based user input devices" expressed in the '273 patent is that they are "standard, common, and familiar" devices. Furthermore, although perhaps not directly related to the input device itself, Nguyen contemplates changes to its preferred embodiment that would "remove the . . . telephone-compatibility present in the preferred embodiment." Ex. 1005, 7:33–38, 821–27; PO Resp. 41–43.

Contrary to Patent Owner's contention, Nguyen's principle of operation is not limited to a practice-voting system that can be accessed by a public telephone network and uses a conventional telephone interface. PO Resp. 41. Instead, it includes any "standard, common, and familiar" keypad-based user input devices that can be used in a "plethora of applications." Ex. 1005, 3:51–59. The use of such "standard, common, and familiar" keypad-based user input devices would still allow a person of ordinary skill in the art to achieve Nguyen's intended purpose, which is, according to Patent Owner, "enhance[ing] accessibility in voting by providing a system that allows a voter to practice voting from home in the identical manner in which official voting will be conducted." PO Resp. 41; *KSR,* 550 U.S. at 421 ("A person of ordinary skill is also a person of ordinary creativity, not an automaton.").

For example, Marshall discloses the use of a TV remote, having both a number pad and directional buttons, as an input device. Ex. 1006, 168, Fig. 2. Dr. Bederson testifies that "laying out buttons in a way that physically corresponded to the things they were controlling was well-known, and made good sense," and that "[o]ne common way of laying out these buttons" was the directional pad used on Marshall's television remote, consisting of four buttons laid out in a diamond shape with two buttons

above and below each other to control vertical movement, two buttons to the left and right of each other to control horizontal movement, and an action button in the middle of that configuration. Ex. 1022 ¶¶ 28–29. Dr. Shamos agreed with Dr. Bederson's testimony that the directional pad was a "common way of laying out" buttons on an input device. Ex. 2001 ¶ 66. This evidence suggests that that the directional pad on the TV remote in Marshall was at least a "common" input device. Pet. 36–37; Ex. 1022 ¶¶ 28, 29, 35–37, 113–115.

Petitioner further explains how the use of directional buttons can increase user accessibility, especially for visually impaired voters, because "[a] unique button shape would allow a user to distinguish the button from other buttons by touch alone without requiring the user to look at the button." Pet. 38; Ex. 1022 ¶ 115. Dr. Bederson testifies that it was "well-known that with triangularly shaped buttons the apex of the triangle corresponds to the navigation direction (*i.e.,* a right pointing triangle apex suggest navigating to the right)." Ex. 1022 ¶ 115; *see also* Ex. 2001 ¶ 65 (Dr. Shamos testifying that "[n]ormally, one would expect the left and right arrows to move a cursor or other indicator left or right, respectively, and would expect the up and down arrows to move a cursor up or down").

These characteristics align with the desired features in Nguyen's input device. *See* Ex. 1005, 3:51–54 (stating that the present invention is directed to the use of "a standard, common, and familiar input device"), 5:51–55 (stating the invention relates to an audio interface system and navigation system for users "to hear selection choices and input selections without the need for visual interaction whatsoever"). As such, this evidence supports a finding that a person of ordinary skill in the art would have considered a TV

remote to be one of the various input devices that could be used in Nguyen's voting system. It also supports Petitioner's arguments that a person of ordinary skill in the art would have had a reasonable expectation of success, which are not expressly disputed by Patent Owner. *See* Pet. 36–37; Ex. 1022 ¶ 113–115.

> We recognize that Nguyen states:
>
> The type of navigation systems employed in current [voting] systems requires special buttons and awkward menu structures that are not intuitive. Most require the user to perceive and interpret physical stimuli (such as button shapes or raise appurtenances) associated with the buttons or keys. Because these device use unique proprietary user interfaces, the voter must spend time to learn how the device operates before the voter can even begin to cast votes.

Ex. 1005, 3:1–9. We, however, disagree with Patent Owner's characterization of this language in Nguyen as criticizing any and all input devices having special buttons with different physical shapes. Sur-reply 14. Instead, we view Nguyen's language to address input devices associated with current voting systems that combine special buttons with unique proprietary interfaces that are unfamiliar to a user. Ex. 1005, 3:1–9. Marshall's television remote control does not fall into this category. Instead, the evidence suggests the type of buttons on Marshall's TV remote are intuitive and improve accessibility. Pet. 36–38; Ex. 1022 ¶¶ 28, 29, 35–37, 113–115.

Finally, Patent Owner's focus on Marshall's failure to provide a rationale to combine is unavailing. *See* PO Resp. 48–50. As Petitioner points out, a person of ordinary skill in the art would have been motivated to modify Nguyen in view of Marshall based on the desire to improve accessibility. Pet. 38–39. Petitioner does not rely on an express disclosure

in Marshall for that aspect of its patentability challenge. Pet. 38–39. Furthermore, we do not agree with Patent Owner's argument that Marshall teaches away from using an input device having triangular-shaped keys. PO Resp. 48–49. For example, Patent Owner directs us to the results of one of the trials in Marshall to support its teaching away argument. PO Resp. 48. Although Marshall states that using the navigation panel keys was "not very efficient and was slower than other schemes," Marshall also reported that it "received a high score for explicit preference" among users, and, therefore, "preference and objective performance did not coincide." Ex. 1006, 185. The results showing the navigation panel/A-to-Z grid configuration received a relatively high ranking on the scale of explicit preference undermine Patent Owner's teaching away argument.

For all of the foregoing reasons, we find Petitioner has established, by a preponderance of evidence, that a person of ordinary skill in the art would have had a reason to combine the teachings of Nguyen and Marshall to achieve the claimed invention and would have had a reasonable expectation of success in doing so. Pet. 36–38; Reply 19–20; Ex. 1022 ¶¶ 112–115; Ex. 1042 ¶¶ 56–57. As result, we find Petitioner has demonstrated, by a preponderance of evidence, that the subject matter of claims 2, 3, 10, 11, 14, and 15 would have been obvious in view of Nguyen and Marshall.

### G. Claims 17–19 – Alleged Obviousness in view of Nguyen and McDermott

Petitioner argues that claims 17–19 are unpatentable as obvious in view of the combined teachings of Nguyen and McDermott. Pet. 43–46; Reply 21–22.

Claim 17 depends from claim 13 and further requires the voting system comprises a pre-printed ballot. Ex. 1001, 20:35–36. Claim 18 depends from claim 17, and requires the ballot marking device comprise "a printing mechanism operable to mark said selection of at least one of said options for each of said contests on said pre-printed ballot." Ex. 1001, 20:36–40. Petitioner contends that McDermott discloses the limitations of claims 17 and 18 based on its teaching that "the printed ballot 'may be produced by the printer by printing the votes of the voter on a pre-printed election ballot . . . .'" Pet. 45 (quoting Ex. 1008 ¶ 12) (emphasis omitted).

Claim 19 depends from claim 18 and further requires "a ballot scanning device operable to scan said ballot and tabulate said selection of at least one of said options for each of said contests marked thereon." Ex. 1001, 20:41–44. Petitioner contends McDermott discloses a ballot scanning machine that scans the paper ballot and imprints the ballot with a validation marking or code, and a tabulation machine that includes "the same ballot scanning mechanism as the ballot scanning machine." Pet. 46 (citing Ex. 1008 ¶¶ 9, 13).

Petitioner further contends that a person of ordinary skill in the art would have had reason to modify Nguyen in view of McDermott to include a pre-printed ballot, printing mechanism, and ballot scanning device because: (1) it would "provide voters with verifiable paper trails that could be used by officials in the case of a manual recount;" (2) "allowing printing on pre-printed ballots would result in a more efficient and robust system because less time would be needed to print and less ink or toner would be needed;" and (3) "scanning ballots would make it possible to tally votes

electronically which could be easier than looking at each paper ballot by hand." Pet. 44–46 (citing Ex. 1022 ¶¶ 127, 131).

Patent Owner contends that claims 17–19 are not unpatentable because Nguyen fails to disclose all of the limitations of claim 13, as discussed above, and McDermott does not cure these deficiencies. PO Resp. 50; Sur-reply 15–16. Patent Owner also argues that a person of ordinary skill in the art would not have been motivated to combine the teachings of Nguyen and McDermott because Nguyen is incompatible with pre-printed ballots. PO Resp. 50. According to Patent Owner "[i]f pre-printed ballots were used with Nguyen, the voting apparatus would have no way of knowing whether the pre-printed ballot listed contests and candidates compatible with the electronic display, and Nguyen would simply overprint its ballot format over the pre-printed one, causing total voter and poll worker confusion." PO Resp. 50–51 (citing Ex. 2001 ¶ 193).

In its Reply, Petitioner notes that Patent Owner's argument "confuses the disclosures relied upon in the Petition," because the combination of Nguyen and McDermott does not address a display screen, and, therefore, Patent Owner's argument that there would be some compatibility issue with an electronic display is "immaterial." Reply 22.

After reviewing the parties' arguments and evidence developed during trial, we determine the preponderance of evidence supports Petitioner's assertion that the subject matter of claims 17–19 would have been obvious over the combined teachings of Nguyen and McDermott. As Petitioner points out, McDermott discloses the use of a pre-printed ballot, a printing mechanism, and a scanner, as required in claims 17–19. Ex. 1008 ¶ 9 (discussing ballot scanning machines as part of the tabulating machine), ¶ 12

("The printed ballot may be produced by the printer by printing the votes of the voter on a pre-printed election ballot . . . ."), ¶ 13 (also discussing ballot scanning machines). Patent Owner does not dispute Petitioner's arguments and evidence that McDermott discloses these limitations. Patent Owner's argument that McDermott does not cure the deficiencies of Nguyen with regard to claim 13 is unavailing because, as discussed above, we have determined that Petitioner has demonstrated by a preponderance of evidence that Nguyen discloses all of the limitations of claim 13.

We also agree with Petitioner's arguments that a person of ordinary skill in the art would have had reason to modify Nguyen based on the teachings of McDermott. Petitioner's arguments are reasonable in view of the teachings of the prior art, and are supported by the unrebutted testimony of Dr. Bederson. Pet. 44–46; Ex. 1022 ¶¶ 127, 130–131; Ex. 1008 ¶¶ 9, 12, 13. Furthermore, we agree with Petitioner that Patent Owner's argument as to why a person of ordinary skill in the art would not have had a reason to modify Nguyen in view of McDermott is flawed because it is based on compatibility issues with an electronic display screen, whereas the combination of Nguyen and McDermott does not involve an electronic display screen. Reply 21–22.

For all of the foregoing reasons, we find Petitioner has established, by a preponderance of evidence, that the combined teachings of Nguyen and McDermott teach or suggest all of the limitations in claims 17–19 and that a person of ordinary skill in the art would have had a reason to combine the teachings of Nguyen and McDermott to achieve the invention recited in claims 17–19 and would have had a reasonable expectation of success in doing so. Pet. 44–46; Ex. 1022 ¶¶ 127, 130–131; Ex. 1008 ¶¶ 9, 12, 13. As

result, we find Petitioner has demonstrated, by a preponderance of evidence, that the subject matter of claims 17–19 would have been obvious in view of Nguyen and McDermott.

*H. Claims 5 and 8 – Alleged Obviousness in view of Neff and Nguyen*

Petitioner contends that the subject matter of claims 5 and 8 would have been obvious in view of the combined teachings of Neff and Nguyen. Pet. 47–60; Reply 22–27.

*1. Claim 5*

Independent claim 5 is directed to a method of voting that allows a voter to navigate a plurality of contests and a plurality of options associated with the contests, and requires providing a display screen. Ex. 1001, 18:46–49. Petitioner contends that Neff discloses an electronic voting system comprising various hardware and software components, including "vote clients" having a display screen. Pet. 47, 50 (noting that the voting system contains a "sample display presented . . . for selecting a pair of candidates in a race for an office") (quoting Ex. 1007 ¶ 43)), 52 (referring to Ex. 1007, Fig. 1).

Claim 5 further requires "providing a navigation device having a center push-button switch, a first pair of push-button switches positioned above and below said center push-button switch, and a second pair of push-button switches positioned left and right of said center push-button switch." Ex. 1001, 18:51–55. Similar to the arguments made in connection with claim 1, Petitioner argues Nguyen discloses a 12-key telephone touchpad input device having a five-key navigation group that corresponds to the push-button requirements in claim 5. Pet. 53–55.

Claim 5 also requires:

> visually presenting said contests and said associated options to the voter on said display screen, wherein one of said first and second pairs of push-button switches enables the voter to scroll among said contests, and wherein the other of said first and second pairs of push button switches enables the voter to scroll among said options.

Ex. 1001, 18:56–62.

Petitioner contends that Nguyen discloses using the 4 and 6 keys in its five-key navigation group to navigate among the options within a contest and the 2 and 8 keys to navigate among the different contests. Pet. 54–55. Petitioner further contends that Neff discloses using a computer mouse as an input mechanism, and that "[u]sing a navigation pad with distinct buttons" such as the pad disclosed in Nguyen "could be easier to use for people without experience using a mouse or for those with mobility impairments that make it hard to control a mouse," making it a "more useful input device for electronic voting." Pet. 50 (citing Ex. 1022 ¶ 139), 55 (citing Ex. 1022 ¶ 147). Thus, according to Petitioner, it would have been obvious to one of ordinary skill in the art to improve Neff's input device by replacing it with the input interface disclosed in Nguyen having multiple navigation keys. Pet. 50, 55–56.

Lastly, claim 5 requires "receiving a plurality of voting selections from the voter, wherein said center push-button switch enables the voter to make at least one voting selection for each of said contests by selecting at least one of said options without providing any input on other of said options." Ex. 1001, 18:63–67. Petitioner argues that Nguyen discloses the 5 key in its five-key navigation group selects or deselects a candidate. Pet. 56–57.

Patent Owner argues that Neff and Nguyen fail to disclose all of the limitations recited in claim 5 because Neff fails to disclose or suggest pairs of push-button switches that navigate a ballot, and Nguyen fails to disclose or suggest push-button switches that perform visual scrolling functions. PO Resp. 51–52. Patent Owner also disagrees that Neff discloses using a mouse-like input for a voter to vote. PO Resp. 17, 61.

After reviewing the parties' arguments and evidence developed during trial, we agree with Petitioner's arguments and find the evidence demonstrates sufficiently that the combined teachings of Neff and Nguyen disclose or suggest all of the limitations of claim 1. Figure 1 of Neff depicts vote client 134 as a computer monitor display with a mouse, which is "used by voters to generate voted ballots." Ex. 1007 ¶ 28, Fig. 1. Additionally, Neff's use of the term "click the next button" is a phrase commonly used to refer to an action involving a computer mouse. Ex. 1007 ¶ 43. Furthermore, Neff's disclosure is not limited to vote clients using only touch-screen displays, as Neff clearly indicates that touch-screen monitors are used in "some embodiments." Ex. 1007 ¶ 41.

As discussed above with regard to claim 1, Nguyen's five-key navigation group includes a center push-button switch and first and second pairs of push-button switches in the configuration recited in claim 5, wherein the center push-button switch enables the voter to make a voting selection without providing any input on other options, and the first and second pair of push-button switches enable the voter to scroll among said contests and options. Ex. 1005, 12:9–59.

This evidence supports Petitioner's argument that the combined teachings of Neff (a voting system having a display screen and mouse-like input) and Nguyen (a keypad input device including a five-panel navigation group for scrolling among contests and options and selecting candidates) disclose or suggest all of the limitations in claim 5. Patent Owner's argument that Petitioner fails to demonstrate these references disclose all of the limitations in claim 5 is unavailing, as it attacks the disclosures of Neff and Nguyen individually, instead of focusing on the combined disclosures of the references.

Based on the foregoing, we determine Petitioner has demonstrated by a preponderance of evidence that the combined teachings of Neff and Nguyen disclose or suggest all of the limitations of claim 5.

Patent Owner argues that a person of ordinary skill in the art would not have had a reason to modify Neff in view of Nguyen to arrive at the claimed invention. PO Resp. 52. In particular, Patent Owner argues that Neff discloses a single format for visual presentation of a ballot, as shown in Figure 6 below.



Fig. 6

Figure 6 of Neff is a diagram showing a sample display for selecting candidates in a race for office that includes a two-dimensional grid of selectable candidate fields, a next icon for moving to a subsequent contest, and a back icon for moving to a previous contest. Ex. 1007 ¶ 14.

Patent Owner contends that modifying Neff to include a five-key navigation group of Nguyen would create a counterintuitive voting system that would not facilitate voting. PO Resp. 53. Patent Owner notes Nguyen's vertically arranged 2 and 8 keys scroll among contests, but Neff's screen display uses horizontally spaced icons 621 and 623, with right and left arrowheads, for moving among contests. According to Patent Owner, this creates a directional conflict between Nguyen's physical buttons and Neff's displayed buttons, and a person of ordinary skill in the art "would not, under any circumstances, have considered bodily incorporating the five-key navigation group 67 of Nguyen into the voting system disclosed in Neff." PO Resp. 53–54.

The test for obviousness, however, "is not whether the features of one reference may be bodily incorporated into another reference." *In re Wood*, 599 F.2d 1032, 1037 (CCPA 1979). Furthermore, "[a] person of ordinary skill is also a person of ordinary creativity, not an automaton." *KSR*, 550 U.S. at 421. As such, we disagree that a person of ordinary skill in the art would have ignored Nguyen's teachings because of a "directional conflict" when, as Dr. Bederson suggests, a person of ordinary skill in the art would have been able to avoid any directional conflict by adopting the appropriate button layout. Reply 24; Ex. 1042 ¶¶ 65–66. Dr. Shamos does not dispute that a person of ordinary skill in the art would have been able to modify the keys of Nguyen to work with Neff's graphic layout. Ex. 1027, 81:18–24; Reply 24–25.

Additionally, Nguyen's use of the vertically oriented 2 and 8 push-button switches to perform scrolling among contests is based on "a physical ballot that is laid out with various contests located from top to bottom and with various candidates within those contests laid out from left to right." Ex. 1005, 12:22–27; Ex. 1042 ¶ 65; Reply 24. Although this layout is different from the layout of the ballot shown in Figure 6 of Neff, Neff explicitly indicates that Figure 6 is just a sample display. Ex. 1007 ¶ 14. The same is true for Nguyen's system, including the 5-key navigation pad, which is just a preferred embodiment. Ex. 1005, 12:9–10. A person of ordinary skill in the art would have understood from Nguyen's disclosure that the keypad is configured with a particular ballot in mind, and that the keypad could be configured differently based on a ballot that used a different layout. *KSR*, 550 U.S. at 421. For example, we agree with Petitioner that if the desired ballot organization involved scrolling horizontally to move

among contests, a person of ordinary skill in the art would have understood "that the '4' and '6' keys could instead be used to move between contests depending on the context of the ballot." *See* Reply 24; Ex. 1042 ¶¶ 65–66.

In addition to providing evidence demonstrating that a person of ordinary skill in the art would have had the ability to alter Nguyen's key functionality to work with Neff, Petitioner also provides sufficient evidence demonstrating that a person of ordinary skill in the art would have had reason to do so. Neither Dr. Shamos nor Patent Owner disputes Petitioner's primary rationale for combining the teachings of Neff and Nguyen, which is to provide a "more useful input device for electronic voting," especially one that "could be easier to use for people without experience using a mouse or for those with mobility impairments that make it hard to control a mouse." Pet. 50; Ex. 1022 ¶ 139.

Finally, we disagree with Patent Owner's argument that a person of ordinary skill in the art would have used a directional input pad to move a cursor on the graphical display instead of using Nguyen's five-key navigation group to scroll among options and contests (PO Resp. 54–57), because it ignores the teachings of Nguyen. The fact that directional pads were known and commonly used with graphic displays to move a cursor suggests that using such a configuration is one alternative to Nguyen's configuration, not that a person of ordinary skill in the art would necessarily use it over Nguyen's configuration, as Patent Owner concludes. PO Resp. 54–55.

For all of the foregoing reasons, we find Petitioner has established, by a preponderance of evidence, that a person of ordinary skill in the art would have had a reason to combine the teachings of Neff and Nguyen to achieve

the invention recited in claim 5 and would have had a reasonable expectation of success in doing so. Pet. 47–57; Reply 22–25; Ex. 1022 ¶¶ 139–147; Ex. 1042 ¶¶ 63–66.

As result, we find Petitioner has demonstrated, by a preponderance of evidence, that the subject matter of claim 5 would have been obvious in view of Neff and Nguyen.

### 2. Claim 8

Claim 8 depends from claim 5, and further requires the "navigation device to include one or more auxiliary push-button switches located remote from said first and second pairs of push-button switches and said center push-button switch." Ex. 1001, 19:9–12. Petitioner relies on the same arguments here as it did for claim 4, which recites the same limitations. Pet. 58–60. For the same reasons discussed above in connection with claim 4, we do not agree with Petitioner's arguments that Nguyen discloses one or more auxiliary push-button switches located remote from the first and second pairs of push-button switches and the center push-button switch of its five-key navigation group. *See* Section II.E, *supra*.

As a result, we find Petitioner has not established, by a preponderance of evidence, that the subject matter of claim 8 would have been obvious in view of Neff and Nguyen.

### I. Claims 6 and 7 – Alleged Obviousness in view of Neff, Nguyen, and Marshall

Petitioner contends claims 6 and 7 are unpatentable as obvious in view of the combined teachings of Neff, Nguyen, and Marshall. Pet. 60–64; Reply 27. Claim 6 depends from claim 5, and further requires that at least two of the push-button switches are uniquely shaped. Ex. 1001, 19:1–2.

Claim 7 depends from claim 6, and requires "said first pair of push button switches are generally triangularly shaped and point up and down respectively, said second pair of push-button switches are generally triangularly shaped and point right and left respectively, and said center push-button switch is generally rectangularly shaped." Ex. 1001, 19:3–8. These limitations correspond to those recited in claims 2 and 3, respectively, and Petitioner relies on the same arguments for the unpatentability of claims 6 and 7 as it does for claims 2 and 3, namely that it would have been obvious to a person of ordinary skill in the art to modify the shape of the push-buttons in Nguyen's five-key navigation group to include the uniquely shaped buttons disclosed in Marshall, which would allow a user to distinguish the buttons based on touch alone to increase accessibility of the system. Pet. 36–39 (discussing claims 2 and 3), 60–64 (discussing claims 6 and 7).

Patent Owner similarly relies on arguments made in connection with claims 2 and 3, and further argues that adding Marshall to the combination of Neff and Nguyen does not cure the aforementioned deficiencies of the proposed combination of Neff and Nguyen. PO Resp. 58–60. In particular, Patent Owner argues that in view of Marshall, a person of ordinary skill in the art would have modified Neff to include a navigation panel so that the vertical and horizontal directional buttons cause a cursor to move in corresponding directions on the screen, and a user must press a center select key after moving the cursor over the "back" or "next" icon in order to scroll among contests. PO Resp. 58–60; Sur-reply 23. Accordingly, Patent Owner concludes that the combined teachings of Neff, Nguyen, and Marshall fails to disclose "one of said first and second pairs of push-button switches [that]

enables the voter to scroll among said contests," as the claims require. PO Resp. 60.

For the same reasons discussed above in Section II.F, we agree with Petitioner's arguments and evidence demonstrating Marshall discloses the additional limitations of claims 6 and 7, and that a person of ordinary skill in the art would have had a reason to modify the shape of Nguyen's keys in the five-key navigation group in view of Marshall. Pet. 60–64; Ex. 1022 ¶¶ 154, 157. Additionally, for the reasons discussed above, we agree with Petitioner's arguments and evidence that Neff and Nguyen disclose all of the limitations in claim 5, and that a person of ordinary skill in the art would have had reason to modify Neff in view of Nguyen to achieve the claimed invention and would have had a reasonable expectation of successfully doing so. *See* Section II.H, *supra*. In view of this, we disagree with Patent Owner's argument that a person of ordinary skill in the art "in possession of Neff, Nguyen, and Marshall would not have modified Neff to include 'one of said first and second pairs of push-button switches [that] enables the voter to scroll among said contests, and . . . the other of said first and second pairs of push-button switches [that] enables the voter to scroll among said options.'" PO Resp. 60. Nor do we agree with Patent Owner's argument that a person of ordinary skill in the art would have modified Neff to include a navigation panel so that the vertical and horizontal directional buttons cause a cursor to move in corresponding directions on the screen based on Marshall's disclosure. PO Resp. 58–60; Sur-reply 23. As discussed above, such a conclusion requires ignoring the teachings of Nguyen.

For all of the foregoing reasons, we find Petitioner has established, by a preponderance of evidence, that the combined teachings of Neff, Nguyen,

and Marshall teach or suggest all of the limitations in claims 6 and 7 and that a person of ordinary skill in the art would have had a reason to combine the teachings of Neff, Nguyen, and Marshall to achieve the claimed invention and would have had a reasonable expectation of success in doing so. Pet. 36–38, 61–64. As result, we find Petitioner has demonstrated, by a preponderance of evidence, that the subject matter of claims 6 and 7 would have been obvious in view of Neff, Nguyen, and Marshall.

### J. Petitioner's Remaining Unpatentability Challenges

Petitioner asserts that claims 1–8 are unpatentable as obvious in view of the combined teachings of Neff and Marshall (Pet. 64–83; Reply 28–29), and claims 9–19 are unpatentable as obvious in view of the combined teachings of Neff, Marshall, and McDermott (Pet. 83–102; Reply 29–30).

Independent claims 1, 5, 9, and 13 all require a navigation device having a center push-button switch, a first pair of push-button switches positioned above and below the center push-button switch, and a second pair of push-button switches positioned left and right of the center push button switch. Ex. 1001, 18:17–22 (claim 1), 18:51–55 (claim 5), 19:17–21 (claim 9), 20:8–13 (claim 13). These independent claims also require one of said first and second pairs of push-button switches enables scrolling among voting contests, wherein the other of said first and second pairs of push-button switches enables scrolling among voting options for each contest. Ex. 1001, 18:23–28 (claim 1), 18:57–62 (claim 5), 19:23–28 (claim 9), 20:14–18 (claim 13).

For these limitations in each of the independent claims, Petitioner relies on Marshall's disclosure of an input device having a center push-button switch, a first pair of push-button switches positioned above and

below the center push-button switch, and a pair of push-button switches
positioned left and right of the center push-button switch, and asserts:

> With the combination of the Marshall input device, it would
> have been obvious to one of ordinary skill in the art to allow a
> voter to use one of said first and second pairs of push-button
> switches to move among said contest selections, and the other
> of said first and second pairs of push-button switches enables
> the voter to move between the selection options.

Pet. 67–73 (citing Ex. 1022 ¶ 171), 82, 86–90, 99–100; Reply 28–29 (citing
Ex. 1042 ¶ 74).

Patent Owner argues that Marshall does not disclose or suggest a
navigation device having one pair of push-button switches that enables the
voter to scroll among contests and the other pair of push-button switches that
enables the voter to scroll among options. PO Resp. 61–62. According to
Patent Owner, Marshall discloses seven specific methods of using a five-key
directional navigation panel with a graphic interface, and each method
configures the directional keys contrary to the claimed method. PO
Resp. 58–59, 62.

We agree with Patent Owner. Petitioner does not direct us to any
portion of Marshall that discloses using one pair of push-button switches to
scroll among voting contests and another pair of push-button switches to
scroll among options. And the conclusory statements presented by
Petitioner (Pet. 72; Reply 28) and Dr. Bederson (Ex. 1022 ¶ 171; Ex. 1042
¶ 74) regarding what would have been obvious to a person of ordinary skill
in the art do not constitute sufficient evidence to meet Petitioner's burden of
proof considering Marshall itself discloses using both pairs of push-button
switches to move a "highlight" up, down, left, or right among various
choices on a single screen. Ex. 1006, 170. This configuration is different

from using only one pair of push-button switches for the very specific operation of scrolling among voting contests, and the other pair of push-button switches for the specific operation of scrolling among voting options as required in the independent claims. Absent some suggestion in the asserted prior art of the claimed limitation (e.g., Nguyen's disclosure of a five-key navigation pad with keys 2 and 8 scrolling among voting contests and keys 4 and 6 scrolling among voting contests), we agree with Patent Owner that Petitioner is attempting to "reconstruct the claimed invention from improper hindsight." PO Resp. 65; *KSR*, 550 U.S. at 421 ("A factfinder should be aware, of course, of the distortion caused by hindsight bias and must be cautious of arguments reliant upon *ex post* reasoning.")

For all of the foregoing reasons, we find Petitioner has failed to establish, by a preponderance of evidence, that the combined teachings of Neff and Marshall teach or suggest all of the limitations in claims 1–8 or that the combined teachings of Neff, Marshall, and McDermott teach or suggest all of the limitations of claims 9–19. As result, we find Petitioner has failed to demonstrate, by a preponderance of evidence, that the subject matter of claims 1–19 would have been obvious in view of Neff and Marshall, either alone or in combination with McDermott.

### III.  MOTION TO AMEND

In its Contingent Motion to Amend, Patent Owner states that if the Board "finds any of issued claims 1–3, 9–11, 13–15, or 17–19 to be anticipated and/or obvious under 35 U.S.C. §§ 102/103, [Patent Owner] respectfully requests that the Board substitute the anticipated and/or obvious claim(s) of claims 1–3, 9–11, 13–15, or 17–19 with the respective proposed substitute claim of claims 20–31." Mot. 1. For the reasons explained above,

Petitioner has demonstrated by a preponderance of evidence that claims 1–3, 9–11, 13–15, and 17–19, are unpatentable as anticipated or obvious. As a result, we analyze Patent Owner's substitute claims 20–31.

### A. Applicable Law

In an *inter partes* review, amended claims are not added to a patent as of right, but rather must be proposed as a part of a motion to amend. 35 U.S.C. § 316(d). The Board must assess the patentability of proposed substitute claims "without placing the burden of persuasion on the patent owner." *Aqua Prods., Inc. v. Matal*, 872 F.3d 1290, 1328 (Fed. Cir. 2017) (en banc); *see also Lectrosonics, Inc. v. Zaxcom, Inc.*, IPR2018-01129, Paper 15 at 3–4 (PTAB Feb. 25, 2019) (precedential). Subsequent to the issuance of *Aqua Products*, the Federal Circuit issued a decision in *Bosch Automotive Service Solutions, LLC v. Matal*, 878 F.3d 1027 (Fed. Cir. 2017) ("*Bosch*"), as well as a follow-up order amending that decision on rehearing. *See Bosch Auto. Serv. Sols., LLC v. Iancu*, No. 2015-1928 (Fed. Cir. Mar. 15, 2018) (Order on Petition for Panel Rehearing).

In accordance with *Aqua Products*, *Bosch*, and *Lectrosonics*, Patent Owner does not bear the burden of persuasion to demonstrate the patentability of the substitute claims presented in the motion to amend. Rather, ordinarily, "the petitioner bears the burden of proving that the proposed amended claims are unpatentable by a preponderance of the evidence." *Bosch*, 878 F.3d at 1040 (as amended on rehearing); *Lectrosonics,* Paper 15 at 3–4. In determining whether a petitioner has proven unpatentability of the substitute claims, the Board focuses on "arguments and theories raised by the petitioner in its petition or opposition

to the motion to amend." *Nike, Inc. v. Adidas AG*, 955 F.3d 45, 51 (Fed. Cir. 2020).

Notwithstanding the foregoing, Patent Owner's proposed substitute claims 20–31 must meet the statutory requirements of 35 U.S.C. § 316(d) and the procedural requirements of 37 C.F.R. § 42.121. *Lectrosonics*, Paper 15 at 4–8. Accordingly, Patent Owner must demonstrate: (1) the amendment proposes a reasonable number of substitute claims; (2) the amendment responds to a ground of unpatentability involved in the trial, (3) the proposed claims are supported in the original disclosure (and any earlier filed disclosure for which the benefit of filing date is sought); and (4) the amendment does not seek to enlarge the scope of the claims of the patent or introduce new subject matter. *See* 35 U.S.C. § 316(d); 37 C.F.R. § 42.121.

### B. Proposed Substitute Claims

Proposed substitute claim 20, with underlining indicating the language added to original claim 1 and strikethroughs indicating language deleted, is reproduced below.[11]

> Claim 20 (replaces claim 1): A method of voting that allows a voter to navigate a plurality of contests and a plurality of options associated with each of said contests, said method comprising:
>
> [A] providing a touchscreen display;
>
> [B] providing a navigation device comprising a center push-button switch, a first pair of push-button switches positioned above and below said center push-button switch, and a second pair of push-button switches positioned left and right of said center push-button switch;

---

[11] Patent Owner indicates that the brackets are not part of the proposed claim, but are included for reference annotation purposes only. Mot. at Appendix A, 2 n.1.

[C] presenting said contests and said associated options to the voter, <u>wherein said presenting said contests and said associated options to the voter comprises displaying on the touchscreen display a discrete presentation screen for each of the contests, each discrete presentation screen comprising a name for each of the options associated with the respective contest, the names for the options associated with each respective contest being displayed in a single vertical column on the respective presentation screen,</u> [D]wherein ~~one of~~ said ~~first and~~ second ~~pairs~~ <u>pair</u> of push-button switches enables the voter to scroll among said contests <u>without any other user input,</u> and wherein ~~the other of~~ said first ~~and second pairs~~ <u>pair</u> of push-button switches enables the voter to scroll among said options <u>without any other user input,</u> [E] <u>wherein presenting said contests comprises communicating a name for a contest after the voter scrolls to the contest, and wherein presenting said associated options comprises communicating the name for the option after the voter scrolls to the option;</u>

[F] <u>wherein scrolling among said contests comprises changing which of the discrete presentation screens is displayed on the touchscreen display;</u> and

[G] receiving a plurality of voting selections from the voter, wherein said center push-button switch enables the voter to make at least one voting selection for each of said contests by selecting at least one of said options without providing any input on other of said options.

Mot. at Appendix A, 2–3.

Proposed substitute claim 21 amends original claim 2 to depend from claim 20 instead of claim 1. Mot. at Appendix A, 3. Proposed substitute claim 22 amends original claim 3 to depend from claim 21 instead of claim 2. Mot. at Appendix A, 3.

Proposed substitute claim 23 with underlining indicating language added to original claim 9, and strikethrough indicating language deleted, is reproduced below.

Claim 23 (replaces claim 9): A method of voting that allows a voter to navigate a plurality of contests and a plurality of options associated with each of said contests, said method comprising:

[A] providing a set of headphones;

[B] providing a touchscreen display configured to visually present said contests and said associated options to the voter;

[C] providing a navigation device comprising a center push-button switch, a first pair of push-button switches positioned above and below said center push-button switch, and a second pair of push-button switches positioned left and right of said center push-button switch;

[D] audibly presenting said contests and said associated options to the voter via said headphones after the voter elects to have said contests and said associated options presented audibly,

[E] wherein one of said first and second pairs of push-button switches enables the voter to scroll among said contests, and wherein the other of said first and second pairs of push-button switches enables the voter to scroll among said options, [F] wherein audibly presenting said contests comprises communicating a name for a contest after the voter scrolls to the contest, and wherein audibly presenting said associated options comprises communicating the name for the option after the voter scrolls to the option;

[G] adjusting the touchscreen display after the voter elects to have said contests and said associated options presented audibly so that said contests and said associated options are not visually presented on the touchscreen display as said contests and said associated options are presented audibly via said headphones; and

[H] receiving a plurality of voting selections from the voter, wherein said center push-button switch enables the voter to make at least one voting selection for each of said contests by selecting at least one of said options without providing any input on other of said options.

Mot. at Appendix A, 3–4.

Proposed substitute claim 24 amends original claim 10 to depend from claim 23 instead of claim 9. Mot. at Appendix A, 4. Proposed substitute claim 25 amends original claim 11 to depend from claim 24 instead of claim 10. Mot. at Appendix A, 4.

Proposed substitute claim 26 with underlining indicating language added to original claim 13, and strikethrough indicating language deleted, is reproduced below.

Claim 26 (replaces claim 13): A ~~voting system~~ voter assistance terminal comprising:

[A] a top housing having a first side portion, a second side portion, and a recess between the first side portion and the second side portion:

[B] a ballot marking device;

[C] ~~one or both of~~ a display screen ~~and a set of headphones~~ in communication with said ballot marking device and configured to present a plurality of contests and a plurality of options associated with each of said contests, [D] the display screen being electrically connected to the ballot marking device and movable relative to the top housing between a first position and a second position, at least a portion of the display screen being received in the recess in the first position and spaced apart above the recess in the second position; and

[E] a navigation device in communication with said ballot marking device and comprising a sub-panel having a center push-button switch, a first pair of push-button switches positioned above and below said center push-button switch, and a second pair of push-button switches positioned left and right of said center push-button switch, the sub-panel being supported on the first side portion of the top housing, [F] wherein said navigation device is configured such that one of said first and second pairs of push-button switches enables scrolling among said contests, wherein the other of said first and second pairs of push-button switches enables scrolling among said options; and wherein said center push-button switch enables the entry of at least one voting selection for each of said contests by selecting

at least one of said <u>options</u> without providing any input on other
of said options.

Mot. at Appendix A, 5.

Proposed substitute claim 27 amends original claim 14 to depend from
claim 26 instead of claim 13.  Mot. at Appendix A, 5.  Proposed substitute
claim 28 amends original claim 15 to depend from claim 27 instead of
claim 14.  Mot. at Appendix A, 6.  Proposed substitute claim 29 amends
original claim 17 to depend from claim 26 instead of claim 13.  Mot. at
Appendix A, 6.  Proposed substitute claim 30 amends original claim 18 to
depend from claim 29 instead of claim 17.  Mot. at Appendix A, 6.
Proposed substitute claim 31 amends original claim 19 to depend from
claim 30 instead of claim 18.  Mot. at Appendix A, 6.

## C.  Statutory and Regulatory Requirements

"Before considering the patentability of any substitute claims, . . . the
Board first must determine whether the motion to amend meets the statutory
and regulatory requirements set forth in 35 U.S.C. § 316(d) and 37 C.F.R.
§ 42.121." *Lectrosonics*, Paper 15 at 4–8.

### 1.  Claim Listing

The motion to amend includes a claim listing, as required by
37 C.F.R. § 42.121(b).  Mot. at Appendix A.

### 2.  Reasonable Number of Substitute Claims

"There is a rebuttable presumption that a reasonable number of
substitute claims per challenged claim is one (1) substitute claim."
*Lectrosonics*, Paper 15 at 4–5 (citing 37 C.F.R. § 42.121(a)(3)).  The
Petition challenges 19 claims, and Patent Owner proposes 11 substitute

claims. Thus, based on numbers alone, Patent Owner proposes no more than one substitute claim for each challenged claim. Mot. 1–2.

Petitioner argues that there is not a one-to-one ratio of challenged claims to substitute claims because Patent Owner failed to propose substitute claims for original dependent claims 4, 12, and 16 to change their dependency from original claims 1, 9, and 13, respectively, to proposed substitute claims 20, 23, and 26, respectively. Pet. Mot. Sur-reply 3–4. As a result, Petitioner contends that claims 4, 12, and 16, if found patentable and re-written in independent form in an IPR certificate to include all of the limitations of claims 1, 9, and 13, respectively, would effectively become independent substitutes for claims 1, 9, and 13. Pet. Mot. Sur-reply 4. According to Petitioner, this would mean each of claims 1, 9, and 13 would have two substitute independent claims, 4 and 20 for claim 1, 12 and 23 for claim 9, and 16 and 26 for claim 13. Pet. Sur-reply 4.

Claims 4, 12, and 16 are not part of Patent Owner's motion to amend. Thus, regardless of whether claims 4, 12, and 16, when re-written in independent form to include all of the limitations of claims 1, 9, and 13, respectively, "effectively" become independent substitutes for claims 1, 9, and 13, they do not change the fact that Patent Owner did not propose, in its Motion, more than one substitute claim to replace independent claims 1, 9, and 13.

Accordingly, we determine that the number of proposed claims is reasonable.

### 3. Respond to Ground of Unpatentability

We next consider whether the proposed substitute claims respond to a ground of unpatentability involved in this trial. *Lectrosonics*, Paper 15 at 5–

6.  Patent Owner responds to the grounds of unpatentability at pages 12–25 of the Motion.  In particular, Patent Owner presents claim amendments in an attempt to add features to further distinguish the substitute claims as patentable over the references asserted in the instituted grounds.  Mot. 12–25.  Petitioner does not argue otherwise.  *See generally* Opp.  In light of the above, we determine that the amended language in the proposed substitute claims is responsive to the grounds of unpatentability involved in this trial.

### 4.  *Scope of Amended Claims*

"A motion to amend may not present substitute claims that enlarge the scope of the claims of the challenged patent." *Lectrosonics,* Paper 15 at 6–7 (citing 35 U.S.C. § 316(d)(3); 37 C.F.R. § 41.121(a)(2)(ii)).  Patent Owner argues the proposed substitute claims include narrowing limitations. Mot. 2–3.  In particular, Patent Owner argues that in addition to the limitations expressly added to the claims, the language removed from claims 1 and 13 also narrows the claims, and argues the changes to the preamble in several claims do not broaden the claims because the original preambles were not limiting.  Mot. 2–3.  Petitioner does not argue otherwise. *See generally* Opp.

We determine that the limitations added to proposed claims 20–31 do not enlarge the scope of the original claims.

### 5.  *New Matter/Written Description*

"A motion to amend may not present substitute claims that . . . introduce new subject matter." *Lectrosonics*, Paper 15 at 6–7 (citing 35 U.S.C. § 316(d)(3); 37 C.F.R. § 41.121(a)(2)(ii)).  Accordingly, "the Board requires that a motion to amend set forth written description support in the originally filed disclosure of the subject patent for each proposed

substitute claim, and also set forth support in an earlier filed disclosure for each claim for which benefit of the filing date of the earlier filed disclosure is sought." *Id.* at 7 (citing 37 C.F.R. § 42.121(b)(1)–(2)). For this requirement, Patent Owner must cite "to the original disclosure of the application, as filed, rather than to the patent as issued." *Id.* at 8.

The test for determining compliance with the written description requirement is whether the disclosure of the application as originally filed reasonably conveys to a person of ordinary skill in the art that the inventor had possession of the claimed subject matter at the time of filing, rather than the presence or absence of literal support in the specification for the claim language. *Ariad Pharms., Inc. v. Eli Lilly & Co.*, 598 F.3d 1336, 1351 (Fed. Cir. 2010) (en banc); *Vas-Cath, Inc. v. Mahurkar*, 935 F.2d 1555, 1563 (Fed. Cir. 1991); *In re Kaslow*, 707 F.2d 1366, 1375 (Fed. Cir. 1983).

Patent Owner argues that the proposed substitute claims are fully supported by U.S. Patent Application No. 10/454,345 (Ex. 2003, ("the '345 application")), and directs us to several portions of the '345 application in support of its arguments. Mot. 3–12. Petitioner argues claims 20–31 lack written description support and/or are indefinite,[12] focusing on independent substitute claims 20, 23, and 26, but indicating the substitute dependent

---

[12] We recognize the issue of indefiniteness under 35 U.S.C. § 112 pertains to the patentability of the proposed substitute claims for which Petitioner bears the burden of proof. Nevertheless, to the extent Petitioner presents a substantive argument regarding this issue, we address it here because Petitioner addresses written description and indefiniteness together under its analysis of whether Patent Owner's Motion meets the requirements of 35 U.S.C. § 316(d) and 37 C.F.R. § 42.121. *See* Opp. 2–10.

claims that depend from claims 20, 23, and 26 lack written description support for the same reasons.  Opp. 3–9.

With regard to claim 20, Petitioner argues that there is no support for "displaying on a touchscreen display a discrete presentation screen for each of the contests."  Opp. 3–4.  In particular, Petitioner argues the term "discrete" never appears in the specification or the drawings, and Patent Owner does not propose an express construction of the term in its Motion, resulting in the term being indefinite.  Opp. 4.  Petitioner states that to the extent "discrete" means "separate," the '273 patent does not disclose a separate presentation screen for each contest because "each contest may have write-in editor screens (FIGS. 25f and 25g) that are the same for each contest and all of the contests may be displayed in a selection review screen. (Fig. 25i)."  Opp. 4.

As noted above, the test for determining compliance with the written description requirement is not the presence or absence of literal support in the specification for the claim language.  *See Ariad,* 598 F.3d at 1351.  Thus, the fact that the term "discrete" does not appear in the original disclosure alone does not demonstrate a lack of written description support.

Furthermore, we disagree with Petitioner's contention that the term "discrete" is indefinite, as evidence of record demonstrates that a person of ordinary skill in the art would have understood the scope of this limitation. *Nautilus, Inc. v. Biosig Instruments, Inc.*, 134 S. Ct. 2120, 2124 (2014) ("[A] patent is invalid for indefiniteness if its claims, read in light of the specification delineating the patent, and the prosecution history, fail to inform, with reasonable certainty, those skilled in the art about the scope of the invention."); *In re Packard*, 751 F.3d 1307, 1311 (Fed. Cir. 2014)

(holding a claim is indefinite when it contains words or phrases whose meaning is "unclear in describing and defining the claimed invention"). For example, during the oral hearing, counsel for Petitioner indicated that "discrete" means "separate." Tr. 17:19–18:2. Counsel for Patent Owner indicated that discrete means having no more than one contest on a screen, and all of the candidates for a contest are on the same screen. Tr. 43:16–21. Under either definition of the term, we find at least Figures 25a and 25e depict discrete presentation screens for individual voting contests because the candidates for each contest are presented together on the same screen and each contest is displayed on its own, separate screen. Ex. 2003, Figures 25a, 25e. The fact that the contests shown in Figures 25a and 25e each include an option for a write in candidate, and the fact that a voter's selections for each contest may subsequently be displayed together on an additional selection review screen does not negate the system's inclusion of separate presentation screens for individual voting contests. We note that substitute claim 20 does not require displaying *only* a discrete presentation screen for each contest.

Petitioner also argues that substitute claim 20 introduces new matter because it "recites only the touchscreen being used," whereas the original disclosure describes an embodiment that uses the touchscreen and key buttons. Opp. 4–5. Therefore, according to Petitioner, "a touchscreen display only embodiment with the discrete presentation screens is also not supported and lacks written description." Opp. 5. Claim 20, however, is not limited to a "touchscreen display only embodiment," as it expressly includes the use of push-button switches in conjunction with a touch screen as part of a navigation device. Mot. at Appendix A, 2–3.

Petitioner next argues the recitation in claim 20 that "each discrete screen comprising a name for each of the options associated with the respective contest" lacks written description support. Opp. 5. According to Petitioner, the "name for each of the options" is either the name of a candidate or a "Yes" or "No" proposition and the '273 patent discloses that a number of contest screens have a write-in label, which is neither a name of a candidate nor a "Yes" or "No" proposition. Opp. 5. Petitioner further argues that the write-in screens themselves have neither a name of a candidate nor a "Yes" or "No" proposition. Opp. 5. As shown in Figures 25a and 25e, however, the voting options for each contest are listed on the screen, and one "option" that can be selected is "write in." Thus, we disagree that the phrase "the names for the options" is limited to the name of a candidate or the choice between "Yes" and "No," as Petitioner argues. Opp. 5. Furthermore, Patent Owner is not relying on the write-in editor screens themselves as providing written description support for "discrete presentation screen." Mot. 4–5.

Petitioner argues that the language requiring the push-buttons to enable the voter to scroll "without any other user input" in claim 20 lacks written description support because the phrase does not appear in the original disclosure or any drawing, and because the original disclosure "discloses that all of the control options (that enable to the voter to scroll) may be accomplished using the touchscreen or the touchscreen and/or audio sequence," meaning that some other user input can enable the voter to scroll. Opp. 6–7. Again, as noted above, the absence of literal support in the specification for a claim term is not determinative. *See Ariad,* 598 F.3d at 1351. Furthermore, the fact that some embodiments involve using the

touchscreen to scroll through voting options does not detract from the disclosure of other embodiments that do not involve using the touchscreen to accomplish that task. And Patent Owner directs us to portions of the original disclosure that describe scrolling among contests and options using only the press buttons of the navigation sub-panel to scroll through contests and voting options. Mot. 5; Ex. 2003, 4:6–16, 40:14–20, 41:10–18, claim 1.

With regard to claim 23, Petitioner disputes that there is written description support for the method step requiring "audibly presenting said contests and said associated options to the voter via said headphones after the voter elects to have said contests and said associated options presented audibly." Opp. 7–8. Petitioner points out that Patent Owner relies on the following statement for written description support of the "audibly presenting" limitation: "Specifically, the voter can insert the headphone jack 316 into the voter assistance terminal 300 **after** electing to have the contests and associated options presented audibly." Opp. 7. According to Petitioner, Patent Owner asserts that something other than inserting the headphone jack into the terminal performs the election step in the claim, but Petitioner contends there is nothing in the original disclosure demonstrating that "something other than the headphone jack elects the audible presentation." Opp. 8.

In support of its position that claim 23 does not include new matter, Patent Owner contends that Figure 22b shows the claimed voter assistance terminal includes a screen having "AUDIO prompt 514 which **toggles the digitized audio voting sequence on and off**." PO Mot. Reply 5; Ex. 2003, 39:1–2, Fig. 22b; Mot. 6–7 (citing Figs. 19–25 and page 39 of the original disclosure in support of Patent Owner's written description argument). We

agree with Patent Owner's contention that this is an example of a voter electing to have contests presented audibly that is different from inserting the headphone jack into the terminal. PO Mot. Reply 4–6.

Petitioner also argues that there is no written description support for "adjusting the touchscreen display after the voter elects" to have the contest and options presented audibly. Opp. 8. Specifically, Petitioner argues that at most, the specification discloses that the display shuts down (turns black), but the claim encompasses any method for adjusting the touchscreen display such that the contests and cases are not visually presented, which is broader than any disclosure in the specification. Opp. 8–9 (citing Ex. 1027, 109:7–110:1 (Dr. Shamos testifying that the touchscreen display can be adjusted in various ways)).

"[T]he level of detail required to satisfy the written description requirement varies depending on the nature and scope of the claims and on the complexity and predictability of the relevant technology." *Ariad,* 598 F.3d at 1351 (citing *Capon v. Eshhar*, 418 F.3d 1349, 1357–58 (Fed. Cir. 2005)). We are not aware of evidence on this record demonstrating that the concept of adjusting a screen to prevent the visual display of information is complex or unpredictable. The testimony from Dr. Shamos regarding the various ways of adjusting the screen so that the contests and options are not visually presented suggests that doing so would have been a routine matter to a person of ordinary skill in the art and part of the existing knowledge in the field. *Ariad,* 589 F.3d at 1351; *In re Wallach*, 378 F. 3d 1330, 1334 (Fed. Cir. 2004). As such, the specification's failure to list every possible way of adjusting a screen does not demonstrate a lack of written description support for claim 23. *Ariad,* 589 F.3d at 1351; *Wallach*, 378 F. 3d at 1334.

With regard to claim 26, Petitioner argues that there is no written description support for the requirement of "a top housing having a first side portion, a second side portion, and a recess between the first side portion and the second side portion" because claim 26 requires there to be "no relationship" between the top housing and the ballot marking device recited later in claim 26. Opp. 9–10. The portion of the original disclosure that Patent Owner relies on, however, clearly shows the ballot marking device being positioned between top housing 340 and lower housing 334. Opp. 9–10; Ex. 2003, 35:14–16, Figs. 19, 20. We disagree that claim 26 includes a requirement regarding any specific relationship, or lack thereof, between the top housing and the ballot marking device. Claim 26 simply recites that the voter assistance terminal comprises both, which is consistent with the description in the original disclosure. Mot. at Appendix A, 5; Ex. 2003, 35:11–16, Figs. 19, 20. Not only does this demonstrate written description support, but it also undermines Petitioner's argument that substitute claim 26 is indefinite. Opp. 9–10.

After considering the parties' arguments and evidence, including Patent Owner's citations to the '345 application for the limitations of proposed substitute claims 20–31, we determine that the proposed substitute claims do not present new matter, are not indefinite, and Patent Owner has set forth support in the original disclosure for the proposed substitute claims.

### 6. Conclusion

Patent Owner's Motion meets the statutory requirements of 35 U.S.C. § 316(d) and the requirements of 37 C.F.R. § 42.121.

### D. Patentability of Substitute Claims

### 1. Proposed Substitute Claims 20–22

Petitioner contends that substitute claims 20–22 are unpatentable as obvious in view of the combined disclosures of Neff, Marshall, and Boldin.[13]  Opp. 10.

With regard to claim 20, Petitioner indicates that various elements of substitute claim 20 are disclosed in Neff and Marshall as set forth in the Petition.  Opp. 11.  This includes Petitioner's argument that Neff and Marshall teach or suggest that "[p]ush-button switches enables the voter to scroll . . ." as set forth in Section V.F.4.iii of the Petition.  Opp. 11; *see also* Pet. 64 (showing that Section V.F addresses the obviousness of claims 1–8 under Neff in view of Marshall).  As discussed in Section II.J above, however, we do not agree with Petitioner's arguments in the Petition that Neff and Marshall teach or suggest this limitation.

In addition to maintaining the requirement that the first and second pairs of push-button switches enable the voter to scroll among voting contests and options, Patent Owner's proposed amendments to substitute claim 20 further specify that the second pair of push-button switches enables the voter to scroll among contests and the first pair of push-button switches enables the voter to scroll among options.  Mot. at Appendix A, 2.  Substitute claim 20 adds an additional limitation, requiring that the first and second pairs of push-buttons switches enable scrolling among options and contests "without any other user input."  Mot. at Appendix A, 2.

---

[13] WO 03/060837 A1, published July 24, 2003 (Ex. 1023).

Petitioner argues that the combined teachings of Neff and Marshall disclose or suggest these limitations, because Neff discloses that a user can click a box to select a candidate and click next button 621 to proceed to next contest, and can do so without any other user input. Opp. 15. Petitioner further argues that a person of ordinary skill in the art would use the push-button switches disclosed in Marshall for the reasons set forth in the Petition. Opp. 14–15 (citing Petition, Section V.F.3). Petitioner does not contend Boldin discloses these limitations. Opp. 11 (discussing Boldin's disclosure of touchscreens). In its Sur-reply, Petitioner contends that "Marshall specifically discloses that input could be accomplished 'with the navigation keys only . . .'," and, therefore, "a user could navigate an interface with only the navigation keys without any other user input." Pet. Mot. Sur-reply 6.

Substitute claim 20, however, requires more than simply "navigat[ing] an interface with only the navigation keys." Claim 20 specifies that certain keys, and only those keys, perform certain scrolling operations. Petitioner has not directed us to evidence sufficient to establish that Neff or Marshall discloses a pair of push-button switches that enable a user to scroll among voting contests without any other user input. Nor has Petitioner directed us to evidence sufficient to establish that Neff or Marshall discloses a different pair of push-button switches that enable a user to scroll among voting options without any other user input. Instead, Petitioner has simply provided evidence that Marshall's entire navigation pad, i.e., all of the buttons collectively, can be used to enable scrolling among voting options and contests, not that particular buttons, and only those buttons, enable specific scrolling operations, as substitute claim 20 requires.

In view of the foregoing, we find Petitioner has not demonstrated by a preponderance of evidence that the combined disclosures of Neff and Marshall teach or suggest all of the limitations of substitute claim 20. Claims 21 and 22 depend from claim 20, and therefore include all of the limitations in claim 20. As a result, we reach the same conclusion for proposed substitute claims 21 and 22. For all of the foregoing reasons, we find that Petitioner has not established by a preponderance of evidence that proposed substitute claims 20–22 are unpatentable as obvious in view of Neff, Marshall, and Boldin.

2. *Proposed Substitute Claims 23–25*

Petitioner argues that claims 23–25 are unpatentable as obvious over the combined disclosures of Neff, Marshall, McClure[14], and McDermott or Nguyen. Opp. 16.

With regard to claim 23, Petitioner indicates that various elements of substitute claim 23 are disclosed in Neff and Marshall as set forth in the Petition. Opp. 17 (citing only Sections V.G and V.F of the Petition as disclosing certain limitations of claim 23); *see also* Pet. 64 (showing that Section V.F addresses the obviousness of claims 1–8 under Neff in view of Marshall), 83 (showing that Section V.G. addresses the obviousness of claims 9–19 under Neff in view of Marshall and McDermott). This includes Petitioner's argument that Neff and Marshall teach or suggest "push-button switches enables the voter to scroll . . ." as set forth in Section V.F.4.iv[15] of

---

[14] US 6,250,548 B1, issued June 26, 2001 (Ex. 1024).

[15] Although Petitioner cites V.F.4.iv of the Petition, that section addresses a different limitation. Pet. 73. We understand Petitioner intended to cite Section V.F.iii, which addresses the "enables a voter to scroll" limitation

the Petition. Opp. 17. As discussed in Section II.J above, however, we do not agree with Petitioner's arguments in the Petition that Neff and Marshall teach or suggest this limitation. And although Petitioner includes Nguyen among the list of prior art that invalidates substitute claim 23, Petitioner never discusses Nguyen in connection with substitute claim 23, or directs us to any portion of Nguyen that discloses or suggests a limitation of claim 23.

Additionally, claim 23 is directed to a method of voting that includes "providing a touchscreen display configured to visually present [voting] contests and [] associated options to the voter" and "audibly presenting [voting] contests and [] associated options to the voter via [] headphones after the voter elects to have [the] contests and [] associated options presented audibly." Mot. at Appendix A, 3–4. Claim 23 further requires, in an added limitation, "adjusting the touchscreen display after the voter elects to have said contests and said associated options presented audibly so that said contests and said associated options are not visually presented on the touchscreen display as said contests and said associated options are presented audibly via said headphones." Mot. at Appendix A, 4.

Petitioner does not direct us to any portion of Neff, Marshall, McClure, McDermott, or Nguyen that discloses or suggests adjusting the touchscreen display after the voter elects to have the voting options presented audibly so that the options are not visibly presented on the touchscreen. Opp. 20. Instead, Petitioner argues generally that a person of ordinary skill in the art "would have been strongly motivated to offer a solution to individuals with disabilities, including nonvisual access in a way

---

(Pet. 70), and is the section Petitioner cited with regard to this limitation when addressing claim 20. Opp. 11.

that protects those individual's privacy," noting that the Help America Vote Act ("HAVA") requires such privacy. Opp. 20 (citing Ex. 1042 ¶ 110; Ex. 1041).

Although we agree with Petitioner that a person of ordinary skill in the art would have had a reason to protect the voting privacy of an individual with disabilities, Petitioner has not provided sufficient evidence or explanation demonstrating why a person of ordinary skill in the art would have protected the privacy of a voter by adjusting the touchscreen display in the specific manner recited in claim 23. *KSR*, 550 U.S. at 418 ("[I]t can be important to identify a reason that would have prompted a person of ordinary skill in the relevant field to combine the elements *in the way the claimed new invention does*.") (emphasis added). For example, Petitioner does not contend that adjusting the screen is the only way to protect the privacy of a voter under HAVA, or that it has advantages over other ways of protecting privacy. *Cf.* Tr. 44:20–45:4 (counsel for Patent Owner arguing that "voting machines are already positioned in a voting booth where privacy is met under HAVA. That doesn't change just because the person is blind . . . . If you've already met HAVA how does that teach you to turn your screen off."). Absent such evidence or explanation, Petitioner's argument appears to improperly rely on hindsight. *KSR,* 550 U.S. at 421 ("A factfinder should be aware, of course, of the distortion caused by hindsight bias and must be cautious of arguments reliant upon *ex post* reasoning.").

Additionally, Petitioner's argument that a person of ordinary skill in the art would have known of several ways to adjust a touchscreen display so that voting contests and options are not visually presented on the touchscreen (Pet. Mot. Sur-reply 8), in and of itself is not persuasive, as "[a]

patent composed of several elements is not proved obvious merely by demonstrating that each of its elements was, independently, known in the prior art." *KSR,* 550 U.S. at 418.

In view of the foregoing, we find Petitioner has not demonstrated by a preponderance of evidence how the combined disclosures of Neff, Marshall, McClure, McDermott, or Nguyen teach or suggest all of the limitations of substitute claim 23. Claims 24 and 25 depend from claim 23, and therefore include all of the limitations in claim 23. As a result, we reach the same conclusion for proposed substitute claims 24 and 25. For all of the foregoing reasons, we find that Petitioner has not established by a preponderance of evidence that proposed substitute claims 23–25 are unpatentable as obvious in view of Neff, Marshall, McClure, McDermott, and Nguyen.

*3. Proposed Substitute Claims 26–31*

Petitioner argues that claims 26–31 are unpatentable as obvious over the combined disclosures of Neff, Marshall, McDermott and Narisawa[16]. Opp. 20–21.

With regard to claim 26, Petitioner indicates that various elements of substitute claim 26 are disclosed in Neff, Marshall, and McDermott as set forth in the Petition. Opp. 21 (citing Sections V.G of the Petition as disclosing certain limitations of claim 26); Pet. 83 (showing that Section V.G addresses the obviousness of claims 9–19 under Neff in view of Marshall and McDermott). This includes Petitioner's argument that Neff and Marshall teach or suggest "push-button switches enables scrolling" as

---

[16] JP 2002-260044, published Sept. 13, 2002 (Ex. 1026).

set forth in Section V.G.7.iv–v of the Petition. Opp. 21–22. As discussed in Section II.J above, however, we do not agree with Petitioner's arguments in the Petition that Neff and Marshall teach or suggest this limitation. Petitioner does not rely on Narisawa for this limitation. Opp. 22–24.

In view of the foregoing, we find Petitioner has not demonstrated by a preponderance of evidence how the combined disclosures of Neff, Marshall, McDermott and Narisawa teach or suggest all of the limitations of substitute claim 26. Claims 27–31 depend either directly or indirectly from claim 26, and therefore include all of the limitations in claim 26. As a result, we reach the same conclusion for proposed substitute claims 27–31. For all of the foregoing reasons, we find that Petitioner has not established by a preponderance of evidence that proposed substitute claims 26–31 are unpatentable as obvious in view of Neff, Marshall, McDermott and Narisawa.

### 4. Conclusion

For the reasons set forth above, we determine that Petitioner has not demonstrated by a preponderance of evidence that proposed substitute claims 20–31 are unpatentable. Thus, we grant Petitioner's Contingent Motion to Amend.

## IV.   CONCLUSION

In summary:

| Claims | 35 U.S.C § | Reference(s) /Basis | Claims Shown Unpatentable | Claims Not shown Unpatentable |
|---|---|---|---|---|
| 1, 4, 9, 12, 13, 16 | 102 | Nguyen | 1, 9, 13 | 4, 12, 16 |
| 2, 3, 10, 11, 14, 15 | 103 | Nguyen, Marshall | 2, 3, 10, 11, 14, 15 | |
| 17–19 | 103 | Nguyen, McDermott | 17–19 | |
| 5, 8 | 103 | Neff, Nguyen | 5 | 8 |
| 6, 7 | 103 | Neff, Nguyen, Marshall | 6, 7 | |
| 1–8 | 103 | Neff, Marshall | | 1–8 |
| 9–19 | 103 | Neff, Marshall, McDermott | | 9–19 |
| **Overall Outcome** | | | 1–3, 5–7, 9–11, 13–15, 17–19 | 4, 8, 12, 16 |

| Motion to Amend Outcome | Claim(s) |
|---|---|
| Original Claims Cancelled by Amendment | |
| Substitute Claims Proposed in the Amendment | 20–31 |
| Substitute Claims:  Motion to Amend Granted | 20–31 |
| Substitute Claims:  Motion to Amend Denied | |
| Substitute Claims:  Not Reached | |

## V.    ORDER

It is hereby,

ORDERED that, claims 1–3, 5–7, 9–11, 13–15, and 17–19 of the '273 are held unpatentable;

FURTHER ORDERED, claims 4, 8, 12, and 16 of the '273 have not been proven to be unpatentable;

FURTHER ORDERED that Patent Owner's Contingent Motion to Amend is granted; and

FURTHER ORDERED that because this is a Final Written Decision, the parties to the proceeding seeking judicial review of the decision must comply with the notice and service requirements of 37 C.F.R. § 90.2.

For PETITIONER:

Timothy Lohse
Harpreet Singh
Larissa Bifano
DLA PIPER LLP
tim.lohse@dlapiper.com
harpreet.singh@dlapiper.com
larissa.bifano@dlapiper.com


For PATENT OWNER:

Robert Evans, Jr.
Michael Hartley
Kathleen Petrillo
LEWIS RICE LLC
revans@lewisrice.com
mhartley@lewisrice.com
kpetrillo@lewisrice.com