# EXHIBIT D

Trials@uspto.gov                                             Paper 31
571-272-7822                                          Entered: June 11, 2020

UNITED STATES PATENT AND TRADEMARK OFFICE

———————

BEFORE THE PATENT TRIAL AND APPEAL BOARD

———————

SMARTMATIC USA CORP.,
Petitioner

v.

ELECTION SYSTEMS & SOFTWARE, LLC,
Patent Owner.

———————

IPR2019-00527
Patent 7,753,273 B2

———————

Record of Oral Hearing
Held: May 6, 2020

———————

Before GEORGIANNA W. BRADEN, JEFFREY W. ABRAHAM, and
SHELDON M. McGEE, *Administrative Patent Judges.*

IPR2019-00527
Patent 7,753,273 B2

APPEARANCES:

ON BEHALF OF THE PETITIONER:

      TIMOTHY LOHSE, ESQ.
      HARPREET SINGH, ESQ.
      DLA Piper, LLP
      2000 University Avenue
      East Palo Alto, California 94303-2214
      (650) 833-2000
      timothy.lohse@dlapiper.com

      LARISSA BIFANO, ESQ.
      DLA Piper, LLP
      33 Arch Street
      26th Floor
      Boston, Massachusetts 02110-1447
      (617) 406-6000
      larissa.bifano@dlapiper.com

ON BEHALF OF THE PATENT OWNER:

      ROBERT EVANS, JR., ESQ.
      MICHAEL HARTLEY, ESQ.
      Lewis Rice, LLC
      600 Washington Avenue
      Suite 2500
      St. Louis, Missouri 63101
      (314) 444-7600
      revans@lewisrice.com
      mhartley@lewisrice.com


    The above-entitled matter came on for hearing on Wednesday, May 6, 2020, commencing at 10:00 a.m. EDT, via Video-Teleconference.

IPR2019-00527
Patent 7,753,273 B2

| | |
|---|---|
| 1 | P-R-O-C-E-E-D-I-N-G-S |
| 2 | 10:02 a.m. |
| 3 | JUDGE ABRAHAM:   Okay.   Good morning.   This is the hearing |
| 4 | for IPR 2019-00527 regarding patent number 7,753,273.   I'm Judge |
| 5 | Abraham, and with me on the panel today are Judges Braden and McGee. |
| 6 | I'd like to start by taking appearances from Petitioner's counsel.   Let us know |
| 7 | who you have here in attendance today. |
| 8 | MR. LOHSE:   Yes.   For Petitioner's counsel this is Timothy Lohse. |
| 9 | I will be doing the argument.   On the phone with me is Harpreet Singh as |
| 10 | well, and then also on audio is Larissa Bifano as well. |
| 11 | JUDGE ABRAHAM:   Okay, great.   Good morning, everyone. |
| 12 | And for Patent Owner who do we have? |
| 13 | MR. EVANS:   Good morning, Your Honor.   Robert Evans here for |
| 14 | the Patent Owner, as well as Mike Hartley who's in the room with me. |
| 15 | JUDGE ABRAHAM:   Okay.   Good morning.   So first we just want |
| 16 | to thank everybody for joining us today and for your flexibility in conducting |
| 17 | a hearing by video.   We know that this is a departure from our typical |
| 18 | practice, so we just wanted to clarify a few things. |
| 19 | Our primary concern is your right to be heard.   So if at any time |
| 20 | during the proceeding you encounter any technical difficulties or any other |
| 21 | circumstances that you feel fundamentally undermines your ability to |
| 22 | represent your client, please let us know immediately. |

3

IPR2019-00527
Patent 7,753,273 B2

1         If we somehow get disconnected you can contact the team members

2    who provided you with the contact information.   If anything like that happens

3    I promise we'll be flexible with timing and make sure that everybody has the

4    adequate time and ability to present your arguments today.

5         The second thing, when you're not speaking please mute yourself so

6    we can avoid any background noises or interference like that.   When you do

7    speak please identify yourself -- it helps with the court reporter, and it helps

8    us have a nice, accurate transcript.

9         We do have your demonstratives, and we do have the record in front

10   of us so to the extent you're going to rely on demonstratives or any exhibits,

11   things like that from the record, papers, just refer to the slide number or paper

12   number so that we can follow along.  It also once again helps provide an

13   accurate transcript.

14        Just so you know we do have members of the public that may be

15   listening.   So if there's any confidential information, and I don't believe I'm

16   aware of any, but if there is let us know right away so that we can make sure

17   that no such confidential information is revealed to the members of the public

18   who may be listening.

19        Having said that pursuant to our trial hearing order that we issued,

20   each side will have 45 minutes total to present your arguments.   Petitioner

21   will begin.   You may reserve time for rebuttal, up to half your time.   After

22   Petitioner presents its opening case Patent Owner will present its case.   And

4

IPR2019-00527
Patent 7,753,273 B2

1    also Patent Owner, you can reserve some time for sur rebuttal.   And then to

2    the extent either party does reserve time and has those times Petitioner, you

3    can present your rebuttal arguments, and Patent Owner, you can present your

4    surrebuttal arguments.

5          Okay, with that introduction I will invite Petitioner to begin your

6    argument.   I'll ask would you like to reserve any time for rebuttal?

7          MR. LOHSE:   Yes.   I would like to reserve five minutes.

8          JUDGE ABRAHAM:   Okay.   And I will be keeping track of time

9    here.   I can give you a five minute warning if you'd like when you get up to

10   your 40 minutes.   I don't want to interrupt you if you're keeping track on your

11   end, that's fine too.   Whatever is easiest for you, just let me know.

12         MR. LOHSE:   Sure.   No, I'd appreciate the five minute warning.

13   That would be appreciated.

14         JUDGE ABRAHAM:   Okay.   All right.   So you can begin

15   whenever you're ready.

16         MR. LOHSE:   All right.   Thank you, Your Honor.   First, I'd like to

17   talk a little bit about the '273, and slide 2 and 3 sort of show the essence of the

18   '273.   Nineteen shows -- I'm sorry, figure 19 in slide 2 shows a voting

19   terminal.   And it's a device that allows the voter to look at, scroll through both

20   contests and options, and then to select them.

21         The way they select them is what's shown in figure 23.   That's a

22   navigation device that has a top and bottom button, a right and left button, and

5

IPR2019-00527
Patent 7,753,273 B2

1      a center select button.   So that's the core of this patent which we'll be talking

2      about.

3            I'd like to turn to slide 4.   So slide 4 sets forth a summary of the

4      grounds that we've raised in our petition.   And the main point I want to make

5      here is actually that all the claims of this patent are invalid over two separate

6      grounds based upon Nguyen, and then a combination of Nguyen and other

7      references.

8            And then there's also two grounds that are based upon Neff and a

9      combination of references.   So the claims are invalid under two different

10     grounds and two different pieces of prior art.

11           In slide 6 we have a summary of the claim construction disputes

12     between the parties, which I'd like to walk through now briefly.   If you turn

13     to slide 7 the first claim construction issue we have deals with presenting, or

14     presenting options, or contests.

15           The main dispute here is that the Patent Owner seems to feel that the

16     term "present" should be changed to "communicate."   Then we should talk

17     about communicating the name of a contest, and then an identifier of each of

18     the options, which we don't think is appropriate.   We think that the claim as

19     worded is proper and should be given its plain and ordinary meaning.

20           And in fact, the specification in this case doesn't disclose or say

21     anywhere that it's communicating versus presenting.   It's not clear to us what

IPR2019-00527
Patent 7,753,273 B2

1    the distinction is.   So we think that actually the plain meaning should apply
2    to that claim term.

3         Turning to slide 8, the core dispute in this case with the push button
4    switch is enabled is the Patent Owner would like to add when pressed by the
5    voter before push button switches, and then change enabled to cause this.

6         We believe once again this should be given its plain and ordinary
7    meaning.   We don't see the reason why enable should be changed to causes,
8    or why you need the phrase when pressed by a voter when Patent Owner has
9    previously at least in the preliminary response accepted our construction push
10   button switches which was an electrical switch that is activated by pressing.
11   Therefore we think that this term, push button switch is enabled, should be
12   given its plain and ordinary meaning.

13        Slide 9.   This deals with the phrases presenting, and then there are
14   two wherein clauses that define how the buttons or the pair of buttons are
15   being used during the scrolling between the contest and the option.

16        Patent Owner would -- seems to argue that they would like both of
17   those pairs of buttons to be able to be used for either the scrolling of the contest
18   and/or the scrolling of the options.   But if you look at the plain claim
19   language, it talks about one pair of buttons for scrolling through the contest,
20   and the other pair of buttons -- or push button switches, excuse me, for
21   scrolling through the options.   So we believe that that should be given its
22   plain and ordinary meaning as well.

7

IPR2019-00527
Patent 7,753,273 B2

1         The last term is remote, and this is a dependent claim that deals with

2    the auxiliary switches, or the auxiliary push button switches.   The Patent

3    Owner would propose separated by a space greater than usual, while we would

4    propose out of the way.

5         We believe that the Patent Owner's position is not correct and that

6    unusual is ambiguous.   It's not clear what the usual space is.   It's not really

7    defined in the specification of the '273.

8         In addition, if you look on slide 10, figure 23 in fact the spacing

9    between the buttons of the navigation device, there isn't any usual.   There are

10   different spaces depending on where you measure from and to, so we don't

11   believe that separated by a space greater than usual would be the appropriate

12   construction for this term.   And instead we believe that the proper

13   construction is out of the way.

14        We also note that our construction out of the way is actually supported

15   by the same dictionary that Patent Owner submitted with their Patent Owner's

16   response.

17        JUDGE ABRAHAM:   Counsel, is there anything in the specification

18   that we can look to for the meaning of this term?

19        MR. LOHSE:   The meaning of usual?

20        JUDGE ABRAHAM:   Of remote.

21        MR. LOHSE:   Oh.   Not -- you can look at the figures I suppose that

22   show -- sort of show something that appears to be either out of the way and/or

8

IPR2019-00527
Patent 7,753,273 B2

1    at a greater than usual distance.   In fact, I think it's figure 19 they show some

2    buttons that are over on I believe the left side of the housing.

3          JUDGE ABRAHAM:   Thank you.

4          MR. LOHSE: Sure.   Now I'd like to turn to slide 14.   And this goes

5    from one, the Nguyen anticipation.   Figure 1 shows kind of the two key

6    figures of Nguyen that I think we'll come back to a few times.

7          First is figure 7 which shows sort of the keypad in Nguyen that has a

8    five key navigation group, 67, which looks a lot like the claimed navigation

9    device with the two pairs of push button switches and the center button, and

10   then the special command group beneath it which is the claimed auxiliary push

11   button switches that were described below.   We've established all this in our

12   petition as well as in Dr. Bederson's declaration.

13         Then figure 8 talks about the method of using that device.   And it

14   talks about the fact that the -- that key 2 and 8, which are the top and bottom

15   pair of keys, are used for the contests.   It then talks about the fact that the four

16   and six keys, which is the right and left pair of keys, are used for the option,

17   very similar to the way the '273 patent works.

18         Now I'd like to turn to a few issues that have been brought up during

19   this trial with respect to Nguyen.   I'm turning to slide 15 now.   And the

20   Patent Owners urge the Board that Nguyen does not disclose presenting

21   contest or option.

IPR2019-00527
Patent 7,753,273 B2

1        Now that's incorrect.  And if you look at slide 15, Nguyen clearly

2    does disclose both presenting contests and presenting options.  Now I think

3    this argument is because Patent Owner would urge you that the term

4    presenting should be communicating a name of the contest and an identifier

5    of the options, which we don't believe is correct.  So Nguyen does in fact

6    disclose the presenting contests and presenting options.

7        Furthermore, in slide 16 now, Nguyen also discloses that it creates

8    audio files about the contest and the options, and then there's an excerpt there

9    in which it says that it provides that audio content to the user during the

10   process of those selections.

11       Slide 17 is more examples of the way in which Nguyen discloses

12   contests and presented options.  I'm not going to go through that in great

13   detail but it's there for your reference.

14       And then turning to slide 20 -- and I'm going to skip ahead a few, I

15   apologize -- this is the institution decision in which the Board here rejected

16   Patent Owner's argument that Nguyen fails to disclose presenting each contest

17   and option.   So we believe that Nguyen does in fact fully disclose presenting

18   a contest and options as we've set forth in the petition as well as our other

19   documents and exhibits.

20       The other debate we have in this case is about the remote auxiliary

21   push button switches that we talked about a little bit earlier in claim

22   construction.  If you look at slide 21, this is a good demonstrative showing

IPR2019-00527
Patent 7,753,273 B2

1    how we believe that actually under either construction, either out of the way

2    and/or separated by a space greater than usual, that Nguyen in fact does

3    disclose the auxiliary push button switches.

4         In this case, what you can see is clearly those special command keys

5    69 are out of the way of the other navigation keys, so under our construction.

6    Under the Patent Owner's construction they're also separated by a space

7    greater than usual.   And the best way to see this is if you look at either the

8    asterisk key and/or the hash key which are both part of the special command

9    group.   And then their spacing relative to the four button for example.

10   Those are greater than any spacing with respect to the navigation buttons, the

11   2, 8, 4, 5, and 6.   Yes.

12        So in this case we believe that Nguyen actually discloses these

13   auxiliary switches under both constructions.   I note that the Patent Owner has

14   a demonstrative where they show the spacing between the eight key and I

15   think the zero key in the special command group as being the same as the

16   other keys in the navigation group, which is true.

17        But to have the auxiliary push button switches, that can be the asterisk

18   key and then the hash key on each side of which, which clearly is not a space

19   greater than usual.   And so therefore is met.

20        I'd like to turn now to ground 2, which is Nguyen in view of Marshall.

21   And the principal issue here is with respect to the shapes of the buttons and

22   then also the claim navigation device and its configuration.

IPR2019-00527
Patent 7,753,273 B2

1    And you can see slide 23 sort of shows the disclosure in Marshall

2    which has a TV remote control with that navigation pad that has two pairs of

3    triangular shaped push buttons.

4    And cases establish why a POSITA would combine Nguyen with

5    Marshall.   One of the arguments that Patent Owner has made is that Nguyen

6    is limited to -- somehow limited to a telephone system or a keypad.   And they

7    cite to the intended purpose and principal operation of Nguyen.

8    That's not correct and I think is based on a very narrow view of

9    Nguyen.   Slide 26, which we have as a demonstrative, shows three cites to

10   Nguyen with examples of the evidence of that.   And then slide 27 is the

11   institution decision, which this Board based upon the preliminary response

12   brief from Petitioner that there was -- that Nguyen was not limited to a

13   telephone.

14   In the Patent Owner's surreply, they raised a motion -- I'm sorry, a

15   motivation to combine argument citing to Nguyen, which is exhibit 1005 at

16   column 3 lines 1 to 9, and argued that Nguyen teaches away because Nguyen

17   criticizes current systems, and current systems that use shaped buttons.

18   But if you read that Nguyen reference, what it says in fact is the current

19   systems that have complicated menus and shaped buttons are not intuitive.

20   That's true.   And in fact we've described why.   Dr. Bederson in his

21   declaration at paragraphs 113 and 118 has described, and that's actually on

22   slide 24 as well, excuse me -- why it would be intuitive to have those shaped

IPR2019-00527
Patent 7,753,273 B2

1   buttons added into the square buttons that are shown in Nguyen.   So we don't

2   believe that this motivation to combine argument is terribly persuasive.

3            And then finally Patent Owner has a demonstrative slide 13 where

4   they show a figure 15 of Marshall, which is an A to Z grid, which they argue

5   in their brief is an example of the first usability test in Marshall.

6            It's actually the second usability test in Marshall if you read Marshall.

7   But more than that it's a red herring because what Marshall is being relied

8   upon is not for the notion whether you would use just navigation pad or

9   navigation pad with a keypad in order to input text which is what the tests for

10  Marshall are, but instead is simply being used to show that a navigation pad

11  can have certain button shapes or -- button shapes as shown in Marshall.   So

12  we think that that argument is a red herring and doesn't really apply.

13           The next ground is Nguyen over McDermott.   And this relates to

14  preprinted ballots.   The main point I want to make here is the Patent Owners

15  argued that Nguyen is somehow incompatible with a preprinted ballot because

16  if you had a preprinted ballot and then Nguyen printed their ballot, you might

17  print over it and cause confusion for the voter, or it might not be very clear.

18           We don't think that's actually correct for two reasons.   One, Nguyen

19  does in fact disclose a printer for ballots, and that's at Nguyen column 7 lines

20  39 to 45, which was cited in our materials.

21           And also there was an argument made by the Patent Owner with

22  respect to this about preprinted ballots being incompatible firstly.   And that

13

IPR2019-00527
Patent 7,753,273 B2

1  argument was mostly made by Dr. Shamos.   And this is I think paragraph 193

2  of Dr. Shamos's declaration in the trial.

3       There is no evidence cited for that proposition that it would be

4  incompatible with preprinted ballots, firstly.   Secondly, Dr. Shamos in his

5  declaration interprets preprinted ballot to be a ballot that's printed with names

6  of candidates and names of contests.

7       However, if you look at the '273 patent, and I refer to exhibit 1005 at

8  column 14 lines 12 to 14, you will see that the only definition of the preprinted

9  ballot in the embodiment we're talking about with the navigation device is a

10  ballot that has some sort of code on it.

11       So in fact it wouldn't be the case that if you printed and all that was on

12  the preprinted ballot was a code that you would cause the confusion exception

13  that Dr. Shamos has mentioned in his declaration.   So we don't believe that

14  that argument is persuasive, and we do believe that Nguyen in view of

15  McDermott, there is motivation to combine as we've explained in our petition

16  as well as in our papers.

17       JUDGE BRADEN:   And counsel, please confirm that you're relying

18  on the audible presentation embodiment of Nguyen and not the display

19  presentation embodiment for this combination, correct?

20       MR. LOHSE:   That's correct.

21       JUDGE BRADEN:   Okay.   Thank you.

14

IPR2019-00527
Patent 7,753,273 B2

1    MR. LOHSE:   Sure.   So now Neff in view of Nguyen.   This
2    combination and ground was principally used because this claim 5 is about
3    visual presentation, and Nguyen clearly is not a visual presentation type of
4    device.   But Neff has a visual presentation and discloses that it discloses and
5    presents contests and options for the user.

6         The Patent Owner here argued that a POSITA would not modify Neff
7    with Nguyen because of the five key navigation.   The principal argument
8    here is one of confusion in that it would cause tremendous confusion because
9    while Nguyen is top to bottom for content, Neff is right to left for content
10   based on what's shown.

11        However, we argued I think very persuasively in our petition and in
12   Dr. Bederson's declaration that a POSITA would in fact understand how you
13   would simply switch around those buttons, and then you would not have the
14   problem -- neither the problem nor the confusion mentioned by Patent Owner.

15        And in fact Dr. Shamos agreed, and this is on slide 35, Dr. Shamos
16   agreed that you would be able to modify the navigation keys to work with
17   Neff, further proving that there's no problem with the motivation to combine
18   Neff in view of Nguyen.

19        JUDGE ABRAHAM:   Counsel, looking at your slide 35 it says there
20   that Dr. Shamos agreed that a person -- it was physically possible to do it.
21   But that doesn't necessarily give you a motivation to do it.   So can you
22   explain to me where the motivation to make the adjustment comes in?

15

IPR2019-00527
Patent 7,753,273 B2

1        MR. LOHSE:   Yes.   So you're correct.   So what I was citing to slide

2        35 for is that Dr. Shamos at least admitted that it could be done.   It's

3        physically possible.   It's not an impossible thing to do.

4        And then the motivation to combine is in Bederson's declaration as it

5        was originally filed.   So we believe that the motivation to combine is in the

6        Bederson declaration, where the Shamos deposition testimony simply

7        establishes that it's not as if it's an impossible thing to do.   It's something that

8        could be a design choice, and you could make that choice.

9        JUDGE ABRAHAM:   Thank you.

10       MR. LOHSE:   For the moment I'm going to skip grounds 6 and 7,

11       which are the additional grounds of invalidity, and turn my attention now to

12       the motion to amend and talk about that, unless the judges have other

13       questions about the grounds in the petition.

14       JUDGE ABRAHAM:   No.

15       MR. LOHSE:   Okay.   Very silent.   Motion to amend.   So the

16       motion to amend we think has a couple of issues, procedural issues which

17       we'll talk about.   I think there are a couple of -- lack of written description

18       grounds, and we've sort of narrowed those down and we'll talk about those.

19       And then we also think they're invalid.

20       So the first ground, and this is slide 44, in the motion to amend they

21       didn't actually specify what the grounds and contingencies for all the claims

IPR2019-00527
Patent 7,753,273 B2

1    were.   And I don't think they've fixed that problem.   I think that's a minor

2    point.

3           With respect to written description for substitute claim 20, the discrete

4    presentation screens we think lacks written description for two reasons.   One,

5    discrete doesn't appear in the specification and no one claims it does.   Even

6    Dr. Shamos admits it does not.   And there really is no -- no one's offered a

7    construction for what discrete might mean.   That's in slide 47.

8           If you turn to slide 48, even if discrete means separate which seems

9    like a reasonable basis, the '273 patent still doesn't disclose separate screens

10    for each contest because each contest in the '273 patent includes a write-in

11    editor screen.   And that's figures 25F and 25G in exhibit 1005.   And there's

12    also a selection review screen which is figure 25I.   So every single contest in

13    the '273 patent has multiple screens so there aren't separate or discrete

14    presentation screens for each contest, and therefore substitute claim 20 is

15    invalid for lack of written description.

16           JUDGE ABRAHAM:   So counsel -- sorry, I didn't mean to interrupt

17    you.

18           MR. LOHSE:   No.

19           JUDGE ABRAHAM:   You would have us construe discrete to mean

20    single or singular?   So a discrete screen, you would only be able to have one

21    screen per contest?

IPR2019-00527
Patent 7,753,273 B2

1      MR. LOHSE:   Or a separate screen.   I'm not sure single would be the

2   word.   I'd say separate.

3      JUDGE ABRAHAM:   What do you mean by -- I guess what's the

4   distinction?   Because if I have one screen for presidential race, but there's a

5   write-in option there, and I have a different screen for a Senate race and there's

6   a write-in option there, aren't those two discrete presentation screens between

7   the presidential contest and the Senate contest?

8      MR. LOHSE:   I would say no because both of those contests still

9   have the write-in editor as well as the summary screen with them as part of

10   the process.

11      JUDGE ABRAHAM:   I guess I don't understand how the write-in

12   screen makes it not discrete.

13      MR. LOHSE:   Well as I read discrete, it means that each contest has

14   its own screen, separate, its own screen.   That's not what's shown in the '273

15   patent.

16      And I think this comes from the fact that discrete is not a term that's

17   defined in the specification, nor is there any reference to it.   So I think that -

18   - I'm not sure what discrete means, but what I think discrete means is it means

19   that there is a single screen for each contest.   That seems to be what discrete

20   should mean.

21      JUDGE ABRAHAM:   Okay.   Thank you.

18

IPR2019-00527
Patent 7,753,273 B2

1      MR. LOHSE:  Sure.  So turning to substitute claim 23 for written

2   description, that term now has adjusting touch screen display.  The '273

3   specification discloses that the display is shut down or turned off when you

4   plug in the plug for the audio.

5      We don't believe that that's actually -- so, while the specification

6   discloses turning off the display, adjusting a touch screen display is much

7   broader.  It includes many more things than turning off the display.  And in

8   fact, Dr. Shamos admitted that that isn't the case, that you could -- adjusting

9   the display, the purpose of that is privacy of the user.

10      And that privacy could be done by turning off the display.  It could

11   be done by putting up the Constitution, by putting up an island I think is one

12   of the examples that Dr. Shamos gives.  So there's a number of ways you can

13   do that.  And so adjusting the touch screen display is much, much broader

14   than what's disclosed in the specification for that point.

15      Finally, for substitute claim 26, the top housing element.  And that's

16   on slide --

17      JUDGE BRADEN:  And counsel, can you confirm you're now on

18   slide 56?

19      MR. LOHSE:  Yes.  I'm sorry, I was just going to mention that.  I'm

20   sorry.

21      JUDGE BRADEN:  Thank you.

19

IPR2019-00527
Patent 7,753,273 B2

1       MR. LOHSE:  Yes.  Sure.  Yes, so slide 56.  The top housing

2   element.  So this claim recites a top housing element.  And there's a

3   description that discusses how that top housing element houses various

4   components of the ballot marking device.

5       But if you read the claim element, which is a top housing having a first

6   side portion, second side portion and a recess between the first and second

7   side portion, there's no other relationship between the other elements in the

8   claim other than the display that moves into the recess.   Therefore, we believe

9   this term too lacks written description because if it's sort of an element that's

10   more or less literally sort of floating in the claim, and it's not tied to the other

11   elements of the ballot marking device.

12       Now I'd like to turn to the unpatentability of the substitute claims.   I'm

13   on slide 58.  And this I think is a pretty good reference.  It shows -- for

14   substitute claim 20 it shows first the elements that are already disclosed by the

15   art of record, Neff and Marshall, in green text.   And then it shows the other

16   elements of the claim, which are disclosed by the Bolton prior art which we

17   added during the opposition for this particular element.

18       Obviously the analysis for Neff and Marshall is in the petition. It's also

19   in our opposition, so it's there.   I'm not going to discuss that.   As well as the

20   declaration.

21       But if you turn to slide 59, that shows a screen, figure 17 of Bolton,

22   which allows you to select various candidates for U.S. senator contests.   And

IPR2019-00527
Patent 7,753,273 B2

1   so Bolton discloses, and this is in our opposition, a touch screen which was

2   missing from the art presenting contests and options on discrete and separate

3   displays because Bolton discloses that there are separate race screens for each

4   of the races or contests.

5          And by the way, this is what I kind of look at as being a discrete screen.

6   There is a separate contest screen like is disclosed in Bolton.   Just getting

7   back to the point we were talking about earlier, Judge.

8          It discloses communicating the name of the contest as you can see in

9   figure 17, and it discloses changing the discrete screens when scrolling among

10   contests.

11          And so this is actually an interesting point.   The changing discrete

12   screens when scrolling between contests further suggests that as you move

13   between contests, you should change each discrete screen, but in fact you may

14   end up on the summary screen which isn't a discrete screen.   It's a screen that's

15   shown that shows all of the contests and options, getting back to that same

16   point again.

17          In the preliminary guidance the Board found that without any user

18   input with respect to the pair of push button switches was not shown in the

19   prior art.   We disagree.

20          The Marshall keypad certainly shows the navigation pad with the up,

21   right, left, down button and the center select button.   And then also Marshall

22   discloses that the navigation can be performed solely with the navigation keys.

21

IPR2019-00527
Patent 7,753,273 B2

1    And that's found at Petitioner's surreply at 6 to 7, and then also at exhibit 1006

2    which is Marshall at page 168.   So we believe in fact that the without any

3    other user input is disclosed in Bolton.

4         And Dr. Bederson has testified in his second declaration that the pairs

5    of buttons would be done without any other user input.   So we believe that

6    element is in fact met contrary to what was put in the preliminary guidance.

7         JUDGE ABRAHAM:  Let me ask you a question about this.   The

8    input in Marshall didn't have anything to do with voting or elections, correct?

9    It was more about data handling.

10        MR. LOHSE:   Correct.

11        JUDGE ABRAHAM:   So how do you get from the input that

12   Marshall is talking about to the input that the claims are talking about, and

13   changing the voting selections or the voting options?

14        MR. LOHSE:   Sure.   So I believe that -- so Marshall is about a user

15   interface design is the best way to think about this.   What type of text comes

16   out is less important.   It's more about the user interface design as described

17   by Dr. Bederson in his declaration.

18        It's more about the fact that there's a unique user interface that allows

19   a user to move or enter text in the case of Marshall using that user interface

20   device.   And so we believe that that user interface device can be used for text

21   as shown in Marshall, or equally can be used to scroll through something in

IPR2019-00527
Patent 7,753,273 B2

1   the '273 patent because effectively it's both the same thing.   You are using

2   that navigation device to cause some sort of input to some other system.

3          In the case of Marshall, it's about entering text or navigating for text.

4   In the case of the '273 patent, it's about scrolling through contests and/or

5   scrolling through options.

6          JUDGE ABRAHAM:   Thank you.

7          MR. LOHSE:   Yeah.   So finally, if we turn to slide 61, this shows

8   the elements of substitute claim 22 and how those elements are disclosed by

9   the prior art from the petition, once again in green text.   And then McClure,

10  the new reference, are the plain text elements.

11         And as you can see on slide 62, McClure which is exhibit 1024 does

12  disclose -- communicate a name of a contest or option after the voter scrolls.

13         Furthermore, slide 63 now.   This is dealing with the adjusting the

14  touch screen element that we talked about a little bit before.   Firstly, the

15  HAVA Act, which governs voting in the U.S., requires privacy and dictates

16  that privacy is needed.

17         This is where I talked briefly in slide 63 about the fact that Shamos

18  actually admitted -- and you can see that in slide 63 -- states that adjusting the

19  screen could be done in a number of different methods.   And then a POSITA,

20  Dr. Bederson testified that you would adjust the screen hiding the visual

21  presentation using some method testified by Shamos for the privacy that is

23

IPR2019-00527
Patent 7,753,273 B2

1     required under the HAVA Act.   So we believe that this element is also

2     disclosed in the prior art combination that we have cited.

3           Finally, substitute claim 26 is -- this is on slide 64, once again is a

4     demonstrative that shows both the elements that are already disclosed in the

5     prior art in the petition, and then the new elements that are disclosed in the

6     Narisawa reference.

7           And in this case the elements that are not disclosed by the other

8     references are principally a top housing, the fact that the display moves

9     relative to the top housing and can move into the recess, and that there's a sub

10     panel being supported by the first portion of the housing.   Those are the

11     elements that are not found, but are found in Narisawa.

12           For example, if you turn to slide 65, you can see that Narisawa both

13     in figures 10 and 11 discloses a top housing with side portions and a recess,

14     and also a display screen that is movable relative to the top housing.   That

15     movable relative to the top housing aspect can be found in Narisawa, which

16     is exhibit 1026 at paragraphs 39 to 41 of the English translation.   There's also

17     the original Japanese version of Narisawa which is at 1025, but I'm going to

18     refer to the English translation at 1026.

19           So the last element -- so Narisawa as shown in slide 65 discloses the

20     top housing, discloses the side portion.   It discloses the recess and it discloses

21     the display screen movable relative to the top housing.   It also discloses that

IPR2019-00527
Patent 7,753,273 B2

1    that display would be put into the recess as you can kind of see both in figures

2    10 and 11.

3           Turning to slide 66, this deals with the side portion of the first housing.

4    Narisawa discloses a voting control switches, which are 129 and 130.   That's

5    at exhibit 1026, figure 10 in paragraph 46.

6           Switches on a side panel of the first portion of the housing are certainly

7    not novel.   It's just a question of where you're going to place those switches.

8    And Dr. Bederson would modify the prior art with Narisawa to provide the

9    side panel on the first portion of that housing.

10          I am done with my presentation, but if there are questions from the

11   judges.

12          JUDGE ABRAHAM:   Any questions?

13          JUDGE BRADEN:   I have nothing.   Thank you.

14          JUDGE ABRAHAM:   Okay.   Well thank you for your presentation.

15   I have you with 5 minutes left from your original time, so you'll have 10

16   minutes for your rebuttal.

17          MR. LOHSE:   Thank you.

18          JUDGE ABRAHAM:   Okay.   And Mr. Evans, would you like to

19   reserve any time for rebuttal with your argument?

20          MR. EVANS:   Five minutes, Your Honor.

21          JUDGE ABRAHAM:   Okay.   Great.   And so you can begin

22   whenever you're ready.

25

IPR2019-00527
Patent 7,753,273 B2

1    MR. EVANS:   Thank you, Your Honor.   I'd like to begin with the

2    claim terms that need to be construed.   And if we could please turn to slide 2

3    of our demonstratives.

4    The first term, scroll or scrolling, we believe that that means

5    effectively move or effectively moving.   What we mean by that is that as you

6    scroll through the options, you go through them one at a time consecutively.

7    A lot of these options are what gets you to the contest.

8    We strongly believe that the presenting word means more than just

9    simply displaying the options.   You'd have to actually explain what the

10   contest is.   You don't just start with the first candidate for President. You say

11   in our next -- our next contest is the United States President.   And so our

12   definition is communicating to the voter the name of these contests, each of

13   the contests, and an identifier for each of the respective options which a voter

14   may cast in this contest we think is an appropriate definition because it

15   presents them both the contest, election of the President, and the options, who

16   in fact is actually running.

17   If this could be met by simply presenting the options, in other words

18   the candidates, then the language presenting the contest would be superfluous.

19   And so the language presenting the contest has to mean something.   We

20   believe that it means communicating to the voter the name of the contest.

21   The next claim term, push button switches enables the voter to.   What

22   this patent is all about is that you use the push button switches in a new way.

IPR2019-00527
Patent 7,753,273 B2

1    All of the other ways that push button switches were used to navigate a screen

2    involved pushing the directional buttons on a D-pad, on a directional pad, to

3    move a cursor across the screen, and then when the cursor was in a position

4    that you liked you hit the center button, the select button, and that's what you

5    get.

6         This patent for the first time uses the button very differently.   It uses

7    the button to switch between screens, typically on the left/right button and to

8    switch between the contestants -- or the options in the contest by clicking the

9    up/down arrows.   And so the use of the buttons to actively move the screen

10    is a thing of -- instead of moving the cursor on the screen we think is

11    important.   And so then it says push button switch has enabled the voter to,

12    we think the proper definition is when pressed by the voter, the push button

13    switches causes.   We think that definition makes sense in the context of the

14    written description.

15         The next claim term, presenting the contest and a set of associated

16    options to the voter wherein and wherein.   That's the language where the two

17    wherein clauses are set off by a comma.   Grammatically those relate back to

18    the presenting the contest and the options to the voter.

19         And we believe that the two wherein clauses are in the alternative.

20    So the words presenting the contest and the options is carried out by, one, the

21    first and second pairs of push button switches, enabling the vertical scrolling

IPR2019-00527
Patent 7,753,273 B2

1    among the contests.   And two, when the first and second push buttons

2    enabling the voter to scroll among the options.

3            So this language is not specific as to which pair of push button

4    switches scrolls between the contests and which scrolls between the options,

5    but we believe the overall structure of the claim items, the first wherein clause

6    has to be one of those scrolling options and the second wherein clause has to

7    be the other.

8            The next claim term, remote and located remote.   We believe that the

9    device space greater than usual, the proper definition there.   And usual, Dr.

10   Shamos in his declaration was very clear.   For buttons, for example, the

11   auxiliary buttons that are supposed to be remote here.   You don't want those

12   buttons to be accidentally hit.   So if you had a 12 button keypad on a phone,

13   for example, a touch key phone that are all square buttons, all equally spaced

14   relative to each other, those would not be remote from each other because if

15   you lined a little too high or a little low, or columns too far to one side or the

16   other, you could end up hitting auxiliary buttons when you thought you were

17   hitting the grouping, the upper grouping of buttons.   And so if you don't

18   believe that a 12 key telephone pad, traditional telephone pad with identical

19   square evenly spaced buttons, that any of those buttons are remote with

20   respect to each other.

21           Anytime you have more than three buttons, two buttons, you're going

22   to have different distances.   So the demonstrative that opposing counsel

IPR2019-00527
Patent 7,753,273 B2

1    showed, counsel for Petitioner showed, there is a different distance between

2    two buttons does not render them remote or not remote.   It's not relevant to

3    the remoteness.

4           Remoteness is about the grouping of buttons for the common function

5    of scrolling as opposed to the grouping of buttons for auxiliary function.   And

6    we think those two groupings have to be spaced -- or separated by a space

7    greater than usual.

8           JUDGE ABRAHAM:   So counsel, the separated by a space greater

9    than usual, that's referring to groups of buttons as opposed to the individual

10   buttons on a keypad?

11          MR. EVANS:   No.   We would apply that to the button within the

12   grouping.   So for example, if you turn to slide 6 -- well let's go with slide 5,

13   which is the disclosure in the patent.

14          As you can see, that grouping of buttons is all spaced from an adjacent

15   button by the green highlight.   And so we would say that none of these

16   buttons are remote with respect to the other because they're all spaced by the

17   same distance relative to the overall pattern.

18          And the same with slide 6, where it shows the wherein layout, the

19   classic phone layout, where the green again highlights that the buttons are all

20   equally spaced with respect to each other.

21          And so remote, if you're located remote, you'd be outside of that

22   spacing.   And in the patent --

29

IPR2019-00527
Patent 7,753,273 B2

1      JUDGE ABRAHAM:   I'm sorry, counsel.   Let me ask you a

2   question about the statement you just made.   How do you say all of the

3   buttons are spaced the same way with respect to each other when it really

4   depends on which two buttons you're talking about?

5      For example, four and five may be spaced apart the same as eight and

6   zero, but four and six are spaced differently from eight and zero.   And four

7   and two are spaced differently from eight and zero.   So when you say in your

8   construction the usual spacing, how do we know what frame of reference

9   we're using with usual when there's so many different buttons to use?

10      MR. EVANS:   Well I think what we mean by separated by a space

11   greater than usual, we're talking about the space between the buttons.   Are

12   they spaced away from the grouping, or are they spaced within the grouping

13   with a balanced spacing?

14      JUDGE ABRAHAM:   And I guess my question -- my follow-up

15   question for that would be: which buttons are you talking about when you say

16   the space between the buttons?   There are so many different buttons.

17   There's more than one spacing when you just say the space between the

18   buttons.

19      MR. EVANS:   The space between the push buttons required for

20   scrolling.   And so the push button -- and the select key.   So the push buttons

21   required for scrolling, the up/down and the left/right buttons, and they have to

22   be spaced -- they're not remote because they're spaced by usual spacing.

30

IPR2019-00527
Patent 7,753,273 B2

1    When you look at them you say those follow a pattern.   They're all equally

2    spaced.

3          If you look at the disclosure, figure 20 of the '273 patent remote in that

4    context is -- you see there -- on the righthand side, you see the four directional

5    arrows with the select button in the middle on the righthand side of the

6    console.

7          And then that panel on the lefthand side of the console contains

8    additional buttons indicated by the reference number 348.   And so that's

9    basically significant.   You can slide a ballot in the space between those two -

10   - those buttons.   And so we would say that that spacing is a space greater than

11   usual as compared to the spacing between the directional buttons and the

12   navigational pad on the righthand side that's used for scrolling.

13         JUDGE ABRAHAM:   Okay.   Thank you.

14         MR. EVANS:   Thank you.   Next I'd like to cover the prior art at a

15   higher level, not directed at any particular claim, but just to discuss what it

16   does and what it does not disclose.   And I'd like to start with Nguyen.

17         Nguyen is a piece of art that is used purely with a telephone.   And

18   Nguyen teaches that you want to use a telephone so that people can practice

19   voting before they get to Election Day.   And they want to practice voting

20   before they get to Election Day because voting happens so infrequently.

21         And for the millennial generation, they can look at a computer and

22   they can immediately understand how it works.   We just lost our screen.

IPR2019-00527
Patent 7,753,273 B2

1      One moment, please.   I apologize, we have a screen saver that we can't turn

2      off.   But if I don't click it every 15 minutes, it appears.   I'll try to keep

3      remembering to do that.

4           So what Nguyen teaches is that you want people practicing at home

5      so on Election Day they don't have a problem miscommunicating their intent.

6      They're familiar with the apparatus.   They walk in.   They know what's

7      coming.   They've already gone through the ballot if they want to, and they

8      know how they want to vote.

9           The practice computer is provided in figure 1 and in column 6 lines

10     30 to 36.   So they can call in and they can practice voting before Election

11     Day, so Election Day comes and they're familiar.

12          And they wanted an input device that was ubiquitous so that

13     everybody has one and everyone can practice, and it doesn't take much effort

14     if you feel like practicing.   Everyone in this case agrees, both experts for the

15     Patent Owner and the Petitioner, as well as the Nguyen reference itself that

16     telephones, the standard 10 key telephone at the time of the Nguyen patent

17     was just such a device.   Everybody had one, and everybody was familiar with

18     the layout.

19          Nguyen particularly criticized proprietary interfaces, and he criticized

20     them in particular, for example, at column 3 lines 1 to 9 because he said that

21     people aren't familiar with them.   And when they vote infrequently, you have

22     to learn the shapes, the buttons and what they mean.   Because these devices

IPR2019-00527
Patent 7,753,273 B2

1    -- and I'm quoting now line 6, column 3 of Nguyen, because these devices use

2    unique proprietary user interfaces, the voter must spend time to learn how the

3    device operates before the voter can even begin to cast votes.

4         So Nguyen says don't be throwing new things at the voter on Election

5    Day because they'll have to figure them out.   That will take time, and then

6    they get it wrong.   So what Nguyen uses is just your standard telephone

7    keypad with equally spaced buttons.

8         The strange thing about Nguyen is that when you vote on Nguyen, and

9    you can see this from figure 8 of Nguyen in the flow chart,   and this is sheet

10   9 of 21 on Nguyen, the first thing that happens when you vote is it tells you

11   the name of the first candidate for whatever contest you're in.   But it never

12   tells you the actual contest you're in.   It just starts reading off the candidates.

13        And so we submit that Nguyen never presents the contest because it

14   never says and now we're going to move to senator.   It just starts telling you

15   the name of the first senator when you get to the Senate contest.   When you

16   vote through that and you come back to the top, and now you're voting for an

17   alderman, it just starts telling you the name of the aldermen.

18        It doesn't say and now we're moving on to the alderman race.   It just

19   tells the aldermen, now the school board.   It doesn't tell you another race,

20   the school board.   The voter has to know, oh, I know, Mr. Smith is running

21   for school board.   We must be in the school board election.   And so the point

IPR2019-00527
Patent 7,753,273 B2

1    is Nguyen doesn't announce the name of the contest, doesn't present the name

2    of the contest.

3              The next piece of prior art I'd like to move on to --

4              JUDGE ABRAHAM:    Before you move off of the Nguyen reference,

5    in column 4 around lines 25 through 34, Nguyen says that various input

6    devices could be used.    So in view of that, why do you say that Nguyen is

7    limited to just telephones?

8              MR. EVANS:    I don't think that Nguyen is limited to telephones, but

9    I think whatever input device you would use has to be an input device that is

10   commonly owned and commonly available, and commonly understood by a

11   voter.    So it could be more than a telephone for the teaching of Nguyen, but

12   it would have to satisfy the criterion that voters would have common

13   accessibility to it.

14             Because if you have to order it, or wait for it, or get a special modem

15   connection to connect with it, you're not going to do that.    The point of

16   Nguyen was to make voter practice easy and easy from your home.

17             So I would say certainly if it was something more common, a very

18   common device other than the telephone to do that, Nguyen would say yes,

19   you could use that.    But I don't believe that Nguyen would say you can use a

20   TV remote because a TV remote, A, is not connected.    There's no way to

21   connect the TV remote to the computer across town in Nguyen.    And

34

IPR2019-00527
Patent 7,753,273 B2

1    everybody's TV remote works differently.   And none of us know how to use

2    them half the time.

3            So the phone in contrast comes with a speaker, comes with an

4    earpiece.   It's already wired into the phone network.   You just simply call

5    and you can practice voting.

6            So I would agree with you that it can be more than the phone keypad,

7    but it would have to be something that is commonly known and understood

8    by the population and that's connected into the network, the telephone network

9    or can be readily connected into the network.

10           And that -- just to get to it is the problem that we have when they talk

11   about game controllers.   Bederson would like to say that you can just put a

12   game controller on Nguyen and then use the game controller to conduct the

13   voting session.

14           But when you read that testimony you're going to go out and do any

15   analysis to see how many of those game controllers are actually out there, how

16   many are out there relative to people who have a phone, which game

17   controllers different people have because all the different game controllers are

18   set up to move differently.   The select button on some are outside of the

19   buttons, the buttons sometimes are uniquely shaped.   There's no teaching of

20   how you would interface those game controllers into a phone system that a

21   person could use to practice for election day.

IPR2019-00527
Patent 7,753,273 B2

1          And so I would submit that all the different -- several different game

2     manufacturers even if you're talking about the big ones, I submit that those

3     are not commonly found in houses.   People who need the most practice, the

4     older people, certainly don't have a lot of video games that they practice with.

5          But next if I could move on to Neff, if there are no further questions

6     on Nguyen.   Neff just shows the 2D display.   So if you take a look at Neff

7     and for example, we turn to page 7 of Neff which just shows there the screen

8     for President and Vice President of the United States and vote for one, and

9     just lays out a two dimensional grid there with all the candidates.   George

10    Washington and John Adams in the upper left corner down to John Hagelin,

11    Nat Goldhaber, natural law on the lower righthand corner along with Howard

12    Phillips and J. Curtis Frazier.   And so you have presented there 11 different

13    candidates and it's in a grid.   And it's a touch screen.

14         We know that it's a touch screen because if you look at page 9 of Neff

15    -- I'm sorry, if you look at page 6 of Neff it explains instructions for a vote,

16    vote by touching the box to the left of the candidate or measure of your choice.

17         So the way you'd vote on this is it's a touch screen.   You take the

18    square next to the candidate you want and that's how you indicate that that is

19    your intent to vote.   There's no use of a device to do this.

20         Now, there is -- it's shown under the little mouse I believe in this one.

21    And to the extent someone took a mouse and clicked the box I guess that

IPR2019-00527
Patent 7,753,273 B2

1    would work too.   But again, you're talking about moving a cursor around on

2    a two dimensional display and then clicking the candidate that you want.

3         The next reference we have is Marshall.   And Marshall has nothing

4    to do with voting.   It's just a human interface to see who likes what and how

5    they like to input it in the context of input devices.

6         Marshall developed two trials.   And if we could turn to page 6 of

7    exhibit 1006 which is Marshall at page 6, exhibit 1006, on the lefthand side

8    there it shows the TV remote they used for this study, their first field trial.

9         And the first seven trials in that field trial, the users were limited to

10   just using a navigational button at the bottom of the TV remote.   They could

11   not use the control key tab at the top of the remote.

12        And if you turn to page 15 of Marshall you'll see that the way to use

13   that keypad that worked the best is the A to Z grid in the lower lefthand corner.

14   And the way the A to Z grid works is that you show this display with the A

15   button highlighted, and then by using the navigational buttons you move

16   between the letters, and then you hit the select button when you're over the

17   letter that you want, when you've highlighted the letter that you want.

18        And then you can highlight the next letter, the next letter, the next

19   letter to input letters.   There's no teaching in Marshall to -- that's the teaching

20   in Marshall.

21        After they did that they learned that the A to Z grid is the best way to

22   use the navigational pad.   They then conducted the second trial.   In the

37

IPR2019-00527
Patent 7,753,273 B2

1     second trial they used a QWERTY keyboard, just a standard key button

2     keyboard where it has the letters of the alphabet that we're all familiar with.

3     QWERTY, Q-W-E-R-T-Y being the first letters in the upper left row.

4          They used that as a control.   And they also allowed the user to use the

5     top 12 buttons of the remote control for additional inputs.   And they also let

6     people use the navigational pad to get the best way to use the navigational

7     pad, the A to Z grid, to see which of those inputs would be the best.

8          And they were -- far and away they liked the QWERTY keyboard the

9     best.   The next three inputs they like were the use of the 12 buttons at the top

10    of the TV remote, and then the least favorite is using the navigational buttons.

11    They found that the navigational buttons were not very efficient.   They found

12    on page 15 that this data entry scheme was characterized by a very restrictive

13    handset capability, execute only.

14         So Marshall panned the navigational button.   Marshall said the best

15    is QWERTY and the second best is a 12 pad keypad like you find in Nguyen.

16    So if you are going to combine Nguyen with Marshall, you'd say well, Nguyen

17    used the 12 button keypad.   Marshall prefers the 12 button keypad certainly

18    over navigational panel with arrows and directional buttons.

19         So if we're going to combine Marshall and Nguyen, we're going to

20    stick with the 12 button keypad because both of them like it, and to the extent

21    anyone's spoken to it, Marshall, they said don't use the navigational buttons

22    because they didn't like them.

IPR2019-00527
Patent 7,753,273 B2

1       JUDGE ABRAHAM:   Counsel, on page 185 of Marshall in the

2    righthand column at the top it seems to suggest that it's not as clear-cut, the

3    preference after your keyboard is not so clear-cut as you're making it out to

4    be.   What's the basis for saying that, after the keyboard that the 12 key

5    telephone pad is preferred over the arrow navigational pad when here it seems

6    like it sort of depends and it varies based on the user?

7       MR. EVANS:   I think it comes from the fact that when you start with

8    the rank orderings, for example, in table 7 there's an analysis in here that if --

9    they said the best was QWERTY in the second trial.   Multiple press is the

10   next best, using just the number keypad at the top of the mouse.   And then

11   the menu, and the number one, two, three, four were the next best.

12      And that all of those used the 12 button keypad.   And then below all

13   of that is finally the navigational button.

14      JUDGE ABRAHAM:   Sorry, what part of Marshall are you getting

15   that information from?   Is there a table you're referring to?

16      MR. EVANS:   There's a table on table 7.   And if you look at table 7

17   -- I apologize.   Somewhere in here it put them in rank.   I'll try to find that for

18   you and tell you that in rebuttal.   I apologize.   I don't have the cite for you

19   right now.

20      JUDGE ABRAHAM:   That's okay.   We don't want to take up too

21   much of your time.   So you can move on.   And if you get it and have it for

22   rebuttal, that would be great.

IPR2019-00527
Patent 7,753,273 B2

1       MR. EVANS:  Okay.  I'll pull that up for you.  So those are the --

2     that's the prior art.

3       So then when we get to ground 1, we see that Nguyen doesn't present

4     the contest, it just presents the options, and therefore if the ground was

5     anticipation that element is missing and therefore ground 1 fails.

6       Ground 1 includes the remote key claims and the keys in Nguyen are

7     certainly not remote.   They're all within a 12 button keypad.   And the Board

8     already found in its initial guidance that -- when asked the question what do

9     we do if we don't allow claim 1, though they do allow dependent claim 4.   I

10    believe that it looked like the Board is favorably disposed on the remote

11    question.   If you learned to not show remote keys as required by dependent

12    claims would be ground 1.

13       Ground 2 is a combination of Nguyen and Marshall, and as you just

14    saw Nguyen uses a 12 pad key and Marshall favors the 12 pad key.   Marshall

15    never uses keys to switch between options, or to switch between screens and

16    therefore Nguyen and Marshall would not lead to the ground 2 claims.

17       The unique shape -- they said the unique shape of the navigational pad

18    in Marshall, but if you're not going to use the navigational pad from Marshall

19    you're certainly not going to see a unique shape.   To the extent you consider

20    the unique shape Nguyen tells you don't be using a unique shape because

21    people are going to have to learn that, and you don't want to have to -- you

22    want to use common input devices that people, the voters don't have to learn.

40

IPR2019-00527
Patent 7,753,273 B2

1     So Marshall likes the 12 button keypad.   Nguyen uses the 12 button

2     keypad.   All of those keys as you see in Marshall are commonly spaced and

3     all of them are square and therefore you don't have any unique shapes.

4     Ground 3, Nguyen and McDermott.   Nguyen is not -- doesn't present

5     the ballot so then ground 3 fails.

6     Ground 4, Neff with Nguyen.   Neff is just a display with a touch

7     screen as we saw and Nguyen, Nguyen has no display at all.   And so if you're

8     going to use Nguyen in the navigational context the only way the navigational

9     context is in front of the art is you move the cursor across the display and then

10    select when you get to where you want.

11    And if you look at Nguyen -- I'm sorry, if you look at Neff, for

12    example, page 7 of Neff and you see they've displayed the candidates, you

13    can't move left to right to go between candidates, and up and down to go

14    through candidates because then you'll have nothing left -- or if you move left-

15    right, if you move the cursor to go through candidates either left or right, or

16    up-down with the up/down button you have no button left to switch between

17    screens.   It just goes between contests.   It scrolls between contests.   And

18    therefore if you put Neff together with Nguyen you have to use a directional

19    button in the classic sense which is to move the cursor on the screen of Neff

20    and then when you get to the candidate you want you select it, and then you

21    can go to the top where it says next and back to get to the next contest.   If

22    not, you run out of buttons on Neff.   Does that make sense, what I'm saying?

IPR2019-00527
Patent 7,753,273 B2

1          In other words, if you have the display of Neff and you have to move

2    around on Neff and if it's more than just a column, Neff is either the left/right

3    and up/down just to navigate on Neff.   Once you use up your buttons to go

4    up-down and left-right the only way you can get to the next contest, the last

5    contest is to move the cursor to either the next button or the back button and

6    select those buttons in order to move between contests.

7          So if you combine these two you just simply use Nguyen's buttons in

8    the classic way you use a cursor on the screen of Neff to select the things you

9    want on the screen of Neff in lieu of touching them with your finger.   You

10   would not use the buttons of Neff to scroll between contests or to scroll

11   between options.

12         There's also a bit of an arrow conflict in that Neff goes left to right to

13   pick candidates and top to bottom to go between contests.   In Neff you go

14   left-right for contests.   So you have a conflict between arrow directions if you

15   try to combine those two.

16         If we go to ground 5 where we're combining Neff with Nguyen and

17   Marshall, Neff is just a display, Marshall teaches displays in its work but the

18   third column in Marshall says that the first prong is to use a grid, and the A to

19   Z grid is where you simply present it in a two dimensional display and then

20   move the cursor over the grid to select the parts you want.   That's the

21   preferred use of navigational buttons in Marshall.   Slide the cursor around on

22   the display with the up/down, left/right button, get to the point you want and

IPR2019-00527
Patent 7,753,273 B2

1    get what you want, select it if you want with the select button which is very

2    different from scrolling through contests and scrolling through options.

3           So in ground 5 if you combine Neff where you get the display with

4    Nguyen that has no display with Marshall that teaches you to move the cursor

5    on the display and select what you want you would never get to scroll between

6    options or between -- scrolling between contests.

7           Six and seven, Neff in view of Marshall, Neff is just a display.

8    Marshall is just a display where you slide the cursor across the screen and

9    select it if you want.   And so again the combination of Neff and Marshall

10   would never have you scrolling between contests or scrolling between

11   options.

12          I'd like to turn briefly to the motion to amend issues.   The discrete

13   presentation screen that opposing counsel or counsel to petitioners brought

14   up, the word discrete does not have to appear in the patent for it to be

15   descriptive of what is in the patent.

16          The discrete presentation screen doesn't say a single screen; it says

17   discrete screens.   And so you don't see that in any of these screens in the '273

18   patent as well as more than one contest in the screen.   So that, I could make

19   it -- screens that show all the active candidates for a contest are always on the

20   same screen.   So I think the word discrete is met, is supported by the written

21   description.

IPR2019-00527
Patent 7,753,273 B2

1        In 23, adjusting the display to protect privacy.   And as expected
2   called out in claim language so that the associate options are not visually
3   presented on the touch screen display.   That's why you adjust the screen.   So
4   the fact that you can adjust it by blinding the screen, or showing an American
5   flag, or showing the words of the Constitution or other things it doesn't matter
6   that there's different ways to do that.   The point is that all of those things
7   obscure the options for the contest and provide privacy.

8        So we suggest that adjusting the display is fully supported by the
9   specification because when it's off you've provided privacy and that's the point
10   and there's no intermediate thing where you kind of provide privacy but not
11   exactly.   You either provide it or you don't provide it.   And turning it off, or
12   showing something that's not the options provide that privacy by adjusting the
13   display.

14        Dependent claim 6 says that there is a dependent element.   But when
15   you look at the claim the elements are connected together.   There's a top, a
16   side, and a marking device on the middle of the display screen.   They're all
17   connected.   I don't believe that's a strong argument for the petitioner.

18        When you get to Bolton it's just another touch screen like Neff.   It
19   doesn't add anything to the analysis.   The fact that HAVA requires privacy.
20   HAVA, the voting act, requires privacy.   These voting machines are already
21   positioned in a voting booth where privacy is met under HAVA.   That doesn't
22   change just because the person is blind and so you're sitting in a private booth.

IPR2019-00527
Patent 7,753,273 B2

1    Already you've met HAVA.   And now you're saying hey, for a blind zone
2    we'll give you an additional deal, we'll turn your screen off.   If you've already
3    met HAVA how does that teach you to turn your screen off.   Turning your
4    screen off is again something that is new here.

5         And Narisawa, the volume buttons on the screen are just that, volume
6    buttons.   There's no teaching that we have used buttons for controlling the
7    display in the face of those with volume buttons.   That's just hindsight
8    analysis.   It's improper.   If there are no questions I will stop here.

9         JUDGE ABRAHAM:   Any questions from the panel?   Okay.
10   Thank you, Mr. Evans.   I have you at about 5 minutes left, so with your
11   opening time, so you'll have 10 minutes for sur rebuttal.

12        MR. EVANS:   Thank you.

13        JUDGE ABRAHAM:   Okay, Mr. Lohse, you have about 10 minutes
14   for your rebuttal.   You can begin when you're ready.

15        MR. LOHSE:   All right, great.   Thank you.   And I'm going to use
16   the patent owner's demonstrative exhibits to kind of walk through for these.
17   And I will tell you which slides they are.   I apologize for that earlier, I got
18   going a bit quickly.   Apologies for that.

19        The first general comment is patent owner's counsel talked a lot about
20   game controllers.   And while Dr. Bederson is an expert in user interface
21   design and game controllers are something people use game controllers are
22   not in any of the art.   They're simply a great example of a very, very common

45

IPR2019-00527
Patent 7,753,273 B2

1   user interface device which is a D pad as Mr. Evans referred to it and it's also

2   what is shown in the '273 patent, it's also what's shown in Marshall.

3           So the whole discussion about game controllers in Bederson was

4   simply that.   It was look, controlling an input of a computer whether for

5   voting or for text is well known and game controllers have been around for a

6   long, long time.   And so in fact game controllers are something that is well

7   known to someone.   Someone would know a game controller like they would

8   know a telephone, a keypad to the point that Mr. Evans was making.

9           With respect to the discrete presentation screen I think it means

10  separate or maybe unique to the contest is another way I might think about it.

11  And if you think about it that way I don't think that the '273 patent still has the

12  written description quote at that discrete element.

13          Mr. Evans raised claim construction for the terms scroll and scrolling

14  which was not part of my slides.   This was on his slide 2.   The construction

15  that petitioner proffered which we think is correct is move or moving between

16  selection options.   We don't think that consecutively needs to be part of that

17  claim term.   We don't think there's any reason that that's relevant.

18          In fact, because the scrolling is between each candidate and so there's

19  a single scrolling between each candidate.   So the consecutive would suggest

20  that there's multiple -- the consecutive movement which I don't think is correct

21  because for example you can scroll to a candidate and then you can select that

22  candidate which means you're not consecutively moving between candidates.

IPR2019-00527
Patent 7,753,273 B2

1    You might go to a candidate to pick them -- select them with a selection.

2    There wouldn't be a consecutive movement.

3         For that reason we think that actually our construction that was in our

4    petition at 11 to 12 of move or moving between selection options is the more

5    appropriate construction.

6         Also on slide 2 of patent owner's demonstratives there's the discussion

7    of presenting the contest and the option.   And I just make the point again that

8    what they're trying to do is change presenting to communicating, and then add

9    in the name of each contest and then an identifier for each of the respective

10   options which I don't think is appropriate.   That's something they certainly

11   could have added in the claim.   It could be in the claim.   It isn't in the claim.

12   And so the claim is much broader than that.   It just simply says presenting

13   said contest.   So we think that our construction is the more appropriate one,

14   plain and ordinary meaning.

15        With respect to the presenting the where and wherein clauses that deal

16   with how the buttons function I would point out that looking at slide 3 of

17   patent owner, if you read the in other words portion it reads out the word other.

18   The word other has disappeared from their construction.

19        And the claim language clearly says a pair of buttons does the contest

20   and then other pair of buttons does the options.   So for that reason we think

21   this construction is not appropriate and it should be plain meaning.

47

IPR2019-00527
Patent 7,753,273 B2

1          With respect to remote or remotely located the judges, you mentioned

2     or asked whether that was the group of buttons or simply a button that is

3     remote and I would refer you to the claim language which says the method of

4     claim 1 wherein said navigation device includes one or more auxiliary push

5     button switches located remote which means a single button could be the

6     auxiliary push button switches which in our case would be the star key or the

7     hash key that we talked about in my presentation.

8          So we think that it's -- remote should be interpreted as at least a key is

9     remote, not that the group has to be remote as I think Mr. Evans was arguing.

10         I'm now turning to patent owner's slide 6.   This is the discussion of

11    remotely, same discussion about remotely but it's discussing usual.   And just

12    picking up on your point, Judge, it's unclear what unusual means for the

13    reasons you mentioned.   Is it the distance as shown in slide 6 between four

14    and five, and five and six, and five and two, and five and eight, or is it also

15    the distance between four and six because clearly that's a distance between the

16    buttons as well which seems to be overlooked by the patent owner's

17    construction.   So we once again believe that the construction is not the right

18    construction.

19         Mr. Evans -- in the Nguyen reference this is slide 9 of patent owner.

20    They talk about the fact that it's all about telephone input and it's really about

21    the telephone and that's a very common, comfortable thing for people to use.

IPR2019-00527
Patent 7,753,273 B2

1    I would cite to Bederson's declaration for the point that in fact there

2    are other ways that are equally comfortable including -- I mean telephone

3    keypads are, but Nguyen clearly discloses that other input devices can be used.

4    And Bederson spent a lot of time discussing all the different ways in which

5    you can get user input which are different than a telephone pad.   So we

6    believe that in fact Nguyen is about making it comfortable for the user, but

7    that doesn't mean it's solely a telephone keypad.

8    JUDGE ABRAHAM:   Counsel, just so you know you have about

9    three and a half minutes time remaining.

10   MR. LOHSE:   Thank you.   So, I'm turning now to patent owner's

11   slide 13 where figure 15 is shown.   And the point I'd like to make here with

12   -- on this is that if you look at table 7 which was referred to by Mr. Evans that

13   is a rank ordering of the test for trial 2 in which both navigation pad and the

14   keypad is being used.

15   And then there's a similar table, I think table -- I can't find it right now

16   -- there's a similar table for the first test.   But the point there being -- oh, table

17   3, excuse me, is for the first test.

18   But I don't believe as you have suggested that there really is any

19   teaching that just the pad with the keypad is preferred.   It depends on the user

20   as you had mentioned.

21   Also, I would point you to your -- the institution decision at page 18

22   which discusses this issue.   Although I note that that portion of the decision

49

IPR2019-00527
Patent 7,753,273 B2

1   actually talked about McDermott.   But actually I think it means Marshall.

2   But that section is probative on this particular point about Marshall and the

3   tests that you can look at.

4        And then finally with respect to adjusting the display I would submit

5   that there are a number of ways you can adjust the display.   So one way is I

6   can turn the display lower, not off, but just lower.   That's clearly something

7   you could do to adjust the display.   That would not provide the privacy of

8   turning off the display or putting some other display up on it.

9        So once again I would submit to you that the adjusting the display

10  lacks written description because it in fact covers more than what the patent

11  claims which is privacy.

12       And then the final point with Narisawa is that he talked about these

13  volume buttons on Narisawa, but the claims of the patent, claim 4 in particular,

14  the auxiliary buttons, there's no assigned function of those buttons.   Simply

15  they're auxiliary buttons that are different than the other buttons.   And

16  Narisawa discloses those.   Thank you.

17       JUDGE ABRAHAM:   Okay, thanks, counsel.   I do have a question

18  for you.   And I don't mean to jump around here.   But if you go back to patent

19  owner's slide 3 this has to do with the claim construction with the wherein.

20       I guess I'm struggling to understand what's the significance between

21  the two different constructions.   Where do we see that play out in terms of

22  the patentability of the claims?

IPR2019-00527
Patent 7,753,273 B2

1    MR. LOHSE:   Okay.   So, I think that the way their construction

2    either of the pairs of switches could be used for either of the scrolling of the

3    contest or the scrolling of the options.   So their construction is broader I guess

4    I would say.   It is broader.

5    And the key point is it actually reads out the other limitation, the word

6    other that appears in the claim.  So, that's the distinction between the two

7    constructions.

8    We think that it should just be plain and ordinary meaning rather than

9    their construction which is broader than the claims as worded and reads out

10   the word other.

11   JUDGE ABRAHAM:   So, the way that you see patent owner

12   construing the claim, the same set of push buttons could be used to scroll

13   among contests and options as opposed to having one set that scrolls among

14   options and a different set that scrolls among the contests?

15   MR. LOHSE:   Correct because the claim language says one and then

16   other to get --

17   JUDGE ABRAHAM:   I understand.

18   MR. LOHSE:   Yes.

19   JUDGE ABRAHAM:   Thank you.

20   MR. LOHSE:   Correct.   Thank you.

IPR2019-00527
Patent 7,753,273 B2

1       JUDGE ABRAHAM:   Sure.   Any other questions from our panel?

2     Thank you.   All right.   Mr. Evans, you have about 10 minutes for sur

3     rebuttal.

4       MR. EVANS:   Thank you, Your Honor.   I'd like to start with

5     Marshall, exhibit 1006 at page 22, the upper righthand corner.   It's where the

6     conclusion section carries over.   The conclusion in the lower left column, it

7     just said the keyboard was best, and then it talked about what you do next.

8       And at the top of exhibit 1006 on page 22 it says if a keyboard is not

9     available the choice of data entry scheme is less clear-cut.   And then it says,

10    and this is important, when only a very limited range of input schemes is

11    available such as the navigation keys on a television remote control unit grid

12    displays are preferred to others, particularly those with a familiar layout.

13      So, what it's saying is if you're stuck with only a few keys then you

14    should use a grid display.   When you're stuck with only a few keys and you

15    have a navigation panel.   If you're not stuck with a few keys, you can

16    alternatively use these cell phone keypads.

17      And then it says -- go ahead?   With such a limited range of keys,

18    manual input speeds were not rated highly by users.   So, it says that if you're

19    stuck with just a few keys and it's a navigation panel then use a grid display.

20      The way the grid display that we saw going back to page 15 is that

21    you use the navigation keys to navigate across the two dimensional display

22    until you get the one you want and you select it.   You don't use the navigation

52

IPR2019-00527
Patent 7,753,273 B2

1    keys to scroll between options or scroll between contests or scroll between

2    screens.

3        And so I would say that Marshall teaches you that navigation keys

4    suffer from having too few keys, but if you're going to use them, use them in

5    a way that teaches away from the patent.

6        The next is on the games controller, counsel brought up the game

7    controller.   But his expert who says use a game controller, he has no idea how

8    many households have a game controller.   That's in his deposition transcript

9    at page 63 line 17 to page 64 line 22.   He has no idea how many households

10   have a pocket PC.   Page 66 lines 3 to 11.   Or a Dell X5 device, page 69 --

11   column 69 line 21 to column 70 line 9.   And so -- page 69 line 21 to page 70

12   line 9.

13       And so the expert is saying that this device, this navigational pad

14   should be used to replace the ubiquitous telephone pad that everyone has, and

15   everyone knows, and everyone can understand, that it should be replaced with

16   devices that he didn't even bother to figure out how many were out there, how

17   common they were.

18       Certainly if you ask a bunch of 15-year-old kids you're going to find

19   a lot more game controllers than if you ask the population that does a lot of

20   voting.   So I submit that there's just no evidence to the idea that the game

21   controller teaches anything other than an Xbox would.

IPR2019-00527
Patent 7,753,273 B2

1           The next question was on scrolling, what's the definition of scrolling.

2     And you have to look in the context of the claim.   The context of the claim

3     talks about, for example, claim 1 of the '273 patent, wherein one of said first

4     and second pairs of push button switches enable the voter to scroll among

5     contests and when the other -- I said the first and second pair to push button

6     switches enable the voter to scroll among the options.

7           So you have to scroll with a push button switch which is a button you

8     push and you release and it's incremental.   It's one, and then you push it again,

9     and then you push it again.   So the context of scrolling with a push button

10    switch I submit that our definition consecutively move, or consecutively

11    moving is the one that makes sense.   It's how you would move from the first

12    contestant to the second contestant, or how you would move from one contest

13    to another contest.   One at a time, consecutively.

14          JUDGE ABRAHAM:   Counsel, what significance does consecutive

15    have with regard to the prior art?   I mean, is there an argument that some of

16    the art doesn't scroll because it's not consecutively moving?

17          MR. EVANS:   I submit that if you have a display you're just sliding

18    a cursor across the display, you can jump between any point in the display and

19    another.   But that's not consecutive movement, that's just sliding a cursor.

20          I would say that clearly scrolling between options and contests does

21    not occur in any respect when you're simply sliding a cursor across a display.

22    This definition helps clarify that point.

IPR2019-00527
Patent 7,753,273 B2

1        JUDGE ABRAHAM:  I understand.   Thank you.

2        MR. EVANS:   Next, the point was griping that we don't present --

3    our argument is that one does not present contests because after all they say,

4    counsel says that you know who the good options are for the contest.

5        But the language is presenting said contest and said associated

6    options.   So you have to present both.   You don't present a contest by

7    presenting options.   You have to present a contest and separately present

8    associated options.   And so if all Nguyen does is tell you who is running but

9    doesn't tell you the race they're running in then Nguyen has not presented a

10   contest.   In the context of the claim that's the only logical reading of that

11   claim language.

12       Next, with remote, their definition is out of the way.   And I think

13   counsel's argument was that to keep the auxiliary keypad on the other side of

14   the voting machine shown in the '273 patent is certainly out of the way and it

15   certainly meets the definition we propose as well.   And so in either event the

16   buttons that are in a common 12 pad configuration for a telephone, none of

17   those buttons are remote with respect to the other.

18       And also counsel brought up the idea that adjust could be just simply

19   turning down the level of intensity while you're not actually turning it off.

20   But that wouldn't meet the claim language because the claim language we

21   asked for in substitute claim 23 says adjusting the touch screen display "after

IPR2019-00527
Patent 7,753,273 B2

1    the voter elects to have said contests and said associated options presented

2    audibly."

3          So that says contests and associated options are not visually presented

4    on the touch screen display.   So the test is have you turned it down enough

5    that you can't see the options.   If you have then you have privacy and you

6    can't see them.

7          If you turn it down but you can still see them, well then you haven't

8    met the claim language of adjusting the touch screen display where the options

9    are not visually presented on the touch screen display.   So I think the shades

10    of grey that counsel is trying to create, there aren't shades of grey.   Either you

11    can see the screen or you can't.   If you can't you've adjusted it in the claim

12    language.   If you can still read it, you haven't.

13          So, and that's certainly disclosed in the patent where putting a jack to

14    the audible in the voting machine turns the screen off.   Unless there are

15    questions I have nothing further.

16          JUDGE ABRAHAM:   Any questions from the panel?

17          JUDGE MCGEE:   None from me.

18          JUDGE ABRAHAM:   All right.   Well, we have no questions and so

19    I'd like to thank the parties for their time today and this hearing is now

20    adjourned.   We'll go off the record.   I hope everyone has safe travels if you're

21    going anywhere, or just stay safe if you're not.

IPR2019-00527
Patent 7,753,273 B2

1              (Whereupon, the above-entitled matter went off the record at 11:34
2        a.m.)

IPR2019-00527
Patent 7,753,273 B2

PETITIONER:

Timothy Lohse
Harpreet Singh
Larissa Park
DLA PIPER, LLP
timothy.lohse@dlapiper.com
harpreet.singh@dlapiper.com
larissa.park@dlapiper.com

PATENT OWNER:

Robert Evans, Jr.
Michael Hartley
LEWIS RICE, LLC
revans@lewisrice.com
mhartley@lewisrice.com

Kathleen Petrillo
kpetrillo@senniger.com

Jonathan Pollmann
Kyle G. Gottuso
jonathan.pollmann@stinson.com
kyle.gottuso@stinson.com