IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ELECTION SYSTEMS & SOFTWARE, LLC, <br><br> Plaintiff, <br><br> v. <br><br> SMARTMATIC USA CORPORATION, <br><br> Defendant. | Civil Action No. 18-1259-RGA |

MEMORANDUM OPINION

Patricia Smink Rogowski, ROGOWSKI LAW LLC, Wilmington, DE; Robert M. Evans, Jr. (argued), LEWIS RICE LLC, St. Louis, MO;

    Attorneys for Plaintiff.

Brian A. Biggs, Larissa S. Bifano (argued), Angela C. Whitesell, Erin E. Larson, DLA PIPER LLP, Wilmington, DE;

    Attorneys for Defendant.

July 19, 2022

**ANDREWS, UNITED STATES DISTRICT JUDGE:**

Before me is the issue of claim construction of "remote" in U.S. Patent No. 7,753,273 ("the '273 Patent"). I have considered the parties' joint briefing and letters filed thereafter. (D.I. 80, 95 (parties agreeing to constructions for "diverter" and "diverting" in the asserted claims of U.S. Patent No. 8,096,471), 96, 97). I held a claim construction hearing on July 1, 2022.

## I. LEGAL STANDARD

"It is a bedrock principle of patent law that the claims of a patent define the invention to which the patentee is entitled the right to exclude." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc) (cleaned up). "There is no magic formula or catechism for conducting claim construction. Instead, the court is free to attach the appropriate weight to appropriate sources in light of the statutes and policies that inform patent law." *SoftView LLC v. Apple Inc.*, 2013 WL 4758195, at *1 (D. Del. Sept. 4, 2013) (cleaned up). When construing patent claims, a court considers the literal language of the claim, the patent specification, and the prosecution history. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 977–80 (Fed. Cir. 1995) (en banc), *aff'd*, 517 U.S. 370 (1996). Of these sources, "the specification is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term." *Phillips*, 415 F.3d at 1315 (cleaned up).

"The words of a claim are generally given their ordinary and customary meaning . . . [which is] the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention, i.e., as of the effective filing date of the patent application." *Id.* at 1312–13 (cleaned up). "The ordinary meaning of a claim term is its meaning to [an] ordinary artisan after reading the entire patent." *Id.* at 1321 (cleaned up). "In some cases, the ordinary meaning of claim language as understood by a person of skill in the art may be readily apparent even to lay judges,

and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words." *Id.* at 1314.

When a court relies solely upon the intrinsic evidence—the patent claims, the specification, and the prosecution history—the court's construction is a determination of law. *See Teva Pharm. USA, Inc. v. Sandoz, Inc.*, 574 U.S. 318, 331 (2015). The court may also make factual findings based upon consideration of extrinsic evidence, which "consists of all evidence external to the patent and prosecution history, including expert and inventor testimony, dictionaries, and learned treatises." *Phillips*, 415 F.3d at 1317–19 (cleaned up). Extrinsic evidence may assist the court in understanding the underlying technology, the meaning of terms to one skilled in the art, and how the invention works. *Id.* Extrinsic evidence, however, is less reliable and less useful in claim construction than the patent and its prosecution history. *Id.*

## II. BACKGROUND

The '273 and '471 Patents describe voting machines. '273 Patent, 2:24-38; '471 Patent, 2:3-35. The '273 patent application was filed on June 4, 2003, and the '471 patent application was filed on December 17, 2008. The '471 Patent shares portions of the '273 Patent's specification.

The parties filed a Joint Claim Construction Brief on May 27, 2022, disputing the constructions of "remote" from the '273 Patent and "diverter" and "diverting" from the '471 Patent. (D.I. 80). On June 23, 2022, I issued an Order providing proposed constructions for these terms and requesting that the parties meet and confer. (D.I. 88). After meeting, the parties agreed to a construction for the "diverter" and "diverting" terms. (D.I. 95). The Parties could not agree regarding how "remote" should be construed, however, and provided updated proposed constructions for this term. (D.I. 96, 97).

3

"Remote" appears in asserted claim 4 of the '273 Patent, where claim 4 is dependent on claim 1. The parties agree that claim 4 is representative for purposes of this dispute. (D.I. 80 at 2). Claims 1 and 4 read:

> 1. A method of voting that allows a voter to navigate a plurality of contests and a plurality of options associated with each of said contests, said method comprising:
>
>> providing a navigation device comprising a center push button switch, a first pair of push-button switches positioned above and below said center push-button switch, and a second pair of push-button switches positioned left and right of said center push-button switch;
>>
>> presenting said contests and said associated options to the voter, wherein one of said first and second pairs of push button switches enables the voter to scroll among said contests, and wherein the other of said first and second pairs of push-button switches enables the voter to scroll among said options; and
>>
>> receiving a plurality of voting selections from the voter, wherein said center push-button switch enables the voter to make at least one voting selection for each of said contests by selecting at least one of said options without providing any input on other of said options.
>
> 4. The method of claim 1 wherein said navigation device includes one or more auxiliary push-button switches located ***remote*** from said first and second pairs of push-button switches and said center push-button switch.

('273 Patent, 18:14-33, 18:42-45 (disputed term bolded and italicized)).

### III. CONSTRUCTION OF DISPUTED TERM

#### A. "remote" ('273 Patent, Cl. 4)

1. *Plaintiff's proposed construction:* "Distinctly spaced apart."

2. *Defendant's proposed construction:* "Distant in space."

3. *Court's construction:* "Distant in space."

After considering the Parties' Joint Claim Construction Brief, I proposed that "remote" be construed to mean "distant in space." (D.I. 88). Defendant agrees with the Court's proposed

4

construction. (D.I. 97). Plaintiff disagrees and argues that "remote" should be construed to mean "distinctly spaced apart." (D.I. 96).

The parties' dispute centers around how far the "auxiliary push-button switches" (hereinafter "auxiliary buttons") must be from the "first and second pairs of push-button switches and [the] center push-button switch" (hereinafter "primary buttons") to be considered remote.

Plaintiff argues that "distant" as it is used in the Court's proposed construction "may be confusing to a juror who might mistakenly think that 'distant' requires a very large distance between the two sets of buttons" when, instead, claim 4 requires that the auxiliary buttons and primary buttons "must be part of the same 'navigation device.'" (D.I. 96 at 1-2 (quoting '273 Patent, 18:42-45 (claim 4 requiring "wherein said navigation device includes ...."))). Plaintiff instead proposes "distinctly spaced apart" because "[t]his definition requires spacing between the two groups of buttons, but not so much as to render the spacing requirement unreasonably large for the covered claim term." (*Id.* at 2). Defendant disagrees, arguing that Plaintiff's proposed construction "distinctly spaced apart" is ambiguous and would "encompass the same prior art Plaintiff distinguished during ... prior IPR proceedings." (D.I. 97 at 1 (citing D.I. 80 at 13-14, 31-33)).

The term "remote" does not appear in the '273 Patent's specification. Yet, the parties agree that Figures 19 and 20 of the '273 Patent provide embodiments of auxiliary buttons that are "remote" from primary buttons. (D.I. 80 at 3-4, 12-13). These figures depict a voting machine with an auxiliary button sub-panel located on the opposite side of a voting machine from a primary button sub-panel. ('273 Patent, Figures 19-20).

The parties do not argue that the prosecution history informs how an ordinarily skilled artisan would have understood the term "remote." The '273 Patent was subject to *inter partes*

review ("IPR"), however, where the Plaintiff overcame a prior art reference including rows of equidistantly spaced buttons by arguing that the bottom row of buttons did not include auxiliary buttons that were remote from upper rows of primary buttons because buttons that are equidistantly spaced cannot be remote from each other; Plaintiff emphasized that, "'remoteness is important so that the voter does not confuse the auxiliary push-button switches with those in the [upper rows] and so might push a button inadvertently.'" (D.I. 81 at Appx00131 (Patent Trial and Appeal Board's Final Written Decision affirming the validity of claim 4) (quoting Patent Owner's (Plaintiff's) expert witness)); *see also Aylus Networks, Inc. v. Apple Inc.*, 856 F.3d 1353, 1361 (Fed. Cir. 2017) ("Because an IPR proceeding involves reexamination of an earlier administrative grant of a patent, it follows that statements made by a patent owner during an IPR proceeding can be considered during claim construction and relied upon to support a finding of prosecution disclaimer.").

Considering the intrinsic evidence, I do not agree that "remote" should be construed to mean "distinctly spaced apart," as this construction adds unnecessary ambiguity and would encompass navigation devices that are outside the scope of the claimed invention. For example, imagine a keypad including primary buttons that are equidistantly spaced one inch apart. If this keypad further included auxiliary buttons located half of an inch from the primary buttons, these auxiliary buttons would be "distinctly spaced apart" from the primary buttons, but I do not agree that they would be remote. Instead, considering the intrinsic record, a person of ordinary skill in the art would have understood "remote" auxiliary buttons to be those that are further separated from the primary buttons.

Rejecting Plaintiff's proposed construction, I find that "remote" should be construed to mean "distant in space." After considering the intrinsic evidence and in an accordance with the

6

word's well-understood meaning, a person of ordinary skill in the art would have understood "remote" to define a significant spatial separation between the primary and auxiliary buttons. This is consistent with the teachings of the specification related to Figures 19 and 20, showing auxiliary buttons that are "distant in space" from the primary buttons. ('273 Patent, Figures 19-20). This is also consistent with Plaintiff's expert's statements during the IPR that auxiliary buttons that are remote from primary buttons must be sufficiently spaced as to avoid confusion or inadvertent pressing. (D.I. 81 at Appx131; *see also Fenner Invs., Ltd. v. Cellco P'ship*, 778 F.3d 1320, 1323 (Fed. Cir. 2015) ("Any explanation, elaboration, or qualification presented by the inventor during patent examination is relevant, for the role of claim construction is to capture the scope of the actual invention that is disclosed, described, and patented.") (cleaned up)). But at what spacing would a person of ordinary skill have understood the remote buttons to be "distant in space"? This is not a question for claim construction, but a factual question on which the experts may offer their opinions.

Further, while Plaintiff expresses concern that "distant in space" could be misunderstood by the jury to require a very large distance that conflicts with the claim requirement that the primary and remote buttons be located on the same navigation device, I do not think this is a serious concern. (D.I. 96 at 1-2). I am confident that the jury will read the claim language in its entirety and understand that the primary and remote buttons must be located on the same navigation device. (I could so instruct the jury if this remains a concern at trial.).

Thus, I will reject Plaintiff's proposed construction because it is ambiguous and does not align with the meaning of "remote." I will construe "remote" to mean "distant in space."

## IV. CONCLUSION

Within five days the parties shall submit a proposed order consistent with this Memorandum Opinion suitable for submission to the jury.