**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| ELECTION SYSTEMS & SOFTWARE, LLC, | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) )   C.A. No. 18-01259-RGA |
| SMARTMATIC USA CORP, | ) )   JURY TRIAL DEMANDED |
| Defendant. | ) ) ) |

**DEFENDANT'S OPENING BRIEF IN SUPPORT OF
THE MOTION FOR LEAVE TO AMEND THE ANSWER**

**TABLE OF CONTENTS**

I. INTRODUCTION ...................................................................................................................1

II. FACTUAL BACKGROUND..................................................................................................1

    A. The AutoMark VAT and the '471 Patent ................................................................1

    B. The Court Enters A Scheduling Order Under Which Fact Discovery Has Not Yet Closed. ....................................................................................................................2

    C. Smartmatic Discovers That Unnamed Inventors Contributed To The Invention Claimed In The '471 Patent. ...................................................................................3

    D. ES&S Does Not Consent To The Filing Of The Amended Answer........................4

III. LEGAL STANDARD..............................................................................................................4

IV. ARGUMENT...........................................................................................................................5

    A. Smartmatic Did Not Unduly Delay In Asserting The Proposed Amendment. ........5

    B. Smartmatic's Motion To Amend Is Brought In Good Faith....................................8

    C. ES&S Will Not Be Unfairly Prejudiced By This Amendment.................................8

    D. Smartmatic's Proposed Affirmative Defense Is Not Futile. ..................................10

    E. Good Cause Exists To Amend The Scheduling Order. .........................................11

V. CONCLUSION......................................................................................................................12

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Alcoa Inc. v. Alcan Rolled Prod.-Ravenswood LLC*,
  2017 WL 5957104 (D. Del. Dec. 1, 2017) .................................................................................7

*Arthur v. Maersk, Inc.*,
  434 F.3d 196 (3d Cir. 2006) ................................................................................................5, 8

*Bechtel v. Robinson*,
  886 F.2d 644 (3d Cir. 1989) ....................................................................................................8

*Belcher Pharm., LLC v. Hospira, Inc.*,
  2019 WL 2503159 (D. Del. June 5, 2019) ............................................................................10

*Bjorgung v. Whitetail Resort, LP*,
  550 F.3d 263 (3d Cir. 2008) ....................................................................................................5

*In re Burlington Coat Factory Sec. Litig.*,
  114 F.3d 1410 (3d Cir. 1997) ..................................................................................................5

*Cureton v. Nat'l Collegiate Athletic Ass*n,
  252 F.3d 267 (3d Cir. 2001) ................................................................................................5, 8

*Dole v. Arco*,
  921 F.2d 484,486-87 (3d Cir. 1990) .......................................................................................4

*Enzo Life Scis., Inc. v. Digene Corp.*,
  270 F. Supp. 2d 484 (D. Del. 2003) ..................................................................................7, 11

*Foman v. Davis*,
  371 U.S. 178 (1962) ................................................................................................................5

*Great W. Mining & Mineral Co. v. Fox Rothschild LLP*,
  615 F.3d 159 (3d Cir. 2010) ..................................................................................................10

*J.E. Mamiye & Sons, Inc. v. Fid. Bank*,
  813 F.2d 610 (3d Cir. 1987) ....................................................................................................8

*Koken v. GPC Int'l, Inc.*,
  443 F. Supp. 2d 631 (D. Del. 2006) ......................................................................................10

*MacQueen v. Union Carbide Corp.*,
  2015 WL 167674 (D. Del. Jan. 8, 2015) ...............................................................................11

*Pannu v. Iolab Corp.*,
    155 F.3d 1344 (Fed. Cir. 1998)..........................................................................................10

*Roquette Freres v. SPI Pharma, Inc.*,
    2009 WL 1444835 (D. Del. May 21, 2009).................................................................5, 9, 11

*Sewall v. Walters*,
    21 F.3d 411 (Fed. Cir. 1994)..............................................................................................10

*Shane v. Fauver*,
    213 F.3d 113 (3d Cir. 2000)................................................................................................10

*Targus Int'l LLC v. Victorinox Swiss Army, Inc.*,
    C.A. No. 20-464 (RGA).......................................................................................................7

*In re VerHoef*,
    888 F.3d 1362 (Fed. Cir. 2018)..........................................................................................11

*WebXchange Inc. v. Dell Inc.*,
    2010 WL 256547 (D. Del. Jan. 20, 2010).............................................................................5

*Winer Family Trust v. Queen*,
    503 F.3d 319 (3d Cir. 2007)................................................................................................10

**Statutes**

35 U.S.C. § 102(f)............................................................................................................. *passim*

**Other Authorities**

Fed. R. Civ. P. 12(b)(6).........................................................................................................10

Fed. R. Civ. P. 15(a)(2).........................................................................................1, 4, 5, 10, 11

Fed. R. Civ. P. 16(b)(4)...........................................................................................1, 5, 11, 12

U.S. Patent No. 7,753,273...................................................................................................2, 3

U.S. Patent No. 8,096,471............................................................................................ *passim*

**I.      INTRODUCTION**

Pursuant to Fed. R. Civ. Pro. 15(a) and 16(b), Defendant Smartmatic USA Corp. ("Smartmatic") respectfully requests leave to amend its Answer and Affirmative Defenses to Plaintiff Election System & Software LLC's ("ES&S") Complaint to include one additional affirmative defense that U.S. Patent No. 8,096,471 (the "'471 patent") is invalid under 35 U.S.C. § 102(f) for failing to name all of the proper inventors. This defense is based on documents and information that Smartmatic's counsel recently discovered and obtained from a third party, and that ES&S did not produce in this case. This defense would render the only remaining asserted claims of the '471 patent invalid.

**II.     FACTUAL BACKGROUND**

    **A.      The AutoMark VAT and the '471 Patent**

The AutoMark Voter Assist Terminal 1.0 (the "AutoMark VAT") is an electronic ballot marker machine designed for use by people who are unable to manually mark an optical scan ballot due to physical impairments or language barriers. The AutoMark VAT was originally patented by Eugene Cummings in 2003, the lead named inventor on the asserted '471 patent in this case, and was developed and sold by AutoMark Technical Systems. ES&S purchased AutoMark Technical Systems in 2008.

The stated purpose of the AutoMark VAT is to allow voters who are visually impaired, physically disabled, or prefer to vote in an alternate language the opportunity to vote privately and independently. On information and belief, concerns were raised by multiple individuals, including Dr. Diane C. Golden, that the AutoMark VAT did not satisfy its stated purpose. As Dr. Golden stated around this time: "[T]he big access 'problem' with ballot marking devices (like the AutoMark) is the paper handling that is required on the front end to feed the paper ballot into the

1

system and on the back end to extract the marked paper ballot from the system and place it into a ballot box." (Ex. A).

Based on documents and information in Dr. Golden's possession, on or around June 21, 2005, ES&S and AutoMark had a conversation with multiple individuals (none of whom were officers, employers, or agents of AutoMark or ES&S), including Dr. Golden regarding the deficiencies in the AutoMark VAT. (Ex. B). During this conversation, one or more of those individuals (including Dr. Golden) provided suggestions regarding how to improve accessibility of the AutoMark VAT for people with disabilities, including by redesigning the AutoMark VAT so that a marked ballot could be automatically placed in a sealed ballot box without depending on a voter's ability to handle paper. (*Id.*).

The provisional application that led to the '471 patent was filed on December 18, 2007, more than two years after those communications. The '471 patent claims a ballot marking device having an *attached* ballot box. The claimed device allows a user to mark their ballot and either returns the marked ballot to the voter or automatically deposits the marked ballot into a secure ballot box attached to the device. (Ex. C, Abstract). According to the specification, the alleged invention overcomes drawbacks in the traditional system for assisting voters who have a physical impairment. (*Id.* at 1:33-56). Although the idea to combine the ballot marking device and the ballot box was communicated to ES&S and others nearly two years before, the '471 patent names only Eugene M. Cummings and Sean Brockhouse as inventors, and fails to include Dr. Golden or any other individual who made the suggestions that ES&S later patented in the '471 patent.

**B.   The Court Enters A Scheduling Order Under Which Fact Discovery Has Not Yet Closed.**

ES&S initiated this lawsuit on August 17, 2018 asserting infringement of two patents—the '471 patent and U.S. Patent No. 7,753,273 (the "'273 patent"). (D.I. 1). After denying

2

Smartmatic's motion to dismiss, the Court entered a Scheduling Order on April 23, 2019.  (D.I. 18; D.I. 23).  The parties engaged in little discovery before agreeing to a Joint Stipulation and Proposed Order to Stay Pending *Inter Partes* Review.  (D.I. 41).  With the Court's consent, this case was stayed on August 14, 2019.  (D.I. 42).  Upon a motion by ES&S, the stay was lifted on May 11, 2021.  (D.I. 54).  The Court entered a revised scheduling order on May 26, 2021.  (D.I. 56).  That scheduling order set the deadline to amend or supplement the pleadings as June 18, 2021, the close of fact discovery as August 24, 2022, and trial for May 22, 2023.  (*Id*. at ¶¶ 2, 3(a), 17).  ES&S voluntarily dismissed the '273 patent with prejudice on July 29, 2022.  (D.I. 119).

> **C. Smartmatic Discovers That Unnamed Inventors Contributed To The Invention Claimed In The '471 Patent.**

As part of a search to retain a potential experts on electronic voting machines, Smartmatic's counsel reached out to Dr. Diane C. Golden, the Director of Technical Assistance for Center for Assistive Technology Act Data Assistance ("CATADA") at the Illinois Assistive Technology Program.  (Bifano Affidavit ¶ 3).  Smartmatic's counsel first spoke with Dr. Golden on or around May 5, 2022, at which time she mentioned her previous experience with ES&S in connection with adapting the AutoMark VAT by adding a secure ballot box attached to the device.  (*Id*. at ¶ 4). Dr. Golden confirmed the information she provided Smartmatic's counsel by producing contemporaneous emails from that time period on or around May 12, 2022.  (*Id*. at ¶ 5).

Smartmatic had to evaluate the information it received on May 12, determine the best way to proceed, consult with its client regarding the same, amend its initial disclosures to identify Dr. Golden as an individual with relevant information, and prepare the proposed amended answer.  (*Id*. at ¶ 6).

The documents received from Dr. Golden were produced to ES&S on July 22, 2022.  (Ex. D).  A deposition of Dr. Golden is scheduled for August 15, 2022.  (Ex. K).

3

### D. ES&S Does Not Consent To The Filing Of The Amended Answer.

On July 18, 2022, Smartmatic notified ES&S that it intended to seek leave to amend its answer to add an affirmative defense to the '471 Patent based on improper inventorship under 35 U.S.C. § 102(f). (Ex. E). The parties' counsel held a meet and confer on July 22, 2022 to discuss the proposed amended answer and other discovery and case management issues. (Ex. F). At that same time, Smartmatic provided a draft of its proposed amended answer. (*Id.*). The parties continued their discussions through email until July 27, 2022, when ES&S notified Smartmatic that it did not consent the filing of the amended answer because ES&S's counsel stated (among other reasons) that "ES&S would be prejudiced having to take discovery of this new theory at this late hour." (Ex. G). However, since Smartmatic provided ES&S with a draft of its proposed amended answer, ES&S has:

- amended its infringement contentions to include infringement theories not previously disclosed in the four years this case has been pending;

- produced 254 pages of new documents responsive to Smartmatic's requests served on October 4, 2021;

- provided supplemental responses to interrogatories asserting for the first time that Smartmatic's invalidity defenses based on products that Smartmatic could not have raised during the IPR proceedings related to the '471 patent are somehow barred by estoppel; and

- offered to produce five of its own witnesses in response to Smartmatic's deposition notices, two of which won't be made available by ES&S until after the current close of discovery on August 24, 2022.

## III. LEGAL STANDARD

Federal Rule of Civil Procedure 15 provides that "[t]he court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). The Third Circuit has adopted a liberal policy favoring the amendment of pleadings to ensure that "a particular claim will be decided on the merits rather than on technicalities." *Dole v. Arco*, 921 F.2d 484, 486-87 (3d Cir. 1990). Absent

a showing of undue delay, bad faith, or dilatory motives on the part of the moving party, the amendment should be freely granted, unless it is futile or unfairly prejudicial to the non-moving party. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997).

If a party seeks leave to amend after a deadline imposed by the scheduling order, the court should apply Rule 16 of the Federal Rules of Civil Procedure. *WebXchange Inc. v. Dell Inc.*, 2010 WL 256547, at *2 (D. Del. Jan. 20, 2010). Under Rule 16, a schedule may be modified "for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). "'Good cause' exists when the Schedule cannot reasonably be met despite the diligence of the party seeking the extension." *WebXchange*, 2010 WL 256547, at *2. "In contrast to Rule 15(a), the good cause standard under Rule 16(b) hinges on diligence of the movant, and not on prejudice to the non-moving party." *Roquette Freres v. SPI Pharma, Inc.*, 2009 WL 1444835, at *4 (D. Del. May 21, 2009).

**IV.     ARGUMENT**

    **A.     Smartmatic Did Not Unduly Delay In Asserting The Proposed Amendment.**

"Delay alone is not sufficient to justify denial of leave to amend." *Arthur v. Maersk, Inc.*, 434 F.3d 196, 204 (3d Cir. 2006). Instead, the delay must be "undue," meaning it places "an unwarranted burden on the court" or comes after "previous opportunities to amend." *Bjorgung v. Whitetail Resort, LP*, 550 F.3d 263, 266 (3d Cir. 2008). "The question of undue delay requires that [the court] focus on the movant's reasons for not amending sooner." *Cureton v. Nat'l Collegiate Athletic Ass'n*, 252 F.3d 267, 273 (3d Cir. 2001). "Delay may become undue when a movant has had previous opportunities to amend a complaint." *Cureton v. Nat'l Collegiate Athletic Ass'n*, 252 F.3d 267, 273 (3d Cir. 2001)

Here, Smartmatic did not unduly delay in seeking leave to add its improper inventorship defense, because it did not have any previous opportunity to amend. As shown above, there should be no dispute that the evidence upon which the affirmative defense is predicated was not known to Smartmatic until sometime around May 12, 2022, which is after the June 18, 2021 deadline to amend pleadings had passed. (Bifano Affidavit ¶¶ 3-5). The information giving rise to this defense was not in Smartmatic's possession, custody or control until mid-May, and was only discovered as a result of Smartmatic's continuing investigation regarding facts relevant to the issues in this case.

Notably, Smartmatic could have obtained this information sooner if ES&S had produced this information in response to any one of several relevant discovery requests. Indeed, Smartmatic's RFP No. 14 requests "All documents related to the design, development, testing, and operation of any prior art system, product, or apparatus, including, but not limited to, the AutoMARK Voter Assist Terminal and the Model 100 ('M100')." (Ex. H). And RFP No. 36 requests "Documents sufficient to show the design, development, structure, testing, and operation of the following products prior to December 18, 2007: (1) AutoMark, (2) M100 Optical Scanner, (3) iVotronic." (*Id*.). Interrogatory No. 3 ask ES&S to "describe with specificity the circumstance of each disclosure of the claimed invention to any person other than the inventors thereof prior to the filing date of the patent in which it appears." (Ex. I). ES&S, however, did not produce the documents Dr. Golden provided even though some of them were in ES&S possession, custody, or control. (*See* Ex. B (June 28, 2015 email to John Groh of ES&S, Joseph Vanek of AutoMark, and Edward Claffy of Automark recapping the June 2015 in which Dr. Golden, among others, recommended that ES&S improve the AutoMark VAT by having a marked ballot automatically placed in a sealed ballot box); Ex. J (August 2007 email chain in which Dr. Golden discussed with

6

AutoMark's Director of Sales and Certification whether AutoMark was moving forward with a redesign of theAutoMark VAT to add a mechanism that automatically dropped the marked ballot into a secure ballot box). And ES&S did not identify Dr. Golden or anyone else from the June 2005 meeting as persons other than the inventors to whom the claimed invention was disclosed prior to the filing date of the patent. It is only through happenstance that Smartmatic finally obtained the information relevant and responsive to its requests, and it came from a third-party.

On July 18, 2022, more than a month before the close of fact discovery, Smartmatic notified ES&S of its intent to seek leave to amend its answer to add an improper inventorship defense and requested a meet and confer on the issue. (Ex. E). During the interim period, the parties were busy preparing and filing a joint claim construction brief, presenting their *Markman* arguments to the Court, and having a vigorous dispute over whether ES&S could compel the production of LA County's voting machines. (*See*, *e.g*., D.I. 80, D.I. 82, D.I. 83). In addition, Smartmatic had to evaluate the information it received on May 12, determine the best way to proceed, consult with its client regarding the same, amend its initial disclosures to identify Dr. Golden as an individual with relevant information, and prepare the proposed amended answer. (Bifano Affidavit ¶ 6).

Smartmatic did not unduly delay in requesting leave to amend its answer. *See Enzo Life Scis., Inc. v. Digene Corp.*, 270 F. Supp. 2d 484, 489 (D. Del. 2003) (finding no undue delay where motion to amend was filed nearly two months after defendant received relevant information on which amendment was based); *Targus Int'l LLC v. Victorinox Swiss Army, Inc.*, C.A. No. 20-464 (RGA) (D.I. 171 at 5) (finding no undue delay where defendant did not file its motion to amend until "close to a month after [defendant] indicated it planned to amend its pleading"); *Alcoa Inc. v. Alcan Rolled Prod.-Ravenswood LLC*, 2017 WL 5957104, at *3 (D. Del. Dec. 1, 2017) (finding no undue delay where it was the party's "first motion to amend, not its third, and it is not in

response to a motion to dismiss or motion for summary judgment, wherein the moving party is seeking to 'fix' an otherwise deficient or defective claim to avoid dismissal").

### B. Smartmatic's Motion To Amend Is Brought In Good Faith.

"The question of … bad faith, requires that [the court] focus on the plaintiffs' motives for not amending their complaint to assert this claim earlier." *J.E. Mamiye & Sons, Inc. v. Fid. Bank*, 813 F.2d 610, 614 (3d Cir. 1987). Here, as demonstrated above, there is no basis to credibly assert that Smartmatic's Motion is being made in bad faith or for a dilatory purpose. As the record indicates, Smartmatic filed its motion promptly upon the availability of new legal theories of relief based on a new set of facts.

### C. ES&S Will Not Be Unfairly Prejudiced By This Amendment.

To establish unfair prejudice to justify denial of the motion, the non-moving party "must do more than merely claim prejudice; it must show that it was unfairly disadvantaged or deprived of the opportunity to present facts or evidence which it would have offered had the amendments been timely." *Arthur v. Maersk, Inc*., 434 F.3d 196, 206 (3d Cir. 2006) (cleaned up) (quoting *Bechtel v. Robinson*, 886 F.2d 644, 652 (3d Cir. 1989)). Specifically, the court must consider "whether allowing an amendment would result in additional discovery, cost, and preparation to defend against new facts or new theories." *Cureton v. Nat'l Collegiate Athletic Ass'n*, 252 F.3d 267, 273 (3d Cir. 2001).

Here, there is no unfair prejudice to ES&S. ES&S has known that Dr. Golden has information relevant to "invalidity, inventorship, and unenforceability of the patents in suit" since Smartmatic served its Second Amended Initial Disclosures on July 19, 202, which is more than five weeks before the close of fact discovery. ES&S has known the specifics of Smartmatic's proposed inventorship defense since the meet and confer on July 22, 022, which is more than four

8

weeks before the close of fact discovery. (Ex. F). The same day as the meet and confer, Smartmatic produced to ES&S the documents from Dr. Golden on which Smartmatic is relying in good faith to assert the affirmative defense, even though some of those documents are emails sent to employees of ES&S and, therefore, were *already in ES&S's possession, custody, and control*. (Ex. D, *see also* Exs. A-B). Finally, Smartmatic noticed the deposition of Dr. Golden for August 15, 2022, which ES&S has confirmed it will attend. (Ex. K).

ES&S's argument that Smartmatic's additional defense is too late and prejudicial is meritless because *all* of the facts relevant to Smartmatic's defense are either already known to ES&S, or will be after Dr. Golden's deposition on August 15, 2022. ES&S's argument is also contrary to its own conduct in this case. Indeed, since the time that ES&S's counsel rejected Smartmatic's proposed amendment as "too late" and "prejudicial," ES&S has: (1) amended its infringement contentions to include infringement theories not previously disclosed in the four years this case has been pending; (2) produced **254** pages of new documents responsive to Smartmatic's requests served on October 4, 2021; (3) provided supplemental responses to interrogatories asserting for the first time that Smartmatic's invalidity defenses based on products that Smartmatic could not have raised during the IPR proceedings related to the '471 patent are somehow barred by estoppel; and (4) offered to produce five of its own witnesses in response to Smartmatic's deposition notices, two of which won't be made available by ES&S until after the current close of discovery on August 24, 2022 and all of whom will be deposed after Dr. Golden's deposition on August 15.

In view of these facts and circumstances, there is no unfair prejudice to ES&S if the Court were to grant Smartmatic's request for leave to amend. *Roquette Freres v. SPI Pharma, Inc.*, 2009

WL 1444835, at *5 (D. Del. May 21, 2009) (finding no unfair prejudice when nonmovant was aware of the motion before the close of discovery).

### D. Smartmatic's Proposed Affirmative Defense Is Not Futile.

An amendment is futile if it is frivolous, fails to state a claim upon which relief can be granted, or "advances a claim or defense that is legally insufficient on its face." *Koken v. GPC Int'l, Inc.*, 443 F. Supp. 2d 631, 634 (D. Del. 2006). The standard for assessing futility of amendment under Fed. R. Civ. P. 15(a) is the same standard of legal sufficiency applicable under Fed. R. Civ. P. 12(b)(6). *Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000). Specifically, the amended pleading must fail to state a claim upon which relief could be granted even after the district court "tak[es] all pleaded allegations as true and view[s] them in a light most favorable to the plaintiff." *Winer Family Trust v. Queen*, 503 F.3d 319, 331 (3d Cir. 2007); *see also Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 175 (3d Cir. 2010).

Smartmatic seeks leave to add an invalidity defense of improper inventorship under 35 U.S.C. § 102(f). An applicant is not entitled to a patent if "he did not himself invent the subject matter sought to be patented." 35 U.S.C. § 102(f). A patent must accurately name the correct inventors of a claimed invention. *Pannu v. Iolab Corp.*, 155 F.3d 1344, 1349 (Fed. Cir. 1998). A determination of "statutory invalidity due to improper inventorship ... need not be accompanied by the names of the supposed correct inventors." *Belcher Pharm., LLC v. Hospira, Inc.*, 2019 WL 2503159, at *1 n.1 (D. Del. June 5, 2019). "A patent may be invalid simply because it names the wrong inventors." *Id*. "Determining 'inventorship' is nothing more than determining who conceived the subject matter at issue, whether that subject matter is recited in a claim in an application or in a count in an interference." *Sewall v. Walters*, 21 F.3d 411, 415 (Fed. Cir. 1994). "Conception and inventorship are ultimately questions of law …, but they are premised on

10

underlying factual findings." *In re VerHoef*, 888 F.3d 1362, 1365 (Fed. Cir. 2018), as amended (May 7, 2018).

Given these standards, Smartmatic's proposed amendment sufficiently pleads facts that state a plausible defense of improper inventorship under 35 U.S.C. § 102(f) for failing to name all of the inventors. Smartmatic identifies other individuals who discussed how to improve the AutoMark VAT. During this conversation, one or more of those individuals discussed how to improve accessibility of the AutoMark VAT for people with disabilities, including by redesigning the AutoMark VAT so that a marked ballot could be automatically placed in a sealed ballot box without depending on a voter's ability to handle paper. The '471 patent claims a ballot marking device that utilizes that same solution by having an attached ballot box. The device is adapted to mark a ballot and either return the marked ballot to the voter or automatically deposit the marked ballot into a secure ballot box attached to the device. Thus, the proposed affirmative defense is not futile.

### E. Good Cause Exists To Amend The Scheduling Order.

Under Rule 16(b)(4), scheduling orders may be modified upon a finding of "good cause." Fed. R. Civ. P. 16(b)(4). "To demonstrate the good cause necessary to allow for modification of a scheduling order, the moving party must demonstrate that, despite its own diligent efforts, scheduling deadlines cannot be met." *MacQueen v. Union Carbide Corp.*, 2015 WL 167674, at *3 (D. Del. Jan. 8, 2015). "[T]he good cause standard under Rule 16(b) hinges on diligence of the movant, and not on prejudice to the non-moving party." *Roquette Freres*, 2009 WL 1444835, at *4. For the same reasons that Smartmatic should be granted leave to amend under Rule 15, Smartmatic satisfies the good cause standard under Rule 16. *See Enzo Life Scis., Inc. v. Digene Corp.*, 270 F. Supp. 2d 484, 490 (D. Del. 2003) ("Given that the Court has already determined that

11

there was no undue delay or a likelihood of prejudice to Enzo, the Court concludes that Digene has satisfied the "good cause" requirement of Rule 16"). Accordingly, Smartmatic respectfully requests that its Motion to Amend be granted.

## V. CONCLUSION

For the foregoing reasons, Defendant respectfully requests that the Court grant Defendant's motion to amend its answer to add an affirmative defense of improper inventorship under 35 U.S.C. § 102(f).

Dated: August 9, 2022

Larissa S. Bifano
**DLA PIPER LLP (US)**
33 Arch Street, 26th Floor
Boston, MA 02110-1447
Telephone: 617-406-6000
Facsimile: 617-406-6100
larissa.bifano@us.dlapiper.com

Richard Mulloy
**DLA PIPER LLP (US)**
401 B Street, Suite 1700
San Diego, CA 92101-4297
Telephone: 619-699-4787
Facsimile: 619-764-6787
richard.mulloy@us.dlapiper.com

Zachary Loney
**DLA PIPER LLP (US)**
303 Colorado Street, Suite 3000
Austin, TX 78701-4653
Telephone: 512-457-7203
Facsimile:(512-721-2283
zachary.loney@us.dlapiper.com

*/s/ Angela C. Whitesell*
Brian A. Biggs (Bar No. 5591)
Angela C. Whitesell (Bar No. 5547)
**DLA PIPER LLP (US)**
1201 North Market Street, Suite 2100
Wilmington, DE 19801-1147
Telephone: 302.468.5700
Facsimile: 302.394.2341
brian.biggs@us.dlapiper.com
angela.whitesell@us.dlapiper.com

*Attorneys for Defendant Smartmatic USA Corp.*

EAST\194631896.3

12