**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| ELECTION SYSTEMS & SOFTWARE, LLC, | ) | |
| Plaintiff, | ) | |
| v. | ) | C.A. No. 18-01259-RGA |
| SMARTMATIC USA, CORP., | ) | |
| Defendant. | ) | |

**MEMORANDUM IN OPPOSITION TO**
**DEFENDANT'S MOTION FOR LEAVE TO AMEND THE ANSWER**

ROGOWSKI LAW LLC
Patricia Smink Rogowski, Del. Bar ID #2632
501 Silverside Road, Suite 11
Silverside Carr Executive Center
Wilmington, Delaware 19809
Tel: (302) 893-0048
pat@rogowskilaw.com

LEWIS RICE LLP
Robert M. Evans, Jr., Mo. Bar #35613 (*pro hac vice*)
Michael J. Hartley, Mo. Bar #55057 (*pro hac vice*)
Michael H. Durbin, Mo. Bar #73132 (*pro hac vice*)
600 Washington Avenue, Suite 2500
St. Louis, Missouri 63101
Tel: (314) 444-7600
Fax: (314) 612-7869
revans@lewisrice.com
mhartley@lewisrice.com

*Attorneys for Plaintiff*

Dated: August 29, 2022

# TABLE OF CONTENTS


**I. NATURE AND STAGE OF THE PROCEEDINGS** ..... 1

**II. STATEMENT OF FACTS** ..... 1

**A. The '471 Patent is Valid.** ..... 1

**B. Inventorship of the '471 Patent.** ..... 2

**C. Smartmatic is Responsible for Its Delay in Filing the Motion.** ..... 2

**D. ES&S Has Shown Diligence Throughout the Discovery Period While Smartmatic Has Consistently Delayed.** ..... 5

**III. SUMMARY OF ARGUMENT** ..... 6

IV. **ARGUMENT** ..... 6

**A. Rule 16 Applies and There is No Good Cause to Allow Smartmatic's Motion.** ..... 6

1. Smartmatic's Focus on ES&S is Misplaced. ..... 7

2. Dr. Golden and Her Emails are Not in ES&S's Possession/Control, Unknown to ES&S, and are Not Responsive to Smartmatic's Discovery Requests. ..... 7

3. The Parties' Agreed-To Email Discovery Process Could Not have Identified Dr. Golden or Produced Her Emails. ..... 8

**B. No Good Cause Exists to Amend the Scheduling Order.** ..... 9

1. Smartmatic Was Not Diligent. ..... 10

2. Smartmatic relies upon inapposite case law. ..... 11

**C. Smartmatic's Amendment should also be denied under Rule 15.** ..... 13

1. Smartmatic's Motion is Futile. ..... 13

(a) Law Regarding Futility ..... 13

(b) Law Regarding Inventorship ..... 14

(c) Smartmatic's Belated Inventorship Affirmative Defense Fails to State a Claim ..... 14

2. Smartmatic's Delay was Undue. ..... 16

3. ES&S, as well as the Court, Will be Prejudiced By a Grant of Smartmatic's Motion. .................................................................... 16

**V. CONCLUSION** ........................................................................................................ 17

# TABLE OF AUTHORITIES

**Cases**


*Alcoa Inc. v. Alcan Rolled Prod.-Ravenswood LLC*, No. CV 06-451-JFB-SRF, 2017 WL 5957104 (D. Del. Dec. 1, 2017) ....................11

*Arden Grp., Inc. v. Hoffman*, No. CIV.A. 09-3193, 2012 WL 6209894 (E.D. Pa. Dec. 13, 2012)....................13

*Asahi Glass Co. v. Guardian Indus. Corp.*, 276 F.R.D. 417 (D. Del. 2011)....................16, 17

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ....................13, 14

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)....................13, 14

*Birch v. Polaris Indus., Inc.*, 812 F.3d 1238 (10th Cir. 2015)....................11

*Bridgeforth v. Walgreens Pharmacy*, No. CIV.A. 10-755-GMS, 2012 WL 933150 (D. Del. Mar. 20, 2012) ....................13

*Cordance Corp. v. Amazon.com, Inc.*, 255 F.R.D. 366, 371 (D. Del. 2009)....................16

*Dana-Farber Cancer Inst., Inc. v. Ono Pharm. Co.*, 964 F.3d 1365 (Fed. Cir. 2020), *cert. denied*, 141 S. Ct. 2691 (2021) ....................14

*Dasso Int'l, Inc. v. MOSO N. Am., Inc.*, No. CV 17-1574-RGA, 2020 WL 6286768 (D. Del. Oct. 27, 2020 ....................13

*Duncan Parking Techs., Inc. v. IPS Grp., Inc.*, 914 F.3d 1347 (Fed. Cir. 2019) ....................14

*Enzo Life Scis., Inc. v. Digene Corp.*, 270 F. Supp. 2d 484 (D. Del. 2003) ....................11, 12

*Fina Oil & Chem. Co. v. Ewen*, 123 F.3d 1466 (Fed. Cir. 1997)....................2, 14, 15

*Forgie v. Oil-Well Supply Co.*, 58 F. 871 (3d Cir. 1893) ....................15

*Garrett Corp. v. United States*, 422 F.2d 874 (Ct. Cl. 1970) ....................15

*ICU Medical, Inc. v. Ryman Techs., Inc.*, 674 F. Supp. 2d 574 (D. Del. 2009) ....................6

*Jones v. Inv. Retrievers, LLC*, No. 3:10-CV-1714, 2011 WL 3035279 (M.D. Pa. July 25, 2011)....................13

*Lipocine Inc. v. Clarus Therapeutics, Inc.*, 2020 WL 4794576 (D. Del. Aug. 18, 2020) ....................12

*Lloyd-Jones v. Connolly*, No. CV 20-912 (EP) (LDW), 2022 WL 3572837 (D.N.J. Aug. 19, 2022) ....9, 10

*Lorenz v. CSX Corp.*, 1 F.3d 1406 (3d Cir. 1993)....................11

*Matlack, Inc. v. Hupp Corp.*, 57 F.R.D. 151 (E.D. Pa. 1972) ....................16

*Pfizer Inc. v. Sandoz Inc.*, No. CV 12-654-GMS/MPT, 2013 WL 5934635 (D. Del. Nov. 4, 2013)....10, 12

*Premier Comp Solutions v. UPMC*, 970 F.3d 316 (3d Cir. 2020) .....................................................6, 7, 11

*RetailMeNot, Inc. v. Honey Sci. Corp.*, No. CV 18-937-CFC-MPT, 2019 WL 2537565 (D. Del. June 20, 2019), *report and recommendation adopted*, No. CV 18-937-CFC-MPT, 2019 WL 6615321 (D. Del. Dec. 5, 2019) ..........................................................................................................17

*Roquette Freres v. SPI Pharma, Inc.*, 2009 WL 1444835 (D. Del. May 21, 2009).................................6, 7

*Targus Int'l LLC v. Victorinox Swiss Army, Inc.*, No. 20-CV-464-RGA, 2021 WL 2291978 (D. Del. June 4, 2021) ..........................................................................................................11, 12

**Rules**

FED. R. CIV. P. 16(b)(4) ..........................................................................................................7

# I. NATURE AND STAGE OF THE PROCEEDINGS

This case has been pending for over four years and fact discovery closes in four days. In its Complaint filed on August 17, 2018 (D.I. 1), Plaintiff Election Systems and Software, LLC ("ES&S") asserted infringement of U.S. Patent No. 8,096,471 (the "'471 patent")[1]. Defendant Smartmatic USA, Corp. ("Smartmatic") responded by attacking the validity of the '471 patent through an IPR Petition, but the PTAB confirmed the patentability of the asserted claims of the '471 Patent in its Final Written Decision. (D.I. 49 at 2). After the PTAB issues a 10-page order denying Smartmatic's motion to reconsider the Final Written Decision, Smartmatic filed an appeal to the Federal Circuit that Smartmatic later ***voluntarily*** withdrew. Thus, the prior art estoppel that arises after losing such an IPR is final, unassailable, and binding against Smartmatic.

Finding itself with little defense, Smartmatic now asks the Court for leave to add a new, futile, and untimely inventorship defense far too long after the deadline for amending the pleadings has passed. As explained more fully below, the proposed defense is futile as it does not even meet the basic requirements for stating a joint inventorship claim. Nor can Smartmatic show good cause for granting its untimely Motion for Leave to Amend the Answer (the "Motion", D.I. 123). Granting Smartmatic's Motion would prejudice ES&S because trial is rapidly approaching, and the remainder of the Court's schedule is too full to allow for the reopening of discovery. Contrary to Smartmatic's protestations, any delay in asserting this futile and untimely inventorship defense is attributable to delay tactics utilized by Smartmatic throughout the discovery period.

Accordingly, ES&S respectfully submits that Smartmatic's Motion should be denied under Rules 15 and 16 of the Federal Rules of Civil Procedure and the futility doctrine.

# II. STATEMENT OF FACTS

## A. The '471 Patent is Valid.

The patentability of each of the Asserted Claims of the '471 patent was confirmed by the PTAB during an *inter partes* review proceeding that was filed and prosecuted by Smartmatic. Specifically, the PTAB held in

[1] ES&S also asserted U.S. Patent No. 7,753,273 in Count II of the Complaint, but dismissed Count II with prejudice following the Court's claim construction Order. (D.I. 119).

its Final Written Decision that original claim 16 and new claims 21–29 were each patentable over Smartmatic's challenges. (D.I. 49 at 2). The PTAB also denied Smartmatic's subsequent Motion for Reconsideration of the Final Written Decision, further demonstrating the validity of the Asserted Claims. *Id.* Smartmatic thereafter appealed to the U.S. Court of Appeals for the Federal Circuit; however, Smartmatic later voluntarily dismissed the appeal. The statutory prior art estoppel that arises from this case history is thus final and not subject to any further appeal or challenge.

### B. Inventorship of the '471 Patent.

The '471 patent lists Eugene Cummings (deceased)[2] and Sean Brockhouse (collectively the "Named Inventors") as the inventors of the subject matter that is claimed therein. The priority date for the '471 patent is December 18, 2007. The disclosure of the '471 patent has been open to the public since its publication on July 9, 2009 in U.S. Patent Application Serial No. 12/337,266. The '471 patent issued on January 17, 2012. At that time, the '471 patent was assigned to ES&S AutoMark, LLC.

No other person conceived of the claimed inventions of the '471 patent with the Named Inventors. No facts are alleged in Smartmatic's proposed Amended Answer, or in the related exhibits (D.I. 125) to Smartmatic's Motion (D.I. 123), that amount to any discussion between the Named Inventors and anyone else. No asserted facts support that the Named Inventors conceived of the inventions of the '471 patent with anyone else. The inventorship provided on the face of a patent is presumed to be correct absent clear and convincing evidence to the contrary. *Fina Oil & Chem. Co. v. Ewen*, 123 F.3d 1466, 1472 (Fed. Cir. 1997).

### C. Smartmatic is Responsible for Its Delay in Filing the Motion.

ES&S is not responsible for any of the alleged delays that Smartmatic has attributed to ES&S. *See* Opening Brief (D.I. 124) at 4. In fact, as detailed in the paragraphs that follows, Smartmatic has been the principal source of delay throughout this matter. Three of the four issues complained of by Smartmatic were the result of Smartmatic's delay. And Smartmatic's remaining complaint concerns six new pages produced to provide a full copy of the file history for the '471 patent, which pages were unintentionally omitted from earlier-produced

[2] Mr. Cummings was also a registered a patent attorney.

copies. As discussed below in Section IV(C)(3), allowing Smartmatic to amend its Answer to include entirely new claims fourteen months after the deadline for doing so and on the eve of the end of discovery would be prejudicial.

(1) Smartmatic asserts: ES&S "amended its infringement contentions to include infringement theories not previously disclosed in the four years this case has been pending[.]" Opening Brief (D.I. 124) at 4. This argument lacks merit. ES&S was diligent in supplementing its infringement contentions. As discussed in the following Section II(D), Smartmatic egregiously delayed in providing a sample Accused Product until June 28, 2022, and even that sample was non-functional because it was provided without any software. This was within two months of the end of fact discovery and about a month before ES&S supplemented its infringement contentions. Further, Smartmatic failed to provide accurate flow diagrams for the operation of the Accused Products until the eve of the deposition of its corporate witness on technical matters, James Long. And ES&S was prevented from inspecting a functional Accused Product until just three days ago on August 26, 2022. It is not credible that Smartmatic would insinuate that ES&S was in error in any way, as Smartmatic's delay in this matter has been extreme and of its own making. Further, the Amended Infringement Contentions bear no relevance to the Smartmatic's Motion or Purported Inventorship Defense. (D.I. 124).

(2) Smartmatic asserts: ES&S "provided supplemental responses to interrogatories asserting for the first time that Smartmatic's invalidity defenses based on products that Smartmatic could not have raised during the IPR proceedings related to the '471 patent are somehow barred by estoppel[.]" Opening Brief (D.I. 124) at 4. This is misleading. Smartmatic served Interrogatory No. 18 on ***July 25, 2022***:

> <u>Interrogatory No. 18</u>: Identify and describe all factual and legal bases supporting your contentions that the doctrine of IPR estoppel applies to any identified prior art reference.

ES&S's Response to this Interrogatory was not due until August 24, 2022. Notwithstanding, ES&S provided the requested information on August 5, 2022, nineteen days before it was due. Smartmatic should not be heard to complain that ES&S provided this information earlier than was required. Regardless, the IPR estoppel applies as a rule of law apart from any contentions, and there is no fact discovery to be taken by either party on this issue.

Rather, it is an expert opinion issue. Ultimately, the IPR estoppel has nothing to do with inventorship and is, thus, irrelevant to the Smartmatic's Motion.

(3) Smartmatic asserts: ES&S "offered to produce five of its own witnesses in response to Smartmatic's deposition notices, two of which won't be made available by ES&S until after the current close of discovery on August 24, 2022." Opening Brief (D.I. 124) at 4. Any issues with the timing of ES&S's witnesses' availability, and the number of witnesses required, is due to Smartmatic's own delay in serving individual deposition notices, its corporate deposition notice, and the large number of topics included in that corporate deposition notice. Smartmatic waited until July 21, 2022 (just over a month before the close of fact discovery) to serve its individual and corporate deposition notices on ES&S. (D.I. 109). ES&S worked with Smartmatic, and continues[3] to work with Smartmatic, to ensure that these depositions occur as promptly as possible given witness availability. Further, that four designees were provided in response to the corporate deposition notice is a reflection of the 48 separate deposition topics set forth therein and not of delay by ES&S.

(4) Smartmatic asserts: ES&S "produced 254 pages of new documents responsive to Smartmatic's requests served on October 4, 2021[.]" Opening Brief (D.I. 124) at 4. This is untrue. This production comprised two documents -- a certified copy of the '471 patent and a complete version of the file history for the '471 patent. Only six pages were new: a certification for the '471 patent, and five pages of non-patent literature from the file history that were inadvertently omitted from the copy of the file history previously produced by ES&S. This six-page omission was corrected as soon as it was noticed.

Accordingly, all of the above issues[4] are either a result of Smartmatic's dilatory conduct or, in reality, Smartmatic complaining about the production of six pages of information.

---

[3] On August 23, 2022, one day before the original close of fact discovery, Smartmatic filed an unannounced Notice of Deposition to take the deposition of Tom Burt on September 1, 2022 (the last day of the extended fact discovery period). Tom Burt is CEO of ES&S. Although Mr. Burt is out of town on September 1, 2022, ES&S has agreed to work with Smartmatic to find a later date when Smartmatic can depose him. (D.I. 134).

[4] Apart from issues (1) to (4) noted in Section II(C), ES&S designated named-inventor Sean Brockhouse to respond to categories of Smartmatic's corporate deposition notice that concerned the invention, the '471 patent and related topics. Smartmatic did not serve an individual notice for the deposition of Mr. Brockhouse until *after* ES&S designated Mr. Brockhouse to testify as a representative of ES&S under Smartmatic's prior corporate deposition notice. Mr. Brockhouse is currently employed by a third party, and as a result, records he kept at his

### D. ES&S Has Shown Diligence Throughout the Discovery Period While Smartmatic Has Consistently Delayed.

Smartmatic has provided major sources of delay during discovery in this matter, especially in the areas of providing samples of the Accused Products for ES&S's evaluation of infringement and for email discovery.

Regarding sample Accused Products, ES&S served its first set of Requests for Production on May 10, 2019. (D.I. 29); Ex. A. In these Requests, ES&S requested physical samples of the Accused Products. Ex. A at Requests 61, 62. Smartmatic still has not produced a functioning Accused Product in this litigation. Rather, Smartmatic only recently produced a non-functioning version of the Accused Product containing no software on June 28, 2022. Ex. B at 2. This was after many months during which ES&S repeatedly requested that Smartmatic provide the Accused Produces in response to ES&S's discovery requests. *See, e.g.*, Ex. C at 3. Such delays in producing the most critical piece of discovery for ES&S's infringement claims – the Accused Products themselves – was extremely prejudicial in this matter. Such delay required considerable efforts by ES&S to quickly evaluate the non-functioning Accused Products to show infringement of the '471 patent claims. Within about one month of receipt of same, ES&S: (1) provided updated claim charts and infringement contentions using photographs taken of the non-functioning Accused Product; and (2) substantially and unilaterally narrowed the claims and issues in this matter. (D.I. 125-6 at 2).

Regarding email discovery, ES&S requested email discovery early in this matter, but the parties did not begin debating the scope of email discovery until around May 2021. Ex. C at 5. At this time, ES&S began pressing Smartmatic to agree to an email discovery process. *Id*. Smartmatic rebuffed ES&S's efforts, stating that "it is premature to exchange information regarding ESI custodians or search terms when the parties have not yet met to discuss such issues" and that "Smartmatic . . . ***did not think email discovery would be necessary***, but if it is, such discovery could and should be limited to a narrow set of custodians and issues." Ex. C at 2; Ex. D at 2–

---

house were not searched as part of ES&S's original document production (as ES&S did not know such records existed). When ES&S learned of such records in the past two weeks and took possession of them about one week ago, ES&S promptly reviewed and produced 3,370 pages of responsive documents to Smartmatic. In cooperation with Smartmatic, ES&S agreed to move the deposition of Mr. Brockhouse from August 30, 2022 until September 2, 2022 to give Smartmatic time to review these additional documents.

3 (emphasis added). Smartmatic then delayed in agreeing to exchange email discovery until finally producing emails on July 1, 2022, a week after the June 24, 2022 deadline for substantial production of fact discovery. Ex. E. (D.I. 56). These two months of delay are entirely attributable to Smartmatic.

In any case, Smartmatic would only agree to a significantly narrowed process for exchanging email discovery. Specifically, Smartmatic's demanded process contemplated that a requesting party would provide a responding party with topics for email discovery, and the responding party would provide the requesting party a list of custodians and relevant search terms. Ex. D at 3. The parties then negotiated these search terms. *See generally* Ex. F. After many requests for Smartmatic to produce the emails captured by the above process, Smartmatic finally agreed to a mutual exchange of email discovery, pursuant to the Parties' agreement on email discovery, on July 1, 2022. Ex. E.

## III. SUMMARY OF ARGUMENT

Regardless of whether Rule 16 or Rule 15 is considered, Smartmatic should not be allowed to amend its Answer at this late date. Smartmatic delayed too long, sitting on its purported inventorship evidence without moving to amend the Answer. The case has progressed too far, trial is too close, and the schedule is too tight with other phases of this case to permit an entirely new defense and the associated burdens of discovery thereon. Timing aside, Smartmatic's new claim is also too weak and futile to consume the Court's and ES&S's time and resources. All pertinent factors weigh in favor of denying Smartmatic's Motion.

## IV. ARGUMENT

### A. Rule 16 Applies and There is No Good Cause to Allow Smartmatic's Motion.

A request to amend pleadings submitted after the court's deadline to amend must first meet the "good cause" standard of Rule 16(b)(4). *Premier Comp Solutions v. UPMC*, 970 F.3d 316, 319 (3d Cir. 2020). Rule 16(b)(4) provides: "A schedule may be modified only for good cause and with the judge's consent." FED. R. CIV. P. 16(b)(4). "'Good cause' exists when the [s]chedule cannot reasonably be met despite the diligence of the party seeking the extension." *ICU Medical, Inc. v. Ryman Techs., Inc.*, 674 F. Supp. 2d 574, 577 (D. Del. 2009). Unlike Rule 15(a), the Rule 16(b) standard focuses on the "diligence of the movant, and not on prejudice to the non-moving party." *Roquette Freres v. SPI Pharma, Inc.*, 2009 WL 1444835, at *4 (D. Del. May 21, 2009). The

Third Circuit recently clarified that the analysis under Rule 16(b)(4) ***logically precedes*** the Rule 15(a)(2) analysis. *Premier Comp*, 970 F.3d at 319 ("A party must meet [Rule 16(b)'s] standard before a district court considers whether the party also meets Rule 15(a)'s more liberal standard.").

Accordingly, Smartmatic must first address the Rule 16 standard here because its Motion was filed ***fourteen months*** after this Court's deadline to amend the pleadings. Smartmatic's Motion does not even directly address the good cause requirement of Rule 16 and, instead, relies primarily upon a discussion of undue delay. Opening Brief (D.I. 124) at 11. This alone is grounds for denying Smartmatic's Motion. *See Premier Comp Solutions, LLC v. UPMC*, 970 F.3d 316 (3d Cir. 2020) (District court not required to consider movant's attempt to address "good cause" standard for modifying scheduling order where movant relied solely on Rule 15 in its motion and only addressed "good cause" standard in reply.).

To the extent that the Court finds Smartmatic's discussion of undue delay for Rule 15 relevant to good cause for Rule 16, the Motion should still be denied. Smartmatic fails to show good cause because it has needlessly delayed, and this case is out of time.

#### 1. Smartmatic's Focus on ES&S is Misplaced.

Smartmatic proffers two general justifications for its inexcusable delay in filing its Motion: (1) ES&S's purported discovery deficiencies (there were none) and (2) commonplace or typical litigation activities. For the former, Smartmatic's focus on ES&S is misplaced. Rule 16 only considers "diligence of the movant[.]" *Roquette Freres*, 2009 WL 1444835 at *4. Smartmatic's reliance on ES&S's actions in an effort to explain away ***Smartmatic's lack of diligence*** thus fails.

#### 2. Dr. Golden and Her Emails are Not in ES&S's Possession/Control, Unknown to ES&S, and are Not Responsive to Smartmatic's Discovery Requests.

Smartmatic has aggressively delayed discovery during this matter. Smartmatic argues that ES&S is responsible for Smartmatic's delay because ES&S did not provide discovery regarding Dr. Golden in response to two of Smartmatic's Requests for Production (Nos. 14 and 36) and one of Smartmatic's Interrogatories (No. 3). Opening Brief (D.I. 124) at 6. This is not so.

As an initial matter, ES&S objected to these Requests for Production as being overly broad, unduly burdensome, and not proportional to the needs of the case. Ex. G at 8, 17, 18. Smartmatic did not respond to ES&S's objections. Thus, Smartmatic has acquiesced to ES&S's objections, and ES&S was not required to conduct a search back to 2005. This is not, however, a reason why ES&S did not produce any material related to Dr. Golden.

The Golden emails referred to in Smartmatic's brief (Opening Brief Exhibits A, B, D, and J; D.I. 125-1, 125-2, 125-4, and 125-10) are not responsive to the Requests listed by Smartmatic, Nos. 14 and 36. These two requests ask for documents related to design, development, testing, and operation. The Golden emails in no way relate to the design, development, testing, or operation of the AutoMark device. In any event, ES&S did not and does not have possession, custody, or control of any non-email discovery responsive to Smartmatic's Request for Production Nos. 14 and 36. ES&S has produced all relevant, non-privileged documents responsive to those Requests.

Smartmatic also claims that ES&S failed to identify Dr. Golden, or any other individual, at the June 2005 Meeting discussed in Smartmatic's Opening Brief. Opening Brief (D.I. 124) at 7. ES&S is unaware of any relevance of the June 2005 Meeting to the inventorship or validity of the '471 patent. Moreover, as discussed in Section IV(C)(1) below, Smartmatic's contentions are futile, and accordingly, there was never a need to identify any such individual, even if the meeting from 2005 could be recalled today, which it was not.

#### 3. The Parties' Agreed-To Email Discovery Process Could Not have Identified Dr. Golden or Produced Her Emails.

For email discovery, Smartmatic is directly to blame for any delay. As detailed above in Sections II(D) and IV(C)(1), ES&S requested email discovery early in this matter. But Smartmatic delayed. As ES&S attempted to negotiate email discovery, Smartmatic refused, stating that "it is premature to exchange information regarding ESI custodians or search terms when the parties have not yet met to discuss such issues" and that "Smartmatic . . . ***did not think email discovery would be necessary***, but if it is, such discovery could and should be limited to a narrow set of custodians and issues." Ex. C at 2; Ex. D at 2–3 (emphasis added). Smartmatic then delayed the process of agreeing to exchange email discovery until finally producing emails on July 1, 2022, after the June 24,

2022 deadline for substantial production of emails. Ex. E. (D.I. 56). These months of delay are attributable to Smartmatic.

Equally important, Smartmatic selected an email discovery process that could not have discovered any email from Dr. Golden during the relevant time period. As discussed above, Smartmatic demanded a process that restricted email discovery to limited custodians and search terms. Smartmatic's final search terms, after much broadening by Smartmatic, were limited to emails from the years 2018 and 2019 that were possessed by selected custodians and included any of these keywords: "Los Angeles County" or "LA County" or LAC or VSAP. Ex. F at 6. Smartmatic's complaints about ES&S's email productions are thus without merit as the Golden emails: (1) do not contain any of Smartmatic's keywords; and (2) were sent more than ten years before the 2018 cut-off imposed by Smartmatic.

ES&S also met its full discovery obligations with respect to Smartmatic's Interrogatory No. 3, which asks for ES&S to describe any disclosure of the claimed invention. The Golden emails do not include any such disclosure. *See, e.g.*, Section IV(A), *infra*. The purported exchanges in the Golden emails would have occurred over fifteen years ago. The Golden emails are not alleged to have reached any current member of ES&S's management team. Nor has Smartmatic alleged that ES&S had any information relevant to Dr. Golden outside of its email records. And again, the email search process conducted in this matter would not and did not cause ES&S to search its email records for relevant information from Dr. Golden from 15 years ago. Thus, ES&S had no obligation to describe anything outside of its knowledge in response to Interrogatory No. 3.

Accordingly, Smartmatic's statements that ES&S could have provided the discovery received from Dr. Golden or regarding interactions with Dr. Golden are demonstrably false and irrelevant. Smartmatic is the principal reason for its delay in seeking discovery. Smartmatic should not be heard to complain about alleged ***problems resulting from a procedure Smartmatic demanded during the fact discovery period***.

### B. No Good Cause Exists to Amend the Scheduling Order.

The "good cause" inquiry under Rule 16(b)(4) "focuses on the moving party's burden to show due diligence." *Lloyd-Jones v. Connolly*, No. CV 20-912 (EP) (LDW), 2022 WL 3572837, at *2 (D.N.J. Aug. 19, 2022). "Due diligence, in turn, depends on whether the movant possessed, or through the exercise of reasonable

diligence should have possessed, the knowledge necessary to file the motion to amend before the deadline expired." *Lloyd-Jones v. Connolly*, No. CV 20-912 (EP) (LDW), 2022 WL 3572837, at *2 (D.N.J. Aug. 19, 2022). "Diligence requires a party to timely act on information that it has in its possession." *Lloyd-Jones v. Connolly*, No. CV 20-912 (EP) (LDW), 2022 WL 3572837, at *2 (D.N.J. Aug. 19, 2022) .

### 1. Smartmatic Was Not Diligent.

Smartmatic cannot show good cause because it was not diligent. Smartmatic was not diligent because: (1) Smartmatic did not seek discovery from Dr. Diane Golden until thirteen months after the deadline for amending the pleadings; (2) Smartmatic did not file its Motion until fourteen months after the deadline for amending the pleadings; and (3) Smartmatic did not file its Motion until about three months after it possessed the subject information from Dr. Golden. Further, to the extent that Smartmatic complains of delay on behalf of ES&S, such delay is attributable to Smartmatic, as discussed above in Sections II(C) and II(D).

Smartmatic states merely the following regarding diligence: (1) Smartmatic informed ES&S of its intent to seek leave to file this Motion approximately one month before the close of discovery; (2) Smartmatic was too busy with the *Markman* hearing in this matter to perform its diligence; (3) the parties were involved in an unrelated discovery dispute over Smartmatic withholding production of the Accused Products (which products ES&S was finally able to inspect in working fashion just three days before the filing of this Response); and (4) Smartmatic purportedly needed to consider the import of the belated discovery from Dr. Golden internally before it could consider seeking leave to amend its pleadings. Opening Brief (D.I. 124) at 7. Such commonplace and typical litigation activities fail to excuse Smartmatic's lack of the diligence.

Critically, the 3rd Circuit has found a motion lacks good cause where the movant delayed giving notice to the non-moving party by less than three months and delayed filing a motion to amend the pleadings by less than four months. *Pfizer Inc. v. Sandoz Inc.*, No. CV 12-654-GMS/MPT, 2013 WL 5934635, at *1 (D. Del. Nov. 4, 2013). As the *Pfizer* court noted, "at some point, the [movant's] delay becomes undue." *Id.* at *4. In *Pfizer*, the movant attempted to explain the above periods of delay by citing to typical litigation efforts, including conducting "depositions, consultation with experts and review of the prosecution history" of the patent-at-issue. *Id.* at *4. The Court held that such typical litigation activities were insufficient to justify this length of delay and denied the

motion to amend. *See also Birch v. Polaris Indus., Inc.*, 812 F.3d 1238, 1248 (10th Cir. 2015) (finding no good cause where movant delayed filing their motion to amend for four months and eleven months after the deadline to amend).

### 2. Smartmatic relies upon inapposite case law.

Smartmatic's reliance on *Alcoa,*[5] *Enzo Life*[6] and *Targus*[7] is misplaced. First, *Alcoa* and *Enzo* were decided before the 3rd Circuit made clear in *Premier* that Rule 16 must be considered before Rule 15. *Premier*, 970 F.3d at 319 (decided in 2020); *Alcoa*, No. CV 06-451-JFB-SRF, 2017 WL 5957104 at *1 (decided in 2017); *Enzo*, 270 F. Supp. 2d at 484 (decided in 2003). Because these cases do not directly consider the diligence of the moving party, they have little, if any, relevance here.

The *Alcoa* case includes an analysis of Rule 15, not Rule 16, and Smartmatic specifically quotes to a portion of *Alcoa* discussing that the amendment-at-issue there was the moving party's first motion to amend, where serial amendments are only relevant to Rule 15. *See, e.g.*, *Lorenz v. CSX Corp.*, 1 F.3d 1406, 1414 (3d Cir. 1993) ("repeated failures to cure the deficiency by amendments previously allowed" is a factor to be considered when applying Rule 15). Such considerations only apply to Rule 15's less stringent standard, whereas Rule 16 is at issue here. Further, the movant in *Alcoa* filed its motion on time and far from the end of discovery in that matter, and the *Alcoa* court did not even consider the delay of the moving party in filing its motion to amend. No. CV 06-451-JFB-SRF, 2017 WL 5957104, at *3. *Alcoa* is therefore inapposite.

*Enzo* is also readily distinguishable in that: (1) the non-moving party in *Enzo* delayed discovery until after the deadline for amending pleadings; (2) the non-moving party possessed all discovery needed to address the moving party's proposed new claims well before the time of the motion to amend; and (3) the moving party had already supplemented its discovery responses to address the new claims. *Enzo*, 270 F. Supp. 2d at 489. ES&S,

---

[5] *Alcoa Inc. v. Alcan Rolled Prod.-Ravenswood LLC*, No. CV 06-451-JFB-SRF, 2017 WL 5957104, at *2 (D. Del. Dec. 1, 2017).

[6] *Enzo Life Scis., Inc. v. Digene Corp.*, 270 F. Supp. 2d 484 (D. Del. 2003).

[7] *Targus Int'l LLC v. Victorinox Swiss Army, Inc.*, No. 20-CV-464-RGA, 2021 WL 2291978, at *1 (D. Del. June 4, 2021).

on the other hand, was not in possession of the discovery used by Smartmatic during this litigation, as discussed above in Section IV(A)(2). And ES&S would need to conduct further discovery if the Motion is granted. Further, *Enzo* is distinguishable in that the claim being added was an inequitable conduct claim, a claim that the courts have found to be particularly applicable for adding late in a case. *See, e.g.*, *Lipocine Inc. v. Clarus Therapeutics, Inc.*, 2020 WL 4794576 at *3 (D. Del. Aug. 18, 2020). Such is not apposite here.

Similar to *Enzo*, *Targus* is distinguishable because the delays-at-issue were due to the non-moving party failing to fully meet its discovery obligations, and due to time needed for the moving party to confirm the discovery itself with depositions to meet its heightened-pleading-standard for inequitable conduct charges once that discovery was acquired. *Targus*, No. 20-CV-464-RGA, 2021 WL 2291978, at *4. This is not the case here, where ***Smartmatic*** is responsible for the discovery delays by refusing to participate in or delaying email and other discovery. Unlike the non-moving party in *Targus*, the Golden emails were from over fifteen years ago, and such emails were not responsive to the Parties' agree-to email discovery process.

Furthermore, even accepting Smartmatic's representation that it did not consider an inventorship defense until mid-May of 2022, Smartmatic waited ***over two months*** to provide ES&S with any notice and ***over three months*** to file its Motion. This delay, in the face of the Motion being filed ***approximately fourteen months*** after the deadline to amend the pleadings, is fatal to Smartmatic's position. As explained above in Sections II(C) and II(D), ES&S is not responsible for any of Smartmatic's delay. This leaves typical patent litigation issues (evaluating the discovery/issues, a *Markman* hearing, and a discovery dispute) as Smartmatic's only explanation for its three-month delay in filing its Amended Answer, and for the fourteen-month delay since the deadline for doing so passed. Such commonplace issues that are present in every litigation cannot, as explained in *Pfizer*, justify Smartmatic's long delay in moving to amend its Answer. *Pfizer Inc.*, No. CV 12-654-GMS/MPT, 2013 WL 5934635, at *4. Smartmatic's proposed Amended Answer itself required little work other than a review of the few pages of discovery provided by Dr. Golden. Smartmatic was not diligent and, therefore, there is no good cause for the amendment. Accordingly, the Count should deny Smartmatic's Motion.

### C. Smartmatic's Amendment should also be denied under Rule 15.

Rule 15(a)'s standard is well-established. "The Third Circuit has construed Rule 15 liberally, instructing that absent undue or substantial prejudice, an amendment should be allowed under Rule 15(a) unless denial can be grounded in bad faith or dilatory motive, truly undue or unexplained delay, repeated failure to cure deficiency by amendments previously allowed or futility of amendment." *Dasso Int'l, Inc. v. MOSO N. Am., Inc.*, No. CV 17-1574-RGA, 2020 WL 6286768, at *1 (D. Del. Oct. 27, 2020) (internal quotation and edit marks omitted) (citing *Long v. Wilson*, 393 F.3d 390, 400 (3d Cir. 2004)). Here, several of these factors apply as the proposed amendment: (1) is futile, as the proposed amendment fails to state a claim for improper inventorship; (2) would cause an undue delay in bringing this case to trial; and (3) would unduly prejudice ES&S.

#### 1. Smartmatic's Motion is Futile.

#### *(a) Law Regarding Futility*

"An amendment is considered futile if it advances a claim or defense that is legally insufficient on its face—that is, it would not survive a motion to dismiss." *Arden Grp., Inc. v. Hoffman*, No. CIV.A. 09-3193, 2012 WL 6209894, at *2 (E.D. Pa. Dec. 13, 2012) (internal quotation marks omitted). "Futility means that the complaint, as amended, would fail to state a claim upon which relief could be granted." *Jones v. Inv. Retrievers, LLC*, No. 3:10-CV-1714, 2011 WL 3035279, at *1 (M.D. Pa. July 25, 2011) (internal quotation marks omitted). "In assessing futility, the District Court applies the same standard of legal sufficiency as applies under Rule 12(b)(6)." *Id*.

To survive a motion to dismiss under Rule 12(b)(6), a pleading "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility" when the claimant "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 678 (citing *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Bridgeforth v. Walgreens Pharmacy*, No. CIV.A. 10-755-GMS, 2012 WL 933150, at *1 (D. Del. Mar. 20, 2012) (citing *Iqbal*, 556 U.S. at 678). While the Court must assume the proposed Amended

Answer's factual allegations are true, it is "'not bound to accept as true a legal conclusion couched as a factual allegation.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

#### *(b) Law Regarding Inventorship*

"Inventorship is a question of law based on underlying findings of fact, . . . which [federal courts] review for substantial evidence." *Duncan Parking Techs., Inc. v. IPS Grp., Inc.*, 914 F.3d 1347, 1357 (Fed. Cir. 2019) (internal citations omitted). There is a presumption that the inventors named on an issued patent are correct, so misjoinder of inventors must be proven by clear and convincing evidence. *Fina Oil & Chem. Co. v. Ewen*, 123 F.3d 1466, 1472 (Fed. Cir. 1997). Such evidence must be corroborated by a source other than the supposed unnamed inventor.

Joint inventorship is "the product of a collaboration between two or more persons working together to solve the problem addressed." *Id*. at 1473; *see also, e.g., Dana-Farber Cancer Inst., Inc. v. Ono Pharm. Co.*, 964 F.3d 1365, 1371 (Fed. Cir. 2020), *cert. denied*, 141 S. Ct. 2691 (2021). "To be a joint inventor, one must: (1) contribute in some significant manner to the conception or reduction to practice of the invention, (2) make a contribution to the claimed invention that is not insignificant in quality, when that contribution is measured against the dimension of the full invention, and (3) do more than merely explain to the real inventors well-known concepts and/or the current state of the art." *Duncan Parking*, 914 F.3d at 1357–58.

#### *(c) Smartmatic's Belated Inventorship Affirmative Defense Fails to State a Claim*

The proposed Amended Answer sets forth a proposed "Fourteenth Affirmative Defense (Improper Inventorship)" comprising Paragraphs 14 to 26. Paragraphs 23 and 24 allege that "ES&S and AutoMark had a conversation with the Unnamed Inventors" that included a suggestion for "a redesign of the AutoMark VAT so that a marked ballot could be automatically placed in a sealed ballot box without depending on a voter's ability to handle paper." (D.I. 124 at 19–20). This conversation was purported to take place over two years before the December 18, 2007 priority date for the '471 patent. This is the extent of Smartmatic's inventorship claim.

Fatal to Smartmatic's position, none of the paragraphs in the proposed Amended Answer assert that any third party collaborated on the redesign of any voting equipment with either of the two Named Inventors, Gene

Cummings[8] or Sean Brockhouse. Such collaboration is required for there to be an additional joint inventor. The failure to plead such collaboration is fatal. *Garrett Corp. v. United States*, 422 F.2d 874, 881 (Ct. Cl. 1970) (*citing, Forgie v. Oil-Well Supply Co.*, 58 F. 871 (3d Cir. 1893)) (holding that "[j]oint invention connotes collaboration of effort to produce a complete and operative invention. ***One who merely suggests an idea of a result to be accomplished, rather than a means of accomplishing it, is not a joint inventor***." (emphasis added)).

Moreover, joint inventorship is "the product of a collaboration between two or more persons ***working together*** to solve the problem addressed." *Fina Oil*, 123 F.3d at 1472 (emphasis added). Again, the proposed Amended Answer fails to allege any collaboration or "working together" between one of the Named Inventors and any third party such that none of the third parties can be a joint inventor. *Id.*

Exhibit J to the Motion fairs no better. (D.I. 125-10). Exhibit J does not purport to show any type of conception or collaboration between parties. Instead, Exhibit J purports that someone asked an AutoMark engineer if, in response to a "Holt bill," AutoMark was designing a ballot box to work with AutoMark. There is no allegation that the AutoMark employee communicated any of the subject matter of the email to Mr. Cummings or Mr. Brockhouse. Again, there is no allegation of any collaboration between two or more persons ***working together*** to solve the problem addressed. This is legally insufficient to state a claim for joint inventorship. *Id.*

At most, the proposed "Fourteenth Affirmative Defense (Improper Inventorship)" asserts that a third party suggested an idea for the Automark machine. This was, at most, the statement of an idea regarding a result to be accomplished, with no substance whatsoever about how such a result would be accomplished. Again, merely suggesting an idea without collaborating and working on the design with the actual inventors is legally insufficient and fails to state a claim for joint inventorship. *Garrett Corp.*, 422 F.2d at 88 (citing *Forgie v. Oil-Well Supply Co.*, 58 F. 871 (3d Cir. 1893)).

It follows that the proposed Amended Answer fails to state a claim and, thus, it would be futile to allow Smartmatic to pursue the proposed "Fourteenth Affirmative Defense (Improper Inventorship)." As fact discovery

[8] As noted above, Mr. Cummings was a registered patent attorney and, thus, was presumably familiar with the standard for inventorship.

(as extended) is set to close September 2, 2022, Smartmatic's Motion to Amend should be denied. Smartmatic has put its "best" facts forward, and they simply do not state a claim. Smartmatic's position is futile.

**2. Smartmatic's Delay was Undue.**

This Court has found that a four-month delay after receiving discovery to filing a motion to amend pleadings was undue, even where additional barriers existed, such as the need to translate the discovery from Japanese language to English language. *Asahi Glass Co. v. Guardian Indus. Corp.*, 276 F.R.D. 417, 420 (D. Del. 2011). Similar to the delay in *Asahi*, Smartmatic delayed over three months to file its Motion. Smartmatic provides no other explanation other than typical litigation pressures and workload, which pressures are insufficient, as discussed above with respect to Rule 16. This delay was undue at least for the reasons discussed above in Sections II(C), II(D), and IV(B). Commonplace litigation activities do not excuse Smartmatic's delay. All of this is particularly so given that Smartmatic's delay occurred right at the end of the fact discovery period. Accordingly, Smartmatic's delay was undue.

**3. ES&S, as well as the Court, Will be Prejudiced By a Grant of Smartmatic's Motion.**

"The most important factor in determining whether a motion for amendment of the pleadings [under Rule 15] should be permitted . . . is whether any prejudice will result to the opposing party in granting such a motion. *Matlack, Inc. v. Hupp Corp.*, 57 F.R.D. 151, 163 (E.D. Pa. 1972); *Cordance Corp. v. Amazon.com, Inc.*, 255 F.R.D. 366 (D. Del. 2009). "In proving prejudice, the non-moving party must do more than merely claim prejudice; it must show that it was unfairly disadvantaged or deprived of the opportunity to present facts or evidence which it would have offered had the amendments been timely." *Cordance Corp. v. Amazon.com, Inc.*, 255 F.R.D. 366, 371 (D. Del. 2009) (internal quotation marks omitted).

Smartmatic's delay in asserting its futile inventorship defense will prejudice ES&S. First, the passage of over a year after the deadline to amend pleadings in this matter is *per se* prejudicial to ES&S. *See, e.g., Asahi Glass Co. v. Guardian Indus. Corp.*, 276 F.R.D. 417, 420 (D. Del. 2011) ("certain prejudice to plaintiff is inherent" in a ***six-month*** delay after the deadline to amend pleadings). Further, "allowing [Smartmatic's] motion at this late stage would place an unwarranted burden on the court and prejudice [ES&S] in several respects, most

notably, opening discovery for the purpose of allowing [ES&S] an opportunity to respond to the new claims cannot be accomplished while maintaining the current trial date." *Asahi Glass Co. v. Guardian Indus. Corp.*, 276 F.R.D. 417, 420 (D. Del. 2011). Here, fact discovery ends in a few days on September 2, 2022. (D.I. 131). And Smartmatic wants more. Smartmatic implies a need for additional time to discover more individuals of the nebulous group of Unnamed Inventors. *See generally* Opening Brief. There is, however, no time left for such a fishing expedition at the 11th hour.

Thus, if Smartmatic's Motion is granted, the Court will have to reopen discovery for ES&S to discover material relevant to countering Smartmatic's belated and futile attack. The Court may decide to reopen discovery for Smartmatic to fish for additional purported inventors of the '471 patent. This is prejudicial as it is a new defense, predicated on new facts, that must be discovered and vetted. Additional depositions may be required to flesh out the details of the defense itself. This additional cost and effort are prejudicial, but even more so, the reopening of discovery greatly risks the remainder of the Court's schedule. Expert discovery ends December 16, 2022; dispositive motions are due January 13, 2023; the pretrial conference is on May 12, 2023; and trial is slated to begin May 22, 2023. (D.I. 56 at 8). There is simply no time left in the schedule for ES&S to conduct any discovery on Smartmatic's belated and futile inventorship defense. Any amendment to the schedule would necessarily truncate the remaining periods, which would be prejudicial to ES&S and to the Court. *See, e.g.*, *RetailMeNot, Inc. v. Honey Sci. Corp.*, No. CV 18-937-CFC-MPT, 2019 WL 2537565, at *2 (D. Del. June 20, 2019), *report and recommendation adopted*, No. CV 18-937-CFC-MPT, 2019 WL 6615321 (D. Del. Dec. 5, 2019) (denying amendment where granting the amendment would truncate an important period within the current case schedule, rendering the schedule "unworkable").

## V. CONCLUSION

For at least the foregoing reasons, ES&S respectfully requests that the Court deny Smartmatic's Motion to Amend.

Dated: August 29, 2022

By: */s/ Patricia S. Rogowski*
ROGOWSKI LAW LLC
Patricia Smink Rogowski Del.

Bar ID #2632
501 Silverside Road, Suite 11
Silverside Carr Executive Center
Wilmington, Delaware 19809
Tel: (302) 893-0048
pat@rogowskilaw.com

LEWIS RICE LLC

Robert M. Evans, Jr., Mo. Bar #35613 (*pro hac vice*)
Michael J. Hartley, Mo. Bar #55057 (*pro hac vice*)
Michael H. Durbin, Mo. Bar #73132 (*pro hac vice*)
600 Washington Avenue, Suite 2500
St. Louis, Missouri 63101 Tel:
(314) 444-7600
Fax: (314) 612-7869
revans@lewisrice.com
mhartley@lewisrice.com
mdurbin@lewisrice.com

*Attorneys for Plaintiff*

**CERTIFICATE OF SERVICE**

The undersigned attorney certifies that on August 29, 2022 she caused the foregoing to be served by electronic mail on counsel of record.

*/s/ Patricia S. Rogowski*_______________

Patricia Smink Rogowski

Del. Bar ID #2632