IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

ELECTION SYSTEMS &

SOFTWARE, LLC,

    Plaintiff,

v.

SMARTMATIC USA CORP.,

    Defendant.

Civil Action No. 18-cv-01259-RGA

## MEMORANDUM OPINION

Patricia S. Rogowski, ROGOWSKI LAW, LLC, Wilmington, DE; Robert M. Evans, Michael J. Hartley. Michael H. Durbin, LEWIS RICE, LLP, St. Louis, MO.

    Attorneys for Plaintiff.

Brian A. Briggs, Angela C. Whitesell, DLA PIPER, LLP, Wilmington, DE; Larissa S. Bifano, DLA PIPER, LLP, Boston, MA; Richard Mulloy, DLA PIPER, LLP, San Diego, CA; Zachary Loney, DLA PIPER, LLP, Austin, TX.

    Attorneys for Defendant.

October 24, 2022

*[signature]*
ANDREWS, UNITED STATES DISTRICT JUDGE:

Before me is Defendant's motion for leave to amend. (D.I. 123). The motion has been fully briefed. (D.I. 124, 138, 143). For the reasons set forth below, Defendant's motion is denied.

## I. BACKGROUND

On August 17, 2018, Plaintiff Election Systems & Software (ES&S) filed a two-count Complaint alleging infringement of U.S. Patent Nos. 8,096,471 (the "'471 Patent") and 7,753,273 (the "'273 Patent") by Defendant Smartmatic. (D.I. 1). On March 19, 2019, Defendant filed an answer in which, among other things, it alleged noninfringement and invalidity of both patents. (D.I. 19). I ordered that the deadline to amend the pleadings was June 18, 2021. (D.I. 56 at 1). More than a year after that deadline, on July 18, 2022, Defendant notified Plaintiff that it would seek leave to amend its answer to assert as an additional affirmative defense that the '471 Patent is invalid for improper inventorship. (D.I. 125, Ex. E). Plaintiff did not consent to the amendment. (D.I. 123, Ex. 4). Plaintiff voluntarily dismissed all claims for infringement of the '273 Patent on July 29, 2022. (D.I. 119).

Defendant filed the instant motion on August 9, 2022.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 15(a)(2) states that, apart from amendments as a matter of course, "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." FED. R. CIV. P. 15(a)(2). The Third Circuit has instructed that "absent undue or substantial prejudice, an amendment should be allowed under Rule 15(a) unless 'denial [can] be grounded in bad faith or dilatory motive, truly undue or unexplained delay, repeated failure to cure deficiency by amendments previously allowed or futility of amendment.'" *Long v. Wilson*, 393 F.3d 390, 400 (3d Cir. 2004) (quoting *Lundy v.*

2

*Adamar of New Jersey, Inc.*, 34 F.3d 1173, 1196 (3d Cir. 1994)) (emphasis omitted). An amendment is futile if it "would fail to state a claim upon which relief could be granted." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997). The futility analysis follows the standard that applies to a motion under Rule 12(b)(6). *Id.*

A request to amend filed after the court's deadline to amend must also meet the "good cause" standard of Rule 16(b)(4). *Premier Comp Sols. v. UPMC*, 970 F.3d 316, 319 (3d Cir. 2020). Rule 16(b)(4) provides, "A schedule may be modified only for good cause and with the judge's consent." FED. R. CIV. P. 16(b)(4). "'Good cause' exists when the [s]chedule cannot reasonably be met despite the diligence of the party seeking the extension." *ICU Med., Inc. v. RyMed Techs., Inc.*, 674 F. Supp. 2d 574, 577 (D. Del. 2009). Unlike Rule 15(a), the Rule 16(b) standard focuses on the "diligence of the movant, and not on prejudice to the non-moving party." *Roquette Freres v. SPI Pharma, Inc.*, 2009 WL 1444835, at *4 (D. Del. May 21, 2009). "A party must meet [Rule 16(b)'s] standard before a district court considers whether the party also meets Rule 15(a)'s more liberal standard." *Premier Comp*, 970 F.3d at 319.

## III.   DISCUSSION

Eugene M. Cummings and Sean Brockhouse filed the provisional application that led to the '471 Patent on December 18, 2007. They are the only named inventors. The '471 Patent claims a ballot marking device with an attached ballot box that allows for a user's marked ballot either to be returned to the voter or to be automatically deposited into the attached ballot box. One of the invention's advantages is that it assists voters who have a physical impairment that may interfere with their ability to handle a paper ballot.

Defendant alleges that in June 2005 one or more of four other individuals suggested the idea to combine the ballot marking device and the ballot box. (D.I. 123, Ex. 1 at 19-20; D.I. 124

3

at 2). Defendant contends the suggestion from these other individuals "contributed to the conception of at least one claim of the '471 Patent." (D.I. 123, Ex. 1 at 20). Therefore, Defendant asserts, those individuals should be named as inventors on the '471 Patent. Defendant now seeks to amend its answer to assert the affirmative defense that the '471 Patent is invalid under 35 U.S.C. § 102(f) for failing to name all inventors. (D.I. 123, Ex. 1 at 17-20; D.I. 124 at 1).

## A. RULE 16(b)(4) DILIGENCE

Defendant learned of its newly-asserted defense by accident. While searching for an expert witness, Defendant's counsel contacted Dr. Diane C. Golden for the first time about May 5, 2022. Dr. Golden informed counsel that she had previous experience with Plaintiff regarding the addition of a secure ballot box to Plaintiff's ballot marking device. (D.I. 124 at 3). A week later, Dr. Golden produced emails to counsel pertaining to that experience. (*Id.*). Counsel contends it "had to evaluate the information it received on May 12, determine the best way to proceed, consult with its client regarding the same, amend its initial disclosures to identify Dr. Golden as an individual with relevant information, and prepare the proposed amended answer." (*Id.*). Defendant argues that it was diligent in completing these tasks and notified Plaintiff of its intent to amend its answer on July 18, 2022. Defendant filed the instant motion on August 9, 2022, within two weeks of being informed that Plaintiff would not consent to the motion.

Plaintiff argues that Defendant was not diligent and therefore cannot show good cause because Defendant waited to "seek discovery" from Dr. Golden until thirteen months after the deadline to amend the pleadings, filed its motion fourteen months after the deadline to amend the pleadings and three months after obtaining the information from Dr. Golden. (D.I. 138 at 10).

I find that good cause exists. Defendant was diligent. Defendant did not learn about Dr. Golden's prior experience with Plaintiff until eleven months after the deadline to amend the

4

pleadings. Assuming Plaintiff properly responded to all discovery requests,[1] it appears Defendant did not have any opportunity to learn the information provided by Dr. Golden prior to May 5, 2022. Plaintiff asserts that Dr. Golden's emails could not have been captured by the agreed-to email discovery process because email discovery was limited to emails from 2018-2019, possessed by certain custodians, and including certain keywords (*e.g.*, "Los Angeles County"). (D.I. 138 at 9). While Plaintiff contends Defendant is responsible for demanding such a narrow email discovery process (*id.*), the agreed-to email discovery process does not indicate to me a lack of diligence on Defendant's part.[2] The agreed-to email discovery process appears to have been reasonable, especially considering Defendant had no reason to specifically seek information relating to Dr. Golden. *Cf. Targus Int'l LLC v. Victorinox Swiss Army, Inc.*, 2021 WL 2291978, at *3 (D. Del. June 4, 2021) (finding good cause when it was "not unreasonable" for movant to discover prior art after the deadline to amend because the products had not been publicly available for years). Defendant appears to have been diligent in conducting discovery and in becoming aware of Dr. Golden on May 5, 2022. Therefore, Defendant had good cause for not meeting the Scheduling Order deadline when it only came into possession of the information well past the deadline. *See Dasso Int'l, Inc. v. MOSO N. Am., Inc.*, 2020 WL 6287673, at *2 (D. Del. Oct. 27, 2020) (finding

---

[1] Plaintiff and Defendant dispute whether discovery should have led to the production of Dr. Golden's emails. Defendant asserts that Plaintiff should have produced them in response to RFP Nos. 14 and 36. (D.I. 124 at 6). Plaintiff contends that its responses were not deficient. (D.I. 138 at 8).

[2] Plaintiff also argues that Defendant was not diligent because Defendant was the source of delay in the exchange of email discovery. (D.I. 138 at 8). I am not persuaded that this argument means Defendant was not diligent in obtaining Dr. Golden's emails. Defendant obtained emails from Dr. Golden a month before the deadline for substantial email production. (*Id.* at 8-9). Furthermore, Plaintiff claims that Dr. Golden's emails would not have been included in email discovery. Therefore, even if Defendant did cause delay in the exchange of email discovery, it would not have had any impact on the date when Defendant came to possess Dr. Golden's emails.

5

good cause existed when amendment was based on information that was discovered "over a year after the deadline to amend").

Defendant was also diligent once it came to possess the information from Dr. Golden. Defendant only learned of Dr. Golden's previous experience with Plaintiff through sheer happenstance, as it reached out to Dr. Golden in its search for potential expert witnesses. (D.I. 124 at 3). Since the information was unexpected, it was reasonable for Defendant to take time to confirm the information and materials produced by Dr. Golden before deciding to amend its answer. Under these circumstances, I do not find a lack of diligence for taking three months from the time Defendant first came to possess materials from Dr. Golden to the time it filed the motion to amend its answer. "[O]ther courts in the Third Circuit have found diligence when a party has sought leave to amend within three months of learning new information . . . ." *Home Semiconductor Corp. v. Samsung Elec. Co.*, 2019 WL 2135858, at *5 (D. Del. May 16, 2019); *see also Compagnie des Grands Hotels D'Afrique SA v. Starwood Cap. Grp. Glob. I LLC.*, 2021 WL 6883231, at *4 (D. Del. Feb. 10, 2021) (finding good cause for two and one-half month delay).

Defendant appears to have been diligent in investigating Dr. Golden's information and filing this motion. Therefore, good cause exists to amend the pleadings.

### B. RULE 15(a)(2) FUTILITY

Defendant asserts it has sufficiently stated a claim that the '471 Patent is invalid for improper inventorship under § 102(f). Defendant has identified individuals who are not listed as inventors and a conversation where at least one of those individuals is alleged to have contributed to the conception of the invention claimed by the '471 Patent by suggesting the idea of attaching a secured ballot box to the ballot marking device. (D.I. 124 at 2).

Plaintiff contends that Defendant's proposed affirmative defense is futile because it fails to allege "any type of conception or collaboration between parties," which is necessary to plead a claim for joint inventorship. (D.I. 138 at 15).

"The standard for assessing futility is the 'same standard for legal sufficiency as applies under [Federal] Rule [of Civil Procedure] Rule 12(b)(6).'" *Great W. Mining & Min. Co. v. Fox Rothschild, LLP*, 615 F.3d 159, 175 (3d Cir. 2010) (quoting *Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000)).[3] Rule 8 requires a complainant to provide "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." FED. R. CIV. P. 8(a)(2). Rule 12(b)(6) allows the accused party to bring a motion to dismiss the claim for failing to meet this standard. A Rule 12(b)(6) motion may be granted only if, accepting the well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the complainant, a court concludes that those allegations "could not raise a claim of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007).

The factual allegations do not have to be detailed, but they must provide more than labels, conclusions, or a "formulaic recitation" of the claim elements. *Id.* at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."). Moreover, there must be sufficient factual matter to state a facially plausible claim to relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the [complainant] pleads factual content that allows

---

[3] In its opening brief, Defendant states the "standard for assessing futility of amendment under Fed. R. Civ. P. 15(a) is the same standard for legal sufficiency applicable under Fed. R. Civ. P. 12(b)(6)." (D.I. 124 at 10 (citing *Shane*, 213 F.3d at 115)). In its reply brief, Defendant asserts that improper inventorship is a statutory defense and argues that futility should be considered under Fed. R. Civ. P. 12(f). (D.I. 143 at 8). Defendant, however, does not cite to any authority that applies a Rule 12(f) standard to determine if an amendment is futile under Rule 15(a)(2). (*Id.*). Therefore, I find the Rule 12(b)(6) standard is appropriate to apply in this context.

7

the court to draw the reasonable inference that the [accused] is liable for the misconduct alleged." *Id.* Deciding whether a claim is plausible will be a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

Defendant's proposed affirmative defense asserts that the '471 Patent is invalid under § 102(f) for improper inventorship. Section 102(f) encompasses three types of claims: misjoinder (naming a non-inventor as an inventor), nonjoinder (failing to name a co-inventor as an inventor), and derivation (deriving the patented invention from another, unnamed individual). *See Plastipak Packaging, Inc. v. Premium Waters, Inc.*, 2021 WL 3675151, at *9 (W.D. Wis. Aug. 19, 2021). While Defendant states it is not limiting its improper inventorship defense to a "joint invention" theory (D.I. 143 at 9), it does not allege any facts to support the theory that either of the listed inventors should not be listed on the patent. In its proposed amended answer, Defendant only alleges that "one or more of the [u]nnamed [i]nventors contributed to the conception of at least one claim of the '471 [P]atent," (D.I. 123, Ex. 1 at 20).[4] Therefore, Defendant's proposed amended answer appears to be based only on a theory of nonjoinder.

I find that Defendant has not sufficiently plead a theory of nonjoinder under § 102(f), making this motion futile. To qualify as a joint inventor, an individual "must contribute to the invention's conception." *CODA Dev. S.R.O. v. Goodyear Tire & Rubber Co.*, 916 F.3d 1350, 1358 (Fed. Cir. 2019). "[T]he test for conception is whether the inventor had an idea that was definite and permanent enough that one skilled in the art could understand the invention." *Burroughs Wellcome Co. v. Barr Lab'ys, Inc.*, 40 F.3d 1223, 1228 (Fed. Cir. 1994). "An idea is definite and permanent when the inventor has a specific, settled idea, a particular solution to the problem at

---

[4] Furthermore, in its opening brief in support of its motion, Defendant states that it is basing its proposed defense on a § 102(f) theory of "failing to name all of the inventors." (D.I. 124 at 1).

8

hand, not just a general goal or research plan he hopes to pursue." *Id.* "Further, with regard to joint inventorship, there must be some quantum of collaboration," *CODA*, 916 F.3d at 1539, or "some open line of communication during or in temporal proximity to their inventive efforts." *Eli Lilly & Co. v. Aradigm Corp.*, 376 F.3d 1352, 1359 (Fed. Cir. 2004).

Defendant's allegations do not state a plausible claim for joint inventorship. Defendant asserts that the "invention of the '471 [P]atent[] was conceived of at the June 21, 2005 meeting with the contribution of one or more of the [u]nnamed [i]nventors." (D.I. 123, Ex. 1 at 17-20). These allegations are insufficient to state a claim for joint inventorship for two reasons.

First, the alleged facts do not state a plausible claim that the invention was conceived at this meeting. In its proposed defense, Defendant alleges that at the June 21, 2005, meeting, an unnamed inventor contributed to the "redesign of the AutoMark VAT so that a ballot could be automatically placed in a sealed ballot box without depending on a voter's ability to handle paper." (D.I. 123, Ex. 1 at 19). Defendant undercuts its own argument, however, with the evidence it provides in support. The email that summarizes the content of the June 21, 2005, meeting states, "That AutoMark will undertake a redesign of the device so that a marked ballot can be automatically placed in a sealed ballot box." (D.I. 125, Ex. B at 1). This statement is just a general goal, not a particular solution to the problem at hand. *See Burroughs*, 40 F.3d at 1228. Defendant fails to plead facts to show that the invention claimed by the '471 Patent was conceived of at that meeting. Further, the evidence it puts forth indicates that conception was incomplete at that time, meaning that the failure to plead the necessary facts is not simply poor pleading.

Second, Defendant fails to state a plausible claim that any of the unnamed inventors collaborated with the named inventors, which is necessary in order to qualify as joint inventors. *See CODA*, 916 F.3d at 1539. Defendant does not allege that Eugene Cummings or Sean

9

Brockhouse participated in the June 21, 2005, conversation. (D.I. 125, Ex. B at 1). Defendant also does not allege that either inventor communicated with any of the unnamed inventors or that the content of the June 21, 2005, meeting had been relayed to inventors. The facts pleaded in the proposed amended answer do not plausibly show that there was a "quantum of collaboration" between the named inventors and the purportedly unnamed inventors. *See Kimberly-Clark Corp. v. Procter & Gamble Distrib. Co.*, 973 F.2d 911, 917 (Fed. Cir. 1992) ("For persons to be joint inventors under Section 116, there must be some element of joint behavior, such as collaboration or working under common direction, one inventor seeing a relevant report and building upon it or hearing another's suggestion at a meeting.").

Defendant fails to state a plausible claim in its proposed affirmative defense for improper inventorship under § 102(f). Therefore, Defendant's proposed amendment is futile.

### C. RULE 15(a)(2) UNDUE PREJUDICE

Defendant argues that Plaintiff will not be unduly prejudiced by granting this motion because "all discovery on the improper inventorship defense has been completed" and it will not be necessary to reopen discovery. (D.I. 143 at 9-10).[5]

Plaintiff contends that bringing this motion over a year past the deadline to amend the pleadings results in "*per se* prejudice." (D.I. 138 at 16). Plaintiff further argues that granting this motion will result in an unfair burden and prejudice because it would require reopening discovery,

---

[5] Defendant also asserts that Plaintiff will not be unfairly prejudiced because Plaintiff has taken unrelated litigation acts after the filing of the motion. (D.I. 124 at 9). However, these acts are outside the scope of inquiry for determining undue prejudice under Rule 15(a) as the undue prejudice analysis requires a court to consider the impact of granting the motion on the non-moving party. *See Bechtel v. Robinson*, 886 F.2d 644, 652 (3d Cir. 1989).

10

which closed on September 1, 2022.[6] Plaintiff alleges that it, and possibly Defendant, would require additional time to discover facts pertinent to Defendant's proposed affirmative defense. (D.I. 138 at 17). Plaintiff asserts that reopening discovery this late would result in prejudice because it would "truncate the remaining periods" in the schedule. (*Id.*).

To demonstrate undue prejudice, the non-moving party "must show that it was unfairly disadvantaged or deprived of the opportunity to present facts or evidence which it would have offered had the . . . amendments been timely." *Bechtel v. Robinson*, 886 F.2d 644, 652 (3d Cir. 1989). This inquiry focuses on "whether allowing an amendment would result in additional discovery, cost, and preparation to defend against new facts and theories." *Cureton v. Nat'l Athletic Ass'n*, 252 F.3d 267, 273 (3d Cir. 2001).

Granting this motion would necessitate the reopening of discovery in order to provide Plaintiff with an opportunity to develop facts to address Defendant's proposed affirmative defense. As Plaintiff correctly notes, Defendant's proposed improper inventorship defense is "a new defense, predicated on new facts, that must be discovered and vetted." (D.I. 138 at 17). Defendant counters that Plaintiff already knows all the facts relevant to the proposed affirmative defense. (D.I. 124 at 9). Defendant also contends that Plaintiff is the custodian of the information pertaining to the June 21, 2005, conversation. (D.I. 143 at 10). Only focusing on the facts developed from Dr. Golden, however, is too narrow in scope.

For example, Dr. Golden's email address is just one of ten listed on the email describing the content of the June 21, 2005, conversation, indicating at least nine others participated in it or at least were present. (D.I. 125, Ex. B at 1). Furthermore, Dr. Golden is just one of at least four

---

[6] At the time Defendant's motion (D.I. 123) was filed, fact discovery closed on August 24, 2022. The deadline for fact discovery was later extended to September 1, 2022. (D.I. 131).

11

individuals alleged as a potential unnamed inventor in Defendant's proposed amendment. (D.I. 123 at 17). If this motion were granted without reopening discovery, it would be unfairly prejudicial to Plaintiff not to give it an opportunity to discover the facts regarding the meeting and its participants. Plaintiff would likely seek discovery from the other individuals listed as participating in the June 21, 2005, conversation in order to determine if a suggestion for the claimed invention originated in that conversation, the details of the suggestion, and whose suggestion it was.[7] Given the conversation occurred over seventeen years ago and included participants who were not at the time affiliated with Plaintiff,[8] Plaintiff is unlikely to have all the relevant facts regarding this meeting. Therefore, granting this motion would necessitate reopening discovery.

Reopening discovery this late in the schedule would result in unfair prejudice to Plaintiff. Fact discovery closed on September 1, 2022. Expert discovery ends December 16, 2022. Dispositive motions are due January 13, 2013. Trial is scheduled to begin May 22, 2023. Granting Defendant's motion and reopening discovery for Plaintiff to respond to Defendant's proposed affirmative defense would significantly impact the schedule or require Plaintiff to pursue such discovery on an unfairly compressed timeline. Defendant bases its proposed improper inventorship defense on the content of a seventeen-year-old conversation that included participants who were not affiliated with Plaintiff, or who may no longer be affiliated with Plaintiff. Plaintiff would likely seek information from the other individuals who participated in the June 21, 2005, meeting. Even

---

[7] Plaintiff asserts, "Additional depositions may be required to flesh out the details of the defense itself." (D.I. 138 at 17).

[8] Neither James Dickson, Dr. Golden, Kelly Anthony, nor Douglas Towne were employees of AutoMark Technical Solutions or Plaintiff at the time of the conversation. Furthermore, individuals who were affiliated with AutoMark Technical Solutions or Plaintiff at the time may no longer be affiliated with Plaintiff.

12

if locating these individuals is not difficult, subpoenaing and deposing them would take considerable time and effort. Given these circumstances, completing the additional fact discovery to allow Plaintiff to address Defendant's proposed affirmative defense would likely take an additional four to six months to complete. When considering the extent of additional discovery required, coupled with the late stage of the current schedule, it would be unfairly prejudicial to grant Defendant's motion to amend its answer.

Defendant cites *Roquette Freres v. SPI Pharma, Inc.*, 2009 WL 1444835 (D. Del. May 21, 2009), to support its contention that Plaintiff would not be prejudiced if the motion were granted. (D.I. 124 at 10). There are, however, key distinctions between *Roquette Freres* and the present case.

First, in *Roquette Freres*, the motion to amend was filed four months prior to the close of discovery, 2009 WL 1444835, at *5, whereas in the present case the motion to amend was filed less than four weeks prior to the close of discovery.[9]

Second, the matter in *Roquette Freres* was not scheduled for trial at the time the motion was filed, and the scheduling order had already been modified multiple times up to that point, unlike the present matter. 2009 WL 1444835, at *2, *6. Therefore, the concerns resulting from the impact of reopening fact discovery on the remaining schedule that exist here were not present in *Roquette Freres*.

Third, the court in *Roquette Freres* found that the relevant information pertaining to the moving party's new claims "would primarily be within the control of" the non-moving party. *Id.* at *5. Not so here. For these reasons, *Roquette Freres* is distinguishable from the present case.

---

[9] Using the date when Plaintiff advised Defendant that it would raise its proposed affirmative defense, Plaintiff had roughly five weeks notice before the originally scheduled close of fact discovery (D.I. 124 at 8), substantially less time than the non-movant in *Roquette Freres*.

13

These circumstances, however, are more like those of *Asahi Glass Co. v. Guardian Indus. Corp.*, where the court found, "While defendant's delay is not egregious, allowing defendant's motion at this late stage would place an unwarranted burden on the court and prejudice plaintiffs in several respects, most notably, opening discovery for the purpose of allowing plaintiffs an opportunity to respond to the new claims cannot be accomplished while maintaining the current trial date." 276 F.R.D. 417, 420 (D. Del. 2011).[10] While the defendant in *Asahi* brought the motion after the close of fact discovery, fact discovery in the present case nevertheless ended prior to the motion being completely briefed.[11] Therefore, the same concerns of the motion's potential impact on the schedule that existed in *Asahi* are present here.

For example, the deadlines for expert discovery and filing dispositive motions are December 16, 2022, and January 13, 2023, respectively. Extending the deadline for fact discovery even just two months would severely compress the time allotted for these later stages of the case. *See also RetailMeNot, Inc. v. Honey Sci. Corp.*, 2019 WL 2537565, at *2 (D. Del. June 20, 2019), *report and recommendation adopted*, 2019 WL 6615321 (D. Del. Dec. 5, 2019) (finding undue prejudice in an amendment that would shift back claim-construction deadlines because it "would create a truncated time-period between the court's ultimate determination on claim construction and the remainder of the deadlines set through trial"). Therefore, the additional expenditure and

---

[10] Plaintiff cites *Asahi* for the proposition that filing a motion to amend the answer after a year past the deadline to amend the pleadings is *per se* prejudicial. (D.I. 138 at 16 (citing *Asahi*, 276 F.R.D. at 420)). Plaintiff omits a key detail with the court's reasoning in *Asahi*. The court in *Asahi* found "certain prejudice to plaintiff is inherent" when the defendant's motion "came six months after the deadline to amend the pleadings and after the close of fact discovery." *Id.* In the present case, Defendant filed its motion prior to the close of fact discovery. While *Asahi* is instructive to analyzing whether undue prejudice exists, it does not compel a finding of *per se* or inherent prejudice in the present case due to the differences in timelines.

[11] Briefing for this motion was completed on September 8, 2022, one week after fact discovery closed. (D.I. 132).

14

time required by Plaintiff to conduct the additional discovery to address Defendant's proposed affirmative defense, while still adhering to the current scheduling order, would amount to unfair prejudice to Plaintiff.

## IV. CONCLUSION

For the reasons stated above, Defendant's motion for leave to amend (D.I. 123) is DENIED.

An appropriate order will issue.