IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

ELECTION SYSTEMS &
SOFTWARE, LLC,

    Plaintiff,

v.

SMARTMATIC USA CORP.,

    Defendant.

Civil Action No. 18-cv-1259-RGA

## MEMORANDUM OPINION

Patricia S. Rogowski, ROGOWSKI LAW, LLC, Wilmington, DE; Robert M. Evans, Jr., Michael J. Hartley, Michael H. Durbin, T. Hunter Brown, LEWIS RICE, LLP, St. Louis, MO.

    Attorneys for Plaintiff.

Brian A. Biggs, Angela C. Whitesell, Erin E. Larson, DLA PIPER, LLP, Wilmington, DE; Larissa S. Bifano, DLA PIPER, LLP, Boston, MA; Richard Mulloy, DLA PIPER, LLP, San Diego, CA; Zachary Loney, DLA PIPER, LLP, Austin, TX.

    Attorneys for Defendant.

April 25, 2023



**ANDREWS, UNITED STATES DISTRICT JUDGE:**

Before me is Defendant's motion for judgment on the pleadings. (D.I. 147). The matter has been fully briefed. (D.I. 148, 157, 165). For the reasons set forth below, Defendant's motion is granted.

## I. BACKGROUND

On August 17, 2018, Plaintiff Election Systems & Software ("ES&S" or "Plaintiff") filed a two-count Complaint alleging infringement of U.S. Patent Nos. 8,096,471 (the "'471 Patent") and 7,753,273 (the "'273 Patent") by Defendant Smartmatic. (D.I. 1). On March 19, 2019, Defendant filed an answer in which, among other things, it alleged noninfringement and invalidity of both patents. (D.I. 19).

In 2019, Defendant filed IPR petitions with the PTAB for both patents. (D.I. 41 at 1). During the IPR proceedings, Plaintiff cancelled claims 1-15 and 17-20 of the '471 Patent and added substitute claims 21-31. (D.I. 49-2, Ex. B at 5 (Final Written Decision of IPR)). The PTAB found claim 16 and substitute claims 21-29 to be patentable. (*Id.* at 44).[1]

Plaintiff voluntarily dismissed all claims for infringement of the '273 Patent on July 29, 2022. (D.I. 119). Plaintiff alleges infringement of claims 16, 21, and 24-26 of the '471 Patent. (D.I. 148 at 2). Claims 16 and 24 are independent claims. Claim 21 depends from claim 16 and claims 25 and 26 depend from claim 24. Defendant now moves for judgment on the pleadings that those five claims are abstract ideas that are not patent-eligible subject matter under 35 U.S.C. § 101. (*Id.* at 2).

---

[1] The PTAB only reviewed whether these claims were patentable under 35 U.S.C. § 103(a). The PTAB did not have the opportunity to determine if the claims were patentable under 35 U.S.C. § 101. (D.I. 148 at 8 n.1). Plaintiff does not assert that estoppel applies to these issues.

The '471 Patent covers a ballot marking device that has a ballot box attached to it. Claim 16 of the '471 Patent recites:

> 16. A voter assistance terminal, comprising:
> a presentation device operable to present to a voter a plurality of election choices and a plurality of ballot handling choices, wherein the ballot handling choices comprise returning a ballot to the voter and depositing the ballot into a ballot box;
> an input device operable to receive from the voter at least one selection corresponding to the election choices and an instruction corresponding to the ballot handling choices;
> a print mechanism operable to record the received voter selection on the ballot;
> a transport mechanism operable to transport the ballot through a ballot channel in accordance with the received voter instruction, wherein the transport mechanism causes ejection of the ballot if the received voter instruction is to return the ballot to the voter, and wherein the transport mechanism causes deposit of the ballot into the ballot box if the received voter instruction is to deposit the ballot into the ballot box; and
> wherein the presentation device, the input device, the print mechanism, and the transport mechanism are integrated in a single unit.

Claim 21 of the '471 Patent recites:

> 21. The voter assistance terminal of claim 16, wherein the transport mechanism is operable to transport the ballot to a diverter if the received voter instruction is to deposit the ballot into the ballot box.

Claim 24 of the '471 Patent recites:

> 24. A ballot marking device, adapted to mark a ballot in accordance with selections made by a voter and to either directly deposit the marked ballot into an attached ballot box or return the marked ballot to the voter, the device comprising:
> a presentation device operable to present to the voter a plurality of election choices and a plurality of ballot handling choices;
> an input device operable to receive from the voter at least one selection corresponding to the election choices and at least one instruction corresponding to the ballot handling choices;
> a marking mechanism operable to record the received voter selection on the ballot;
> a transport mechanism operable to transport the ballot through a ballot channel of the device;
> a diverter operable to direct the ballot from the transport mechanism into the attached ballot box; and
> wherein the presentation device, the input device, the marking mechanism, the transport mechanism, and the diverter are integrated in a single unit, and

>wherein the ballot handling choices comprise returning the ballot to the voter and depositing the ballot into the attached ballot box.

Claim 25 of the '471 Patent recites:

> 25. The ballot marking device of claim 24, wherein the transport mechanism is operable to transport the ballot to the diverter based upon the received voter instruction to deposit the ballot into the attached ballot box.

Claim 26 of the '471 Patent recites:

> 26. The ballot marking device of claim 24, wherein the transport mechanism is operable to eject the ballot based upon the received voter instruction to return the ballot to the voter.

## II. LEGAL STANDARD

### A. Motion for Judgment on the Pleadings

A Rule 12(c) motion for judgment on the pleadings is reviewed under the same standard as a Rule 12(b)(6) motion to dismiss when the Rule 12(c) motion alleges that the plaintiff failed to state a claim upon which relief can be granted. *See Revell v. Port Auth.*, 598 F.3d 128, 134 (3d Cir. 2010); *Turbe v. Gov't of the Virgin Islands*, 938 F.2d 427, 428 (3d Cir. 1991). The court must accept the factual allegations in the complaint and take them in the light most favorable to the non-moving party. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Christopher v. Harbury*, 536 U.S. 403, 406 (2002). "When there are well-ple[d] factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). The court must "draw on its judicial experience and common sense" to make the determination. *See id.*

### B. Section 101

Section 101 of the Patent Act defines patent-eligible subject matter. It provides: "Whoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions

4

and requirements of this title." 35 U.S.C. § 101. The Supreme Court recognizes three categories of subject matter that are not eligible for patents—laws of nature, natural phenomena, and abstract ideas. *Alice Corp. Pty. v. CLS Bank Int'l*, 573 U.S. 208, 216 (2014). The purpose of these exceptions is to protect the "basic tools of scientific and technological work." *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 71 (2012).

In *Alice*, the Supreme Court reaffirmed the framework laid out in *Mayo* "for distinguishing patents that claim laws of nature, natural phenomena, and abstract ideas from those that claim patent-eligible applications of those concepts." 573 U.S. at 217. First, the court must determine whether the claims are drawn to a patent-ineligible concept. *Id.* If the answer is yes, the court must look to "the elements of the claim both individually and as an ordered combination" to see if there is an "inventive concept—*i.e.*, an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the ineligible concept itself." *Id.* at 217-18 (cleaned up). "A claim that recites an abstract idea must include additional features to ensure that the claim is more than a drafting effort designed to monopolize the abstract idea." *Id.* at 221 (cleaned up). Further, "the prohibition against patenting abstract ideas cannot be circumvented by attempting to limit the use of [the idea] to a particular technological environment." *Id.* at 222 (alteration in original) (quoting *Bilski v. Kappos*, 561 U.S. 593, 610-11 (2010)). For this second step, the machine-or-transformation test can be a "useful clue," although it is not determinative. *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 716 (Fed. Cir. 2014).

"Whether a claim is drawn to patent-eligible subject matter under § 101 is an issue of law . . . ." *In re Bilski*, 545 F.3d 943, 951 (Fed. Cir. 2008), *aff'd sub nom. Bilski v. Kappos*, 561 U.S. 593 (2010).

## III. DISCUSSION

### A. The Motion Is Not Converted to a Motion for Summary Judgment

As an initial matter, Plaintiff argues that this motion should be converted to a motion for summary judgment. (D.I. 157 at 8-11). First, Plaintiff asserts that both parties have submitted materials outside the pleadings and that I should convert the motion if I consider these materials. The materials outside of the pleadings that Defendant cites to are briefs that Plaintiff had submitted in a prior litigation in the Northern District of Florida (D.I. 148-2, Ex. B) and the Federal Circuit (D.I. 148-4, Ex. D), as well as the patent at issue in that litigation (D.I. 148-3, Ex. C (U.S. Patent No. RE40,449 (the "'449 Patent"))). Because these materials are public records, I can take judicial notice "of their existence and contents."[2] *Nautilus Ins. Co. v. 200 Christian St. Partners, LLC*, 363 F. Supp. 3d 559, 568 n.4 (E.D. Pa. 2019), *aff'd sub nom. Nautilus Ins. Co v. 200 Christian St. Partners LLC*, 819 F. App'x 87 (3d Cir. 2020); *Anderson v. Kimberly-Clark Corp.*, 570 F. App'x 927, 932 n.3 (Fed. Cir. 2014) (stating courts may take judicial notice of patents and patent applications).

Plaintiff includes materials outside the content of the pleadings with its Answering Brief. (D.I. 158, Exs. 1-10). I do not see this as a reason to convert the motion. "Conversion to summary judgment is generally not appropriate where, as here, only the nonmoving party has introduced evidentiary exhibits in response to a motion to dismiss or a motion for judgment on the pleadings." *Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*, 2016 WL 4373698, at *4 (D. Del. Aug. 15, 2016) (citing cases), *aff'd*, 874 F.3d 1329 (Fed. Cir. 2017).

---

[2] Even though such materials are subject to judicial notice, I only rely on the Federal Circuit's opinion in *Voter Verified, Inc. v. Election Sys. & Software LLC*, 887 F.3d 1376 (Fed. Cir. 2018). I do not rely on the arguments raised in the brief for the motion to dismiss (D.I. 148-2, Ex. B) or the appellate brief (D.I. 148-4, Ex. D) for that case.

Second, Plaintiff argues that I should convert the motion so it may submit additional evidence that will assist me in determining whether the patent covers patent-eligible subject matter. (D.I. 157 at 9). I disagree that this reason necessitates conversion of the motion. *See Yu v. Apple Inc.*, 1 F.4th 1040, 1046 (Fed. Cir. 2021) ("[P]atent eligibility can be determined at the Rule 12(b)(6) stage without the aid of expert testimony."), *cert. denied*, 142 S. Ct. 1113 (2022). Challenges under § 101 are commonly raised as early as the pleading stage. Under the Rule 12(b)(6) standard, the inquiry is appropriate at this stage "only when there are no factual allegations that, taken as true, prevent resolving the eligibility question as a matter of law." *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1125 (Fed. Cir. 2018). Because the focus is on factual allegations, rather than facts in the record, there is no reason to convert the motion just so Plaintiff can submit evidence for the record.

For these reasons, I will not convert the motion to a motion for summary judgment. Therefore, I will only consider matters that are included in the pleadings and subject to judicial notice.

### B. *Alice* Step 1

The '471 Patent addresses the limitation of previous voting machines that required the voter to manually handle a physical ballot, which may not be feasible for individuals who are physically impaired or lack the requisite motor skills. *See* '471 Patent, col. 1:33-36. Claim 16 of the '471 Patent describes a voter assistance terminal that contains (a) a presentation device to show the voter election choices and options for handling a ballot, (b) an input device to receive the choices from the voter, (c) a print mechanism to record the voter's choices on the ballot, and (d) a transport mechanism which can either eject the ballot to the voter or deposit the ballot in a secured ballot box, depending on the voter's selection of ballot handling options. Claim 21 depends from claim

16 and additionally claims the use of a diverter to direct the ballot into the ballot box. Claim 24 claims a ballot marking device equipped with a similar presentation device, input device, marking mechanism (similar to the print mechanism in claim 16), transport mechanism, and diverter as recited in claims 16 and 21. Claims 25 and 26 depend from claim 24 and claim a transport mechanism that uses the diverter to deposit the ballot in the ballot box or to eject the ballot, respectively.

Defendant argues "the 'focus of the claims' of the '471 patent is directed to abstract ideas that humans have performed in elections for hundreds of years: voting, checking the accuracy of a ballot, and submitting a ballot." (D.I. 148 at 11). Defendant analogizes this case to *Voter Verified, Inc. v. Election Sys. & Software LLC*, 887 F.3d 1376 (Fed. Cir. 2018).[3]

In *Voter Verified*, the patent-at-issue contained method and system claims. The representative method claim covered a "method for voting providing for self-verification of a ballot." *Id.* at 1384. The method comprised a voter voting on a computer voting station, printing a ballot of the votes, comparison by the voter of the votes printed on the ballot to those entered on the computer voting station, decision by the voter as to whether the printed ballot is acceptable, and submission of the acceptable printed ballot. *Id.* at 1384-85. The representative system claim, claim 56 of the patent-at-issue, recites:

> 56. A self-verifying voting system comprising:
> one or more voting stations comprising:
> > (a) one or more computer programs which operate in a computer to display general voting instructions, at least one election ballot showing the candidates and/or issues to be voted on, and directions to the voter for operation of the system;
> > > present the election ballot for voting and input of votes by the voter;
> > > accept input of the votes from the voter;
> > > print out the election ballot according to which the voter voted with
> > > > the votes of the voter printed thereon, so that the votes of the

---

[3] Defendant in *Voter Verified* is Plaintiff in the instant case.

> > voter are readable on said election ballot by the voter and readable by a ballot scanning machine; and
> > record the votes in the computer;
> > (b) at least one computer with at least one display device, at least one device to accept voting input from a voter, and sufficient memory to provide for the operation of said computer program;
> > (c) a printer connected to said computer for printing the election according to which the voter voted;
> > (d) a ballot scanning machine for reading the votes on the printed ballot printed according to the election ballot which the voter voted and
> > a means for tabulating the printed ballots generated by said one or more voting stations.

*Voter Verified*, 887 F.3d at 1385 (quoting '449 Patent, col. 10, ll. 7–33).

For *Alice* step 1, the Federal Circuit affirmed the district court's ruling that the claims were directed to patent-ineligible subject matter. The Federal Circuit stated,

> First, the claims as a whole are drawn to the concept of voting, verifying the vote, and submitting the vote for tabulation. Humans have performed this fundamental activity that forms the basis of our democracy for hundreds of years. . . . Even [Plaintiff] characterized these steps as "human cognitive actions." . . . These steps are therefore nothing more than abstract ideas.

*Voter Verified*, 887 F.3d at 1385 (internal citations omitted).

Defendant argues that the claims here, like in *Voter Verified*, "simply replace age-old pencil/paper voting actions by using generic electronic and mechanical components to help automate the process." (D.I. 148 at 11-12). Defendant points out that both the claims in *Voter Verified* and the '471 Patent "include display or presentation devices . . ., an input device . . ., a printer to print the votes made and that allows the voter to review his or her ballot for accuracy, and components that allow the voter to cast his or her ballot." (D.I. 148 at 13). Defendant cites to the specification to explain that the benefit of the claimed invention is to make the voting process more convenient and efficient for individuals who may lack the dexterity or the requisite motor skills to directly deposit their ballots into ballot boxes without assistance. (*Id.* at 12 (citing '471 Patent, col. 20:61-21:6)). Defendant contends, however, that "making a process more efficient"

does not make an abstract idea less abstract. (D.I. 148 at 13 (citing *Secured Mail Sols. LLC v. Universal Wilde, Inc.*, 873 F.3d 905, 910 (Fed. Cir. 2017)).

Defendant maintains that the additional limitations in claims 21 and 24-26 (e.g., using a diverter to direct the ballot to a specific location) does not render the idea less abstract. (D.I. 148 at 13-14). Defendant argues that these are not meaningful limitations over the abstract idea. (*Id.* at 14).

Plaintiff argues that the claims are not directed to an abstract idea, but, instead, "recite a technological solution to a vitally important technical problem that existed in the field of voting machines at the time of the invention—their inability to fully and privately accommodate many voters with disabilities." (D.I. 157 at 11). Plaintiff maintains that the patent claims a "voting machine having a specifically tailored configuration of a presentation device, an input device, a print mechanism, and a transport mechanism that can, *inter alia*, directly transport a ballot to an attached ballot box, which components are all structurally integrated into a single unit." (*Id.* at 12). Plaintiff contends that claims 24-26 claim a "diverter," which is "an additional technical solution that allows a ballot to be rerouted within the recited ballot channel." (*Id.*).

Plaintiff argues that *Voter Verified* is not applicable to this case. First, Plaintiff contends that the claims here "recite a specific structural embodiment for a voting machine" that includes the claimed components in a single, integrated unit, whereas the invention in *Voter Verified* could be accomplished with "off-the-shelf" computer components. (D.I. 157 at 19). Plaintiff specifically points to the fact that the ballot box is a physical structure and "the combination of elements in this required structure is very different from the generic computer claims at issue in *Voter Verified*." (*Id.*) (emphasis omitted). Second, Plaintiff argues that the structural limitations demonstrate that the claims are not "directed solely to human cognitive actions." (*Id.* at 20). Third,

Plaintiff argues that the limitation of the diverter in claims 21 and 24-26 is "more specific than any limitation found in the *Voter Verified* claims" and "is directed to a solution for the problems facing voting machines." (*Id.*).

I find the claims here are directed to the abstract idea of giving voters a choice of returning or depositing their ballot. "Both [the Federal Circuit] and the Supreme Court have found it sufficient to compare claims at issue to those claims already found to be directed to an abstract idea in previous cases." *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1334 (Fed. Cir. 2016). I agree with Defendant that *Voter Verified* is analogous. The elements of the claimed invention here, like in *Voter Verified*, correspond to the individual steps of voting (i.e., presenting options from the user, receiving inputs, marking the ballot, verifying the inputs, and submitting the ballot). *See, e.g.*, '471 Patent, claims 16 & 24. As the Federal Circuit in *Voter Verified* stated, "Humans have performed this fundamental activity that forms the basis of our democracy for hundreds of years." 887 F.3d at 1385.

The '471 Patent specification indicates that the invention is directed to an abstract idea. *See ChargePoint, Inc. v. SemaConnect, Inc.*, 920 F.3d 759, 766 (Fed. Cir. 2019) ("[W]e have found the specification helpful in illuminating what a claim is 'directed to.'"). The problem this invention addresses is the difficulty certain individuals may have in physically handling their ballot and depositing it in a ballot box for tabulation. The '471 Patent specification states, "The present invention is generally directed to a ballot marking device adapted to mark a ballot and either return the marked ballot to the voter or automatically deposit the marked ballot into a secure ballot box attached to the marking device." ('471 Patent, Abstract; *see also id.*, col. 2:1-7). The patent specification further emphasizes that an advantage of the invention is that it "allows those voters who lack sufficient manual dexterity or motor skills to directly deposit their marked ballots into

11

the attached ballot box without the assistance of any third parties." (*Id.*, col. 21:1-4). Depositing a ballot for tabulation, however, is a standard part of the voting process and an abstract idea. *See Voter Verified*, 887 F.3d at 1385.

I disagree with Plaintiff that the claims are directed to patent-eligible subject matter because they recite a "specific structural embodiment of a voting machine." (D.I. 157 at 19). First, the Federal Circuit in *Voter Verified* found similar system claims to be directed to patent-ineligible subject matter of the "concept of voting, verifying the vote, and submitting the vote for tabulation." *Voter Verified*, 887 F.3d at 1385.[4] Second, "whether a device is a tangible system" is not dispositive. *ChargePoint*, 920 F.3d at 770; *see also Yu*, 1 F.4th at 1044 n.2; *In re TLI Commc'ns LLC Pat. Litig.*, 823 F.3d 607, 611 (Fed. Cir. 2016). Third, the broad claim language used here would preempt the use of any voting machine that gave the voter the option of returning their ballot or directly depositing it for tabulation.

With respect to ballot handling options, the claims recite "a transport mechanism operable to transport the ballot through a ballot channel in accordance with the received voter instruction," which includes returning the ballot or depositing it in the ballot box. ('471 Patent, col. 22:60-67; *see also id.*, claim 24 ("a transport mechanism operable to transport the ballot through a ballot channel of the device")). The broad claim language regarding the transport mechanism is essentially functional and would cover any mechanism that would permit returning or ejecting the ballot to be done. *See ChargePoint*, 920 F.3d at 770 (noting that even if the specification provided a technical explanation, the claims were directed to patent-ineligible subject matter because the

---

[4] While not asserted in this case, claim 27 of the '471 Patent claims a method that recites the same concept as the ballot marking device in claim 24. As the Federal Circuit noted in *Voter Verified*, "While these claims encompass both methods and systems, we find there to be no distinction between them for § 101 purposes, as they simply recite the same concept." 887 F.3d at 1385.

claim language did not require those details). Similarly, I don't read the additional limitation of a "diverter" to make asserted claims 21, 24, and 25 directed to patent-eligible subject matter as the additional limitation merely describes directing a ballot into the ballot box.[5]

Plaintiff cites to *Sonos, Inc. v. D&M Holdings Inc.*, 2017 WL 971700 (D. Del. Mar. 13, 2017), and *Lazer IP, LLC v. Microchip Tech. Inc.*, 2022 WL 1801272 (D. Del. June 2, 2022), for support. Plaintiff argues that these cases found inventions to be directed to patent-eligible subject matter "[b]ecause the invention was intended to be used on a computer and perform actions that could not be accomplished mentally." (D.I. 157 at 14). I, however, find these cases to be distinguishable.

In *Sonos*, I found that the claims to be patent eligible subject matter because (1) a human could not perform the actions the device is said to perform, (2) "the method [was] directed to specific devices that are described and claimed in the patents," (3) the invention was "not simply a 'more efficient' method of doing something already done by humans." 2017 WL 971700, at *6. Unlike in *Sonos*, here the claimed invention goes to a more efficient method of voting and submitting a ballot. The invention claimed in the patent is not directed to a specific device, but, as noted above, is drafted broadly. For these reasons, I find *Sonos* to be distinguishable.

I am not persuaded that *Lazer IP* is an analogous case. While Plaintiff is correct that I found the claims of a user interface to be directed to patent eligible matter because the record did not show how the claimed invention could be performed "on paper or in someone's head," I also based my determination on the fact that "the claims [were] directed to a specific implementation of a solution to a problem in the software arts." *Lazer IP*, 2022 WL 1801272, at *3. I find the present

---

[5] "Diverter" was construed to mean "[a]n element separate from the transport mechanism that causes the ballot to deviate from one transport path to a different transport path." (D.I. 116). This construction was stipulated to by the parties. (D.I. 95).

case to be more analogous to the facts in *Voter Verified*, where a similar apparatus was determined to be directed to the steps of the voting process.

Therefore, I conclude that claims 16, 21, and 24-26 are directed to the abstract idea of allowing voters to have their ballot returned or deposited for tabulation.

### C. *Alice* Step 2

Because the claims are directed to an abstract idea, I advance to *Alice* step 2.

Defendant argues that the claims lack an inventive concept because "whether the elements of the claims are viewed in isolation or in combination with one another, there is no inventive concept . . . and thus nothing that transforms the abstract idea into patent-eligible subject matter." (D.I. 148 at 16). Defendant points to the fact that the claims recite "generic components," and claim a machine that is merely a replacement for a human operator. (*Id.*). Defendant contends that the hardware recited by the claims are all well understood as they are recited as such in the specification.

Plaintiff recites portions of the patent specification to argue that the claims include an inventive concept. I read Plaintiff, however, to be arguing that there are two potential inventive concepts: (1) providing the combination of ballot handling features (to eject the ballot or deposit it in a ballot box) and (2) integrating all the claim elements into one voting machine. (*Id.* at 16-18).

The choice of these two ballot handling options, however, cannot be the inventive concept, as it is the abstract idea. (*See* Section III.B *supra*). "[A] claimed invention's use of the ineligible concept to which it is directed cannot supply the inventive concept that renders the invention 'significantly more' than that ineligible concept." *BSG Tech LLC v. Buyseasons, Inc.*, 899 F.3d 1281, 1290 (Fed. Cir. 2018).

With respect to the second proposed inventive concept, Plaintiff contends that Defendant has not shown that the claimed transport mechanism and diverter were conventional at the time of the invention. (D.I. 157 at 14-15). Plaintiff argues that a transport mechanism that is configured to transport a ballot to an attached ballot box or to return the ballot to the voter was unlike anything in the prior art. (*Id.*). Likewise, Plaintiff contends that Defendant merely cites to one embodiment of a diverter in the specification but fails to allege the diverter was generic or that it was conventional in the context of the claims. (D.I. 157 at 15). Plaintiff argues that in addition to the elements being novel, the combination of the elements together supplies the inventive concept. (*Id.* at 17-18 (citing *Bascom Glob. Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341 (Fed. Cir. 2016))).

I agree with Defendant that the claims lack an inventive concept. Defendant cites to the '471 Patent specification to demonstrate the feed rollers (i.e., the transport mechanism) and motors for the diverter were conventional components. (*See* D.I. 148 at 16-17). The '471 Patent recites that feed rollers are "preferably conventional in design and construction." ('471 Patent, col. 18:42-43). Same with the motor for the diverter. (*Id.*, col. 19:29-33 ("[D]iverter 722 could be a mechanically operated gate, switched between an open and closed position (to open and close the entrance to the rear discharge chute) using a solenoid, stepper motor or other methods known in the art.")).[6] The specification makes it clear that these components are recognized as conventional.

---

[6] In its Reply Brief (D.I. 165 at 9 & n.1), Defendant cites to U.S. Patent No. 7,080,779 (the "'779 Patent") (*id.*, Ex. E), prior art which the '471 Patent cites, to demonstrate that the mechanical components are conventional and well-understood. This patent includes a transport mechanism in its claims and discusses the use of a diverter. ('779 Patent, col. 7:58-8:1 (discussing using ballot feed rollers and a solenoid operated gate to divert the ballot); 23:41-42 (claiming transport mechanism to receive ballot from voter); 23:63-64 (claiming a transport mechanism to return ballot to voter)). I do not consider the '779 Patent as Defendant did not cite it in its Opening Brief.

Plaintiff's argument that the configuration of the "full transport mechanism" to provide the ballot handling options was not "well-known, conventional, or routine" misses the mark because the claims themselves do not recite an unconventional or inventive configuration of the transport mechanism (or the diverter). For example, claim 16 recites using a transport mechanism operable to eject the ballot or deposit it into the ballot box, but the claim does not provide how the transport mechanism is configured, let alone how it is configured in an inventive or unconventional way, to achieve that result. Neither do claims 21 and 24-26 recite an unconventional way for configuring the diverter to direct the ballot to the box. Therefore, I find that the individual components, as recited in the claims, do not contain an inventive concept. *See Yu*, 1 F.4th at 1045 (noting the claimed hardware configuration, not just the specification, must contain the inventive concept).

I also find that the combination of claim elements is not an inventive concept sufficient to transform the claims into patent-eligible subject matter. As noted above, not only are these components individually conventional, but so is their incorporation into a ballot marking machine.

I find unavailing Plaintiff's argument that the integration of components to allow voters who lack sufficient manual dexterity and motor skills to directly deposit their marked ballots without assistance to be an inventive concept. "To save a patent at step two, an inventive concept must be evident in the claims." *RecogniCorp, LLC v. Nintendo Co.*, 855 F.3d 1322, 1327 (Fed. Cir. 2017). As Defendant points out, the claims of the invention do not address an inventive concept for achieving this result. The claims only recite using a transport mechanism (and a diverter for claims 21 and 24-26) that is operable to both deposit and return a ballot depending on the voter's choice. There are no technical details or aspects of these claim elements or the combination of these elements to convey an inventive concept in achieving the result. "This is simply an abstract-idea-based solution implemented with generic technical components in a

16

conventional way." *ChargePoint*, 920 F.3d at 775 (Fed. Cir. 2019) (internal quotation marks and citation omitted); *see also Yu*, 1 F.4th at 1045 (finding a claim that "is recited at a high level of generality and merely invokes well-understood, routine, conventional components to apply the abstract idea" fails *Alice* step 2).

Plaintiff analogizes this case to *Bascom* to argue that the combination of the elements here is the inventive concept. (D.I. 157 at 18). In *Bascom*, the patent at issue described a filtering system for computers. The Federal Circuit found an inventive concept "in the non-conventional and non-generic arrangement of known, conventional pieces." *Bascom*, 827 F.3d at 1350. Specifically, the Federal Circuit stated, "The inventive concept described and claimed in the '606 patent is the installation of a filtering tool at a specific location, remote from the end-users, with customizable filtering features specific to each end user." *Id.*

I find *Bascom* to be distinguishable. As Plaintiff notes, the Federal Circuit found the ordered combination of elements to contain an inventive concept as the claimed invention installed a filtering tool at a specific location. (D.I. 157 at 18; *Bascom*, 827 F.3d at 1350). In this case, the claims recite the incorporation of the elements, which were known and conventional, but they do not recite or detail how they are combined or arranged in a non-conventional or non-generic manner. For example, claims 16 and 24 list the components, but do not provide detail of a specific arrangement or how the components are combined in a novel way, unlike the filtering tool in *Bascom*. Therefore, I find that the patent does not recite an inventive concept in the combination of the claimed elements.

For these reasons, I find that the asserted claims do not supply an inventive concept at *Alice* step two.

## IV. CONCLUSION

I grant Defendant's motion for judgment on the pleadings because the asserted claims of the '471 Patent are directed to an abstract idea and do not recite an inventive concept.

An appropriate order will issue.