IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ELECTION SYSTEMS & SOFTWARE,<br><br>    Plaintiff,<br><br>    v.<br><br>SMARTMATIC USA CORP.,<br><br>    Defendant. | Civil Action No. 18-01259-RGA |

MEMORANDUM ORDER

Before me is Defendant Smartmatic's motion to declare the case exceptional and to award attorneys' fees, estimated to be $4,100,000, pursuant to 35 U.S.C. § 285. (D.I. 247; D.I. 248 at 13). I have considered the parties' briefing. (D.I. 248, 254, 261). For the reasons set forth below, this motion is DENIED.

I.    **BACKGROUND**

Plaintiff Election Systems & Software sued Defendant Smartmatic alleging infringement of U.S. Patent Nos. 8,096,471 ("the '471 patent") and 7,753,273 ("the '273 patent"). (D.I. 1 at 11–14). In 2019, Defendant filed IPR petitions with the PTAB challenging both patents. (D.I. 41 at 1 of 3). The PTAB granted Defendant's petitions in July and August of 2019 and instituted an IPR, during which the case was stayed in this Court. (*Id.*; D.I. 42). During IPR proceedings, Plaintiff cancelled claims 1–15 and 17–20 of the '471 patent and added substitute claims 21–31. (D.I. 49 at 2 of 5; D.I. 49-2 at 5, Ex. B (Final Written Decision); *see* IPR2019-00531, Paper 25 (PTAB Feb. 18, 2020)). The PTAB found original claim 16 and substitute claims 21–29 of the '471 patent not to be unpatentable. (D.I. 49 at 2 of 5; D.I. 49-2 at 45). Regarding the '273 patent, the PTAB found claims 1–3, 5–7, 9–11, 13–15, and 17–19 to be unpatentable and granted

1

Plaintiff's motion to amend the patent with substitute claims 20–31. (D.I. 49 at 1 of 5; D.I. 49-1 at 87, Ex. A (Final Written Decision); *see* D.I. 249-2 at 2–6 (Appendix A to IPR2019-00527)). Smartmatic appealed the IPR decisions to the Federal Circuit, but the parties later moved jointly to voluntarily dismiss the appeals. *Smartmatic USA Corp. v. Election Sys. & Software*, No. 21-1037 (Fed. Cir. Sept 7, 2021), D.I. 38; *Smartmatic USA Corp. v. Election Sys. & Software*, No. 21-1611 (Fed. Cir. July 2, 2021), D.I. 15.

The stay in this Court was lifted following the culmination of IPR proceedings. (D.I. 54). After claim construction, Plaintiff voluntarily dismissed all claims for infringement of the '273 patent from the case and decided to pursue only claims 16, 21, and 24–26 of the '471 patent at trial. (D.I. 119; D.I. 148 at 2). Defendant then moved for judgment on the pleadings that the '471 patent was not directed to patent-eligible subject matter under section 101. (D.I. 147). I granted Defendant's motion and entered a judgment in favor of Defendant. (D.I. 244; D.I. 245). Defendant subsequently filed this motion for attorneys' fees under 35 U.S.C. § 285. (D.I. 247). Plaintiff also appealed to the Federal Circuit, which affirmed without opinion in October 2024. (D.I. 253; D.I. 262); *Election Sys. & Software, LLC v. Smartmatic USA Corp.*, No. 23-1949 (Fed. Cir. Oct. 15, 2024), D.I. 43.

## II. LEGAL STANDARD

The Patent Act provides, "The court in exceptional cases may award reasonable attorney fees to the prevailing party." 35 U.S.C. § 285. Under the statute there are two basic requirements: (1) that the party seeking fees is a "prevailing party" and (2) that the case is "exceptional." The Supreme Court defined an "exceptional" case as "simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case

was litigated." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014). "District courts may determine whether a case is 'exceptional' in the case-by-case exercise of their discretion, considering the totality of the circumstances." *Id.* The Supreme Court has provided a non-exclusive list of factors for district courts to consider in deciding whether a case is exceptional, including frivolousness, deterrence, compensation, motivation, and objective unreasonableness in the factual and legal components of the suit. *Id.* at 554 n.6.

The moving party bears the burden of proof by a preponderance of the evidence. *Id.* at 557–58.

## III. DISCUSSION

### A. "Prevailing party"

A party is a prevailing party under section 285 if it "effects or rebuffs a plaintiff's attempt to effect a 'material alteration in the legal relationship between the parties.'" *Raniere v. Microsoft Corp.*, 887 F.3d 1298, 1306 (Fed. Cir. 2018) (quoting *CRST Van Expedited, Inc. v. E.E.O.C.*, 578 U.S. 419, 431 (2016)). "This change must be marked by 'judicial *imprimatur*.'" *CRST*, 578 U.S. at 422 (citing *Buckhannon Bd. & Care Home, Inc. v. W. Virginia Dep't of Health and Hum. Res.*, 532 U.S. 598, 605 (2001)).

Plaintiff does not dispute that Defendant is the prevailing party. The judgment I entered in favor of Defendant invalidating the remaining asserted claims of the '471 patent bears judicial *imprimatur*. (D.I. 245). Therefore, I find that Defendant is a prevailing party for the purposes of 35 U.S.C. § 285.

### B. "Exceptional"

A case may be exceptional due to the unreasonable manner of litigation or the substantive weakness of a party's litigating position. *See Octane Fitness*, 572 U.S. at 554. Defendant does

not argue that Plaintiff was unreasonable in its manner of litigation other than its choice to continue to pursue weak claims.

Defendant argues that "no reasonable litigant could have expected success on the merits of [Plaintiff's] § 101 arguments," based on governing law and Plaintiff's knowledge after successfully invalidating a "similar" but unrelated voting system patent on section 101 grounds in another case. (D.I. 248 at 4–5); *Voter Verified Inc. v. Election Sys. & Software LLC*, 2017 WL 3688148, at *2 (N.D. Fla. Mar. 21, 2017), *aff'd*, 887 F.3d 1376 (Fed. Cir. 2018). Defendant notes that courts have awarded attorneys' fees "where a patentee advanced meritless § 101 arguments." (D.I. 248 at 6 (citing *Inventor Holdings, LLC v. Bed Bath & Beyond, Inc.*, 876 F.3d 1372, 1377–78 (Fed. Cir. 2017) (finding the district court acted within the scope of its discretion in finding exceptionality based on weakness of plaintiff's section 101 arguments))).

Plaintiff denies that its assertion of the patents following *Voter Verified* was unreasonable. (D.I. 254 at 3, 7). Plaintiff points out that courts in this district have "been reluctant to find exceptional case status based on eligibility determinations under § 101 given the uncertainty of the law following *Alice*." (*Id.* at 6 (citing *Broadsoft, Inc. v. CallWave Commc'ns, LLC*, 2019 WL 3750817, at *2, *6 (D. Del. Aug. 8, 2019))). Further, though both the patents in this case and those in *Voter Verified* claimed voting systems, Plaintiff argues that "the claims at issue in *Voter Verified* involved 'human cognitive actions' whereas the claims of the '471 patent required specific physical components integrated into a single unit." (*Id.* at 8 (citing D.I. 157 at 19–20)).

4

Defendant argues that Plaintiff's infringement theories based on the '273 patent were objectively unreasonable because all asserted claims—claims 4, 8, 12, 16, and 20–31[1]—required a "center push-button switch," but Plaintiff's device did not include a "center push-button" on its keypad. (D.I. 248 at 8–9; *see* '273 patent at 18:42–45, 19:9–12, 19:42–45, 20:31–34; D.I. 249-2 at 2–6). Defendant notes that Plaintiff "could not have relied on any investigation or analysis" of Defendant's actual product "because it rushed to file suit . . . long before Smartmatic had ever built or sold any of the accused [devices]. (D.I. 248 at 9–10). Defendant argues Plaintiff then "insisted on asserting patent infringement claims regarding the '273 patent for years" despite later awareness of the device's actual features. (*Id.* at 10).

Plaintiff counters that, despite changes to the final design, Plaintiff's infringement contentions were not unreasonable because Defendant made an "offer for sale" and "sale" of a design with a center button when its contract with L.A. County was executed. (D.I. 254 at 4, 13). Plaintiff also contends that Defendant "produced numerous 'core technical documents' during discovery," both before and after IPR proceedings, "that had the accused key-pad configuration." (*Id.* at 13, 17–18).

Considering the totality of the circumstances, I cannot find that Plaintiff's case was so exceptionally weak such that Defendant is entitled to attorneys' fees under section 285.

The Patent Act defines infringement as both "offers to sell" and actual sales of patented inventions. 35 U.S.C. § 271. As Plaintiff tells it, Plaintiff filed suit in August 2018—after Defendant's contract with L.A. County had been executed but before Defendant had begun

---

[1] Claims 20 through 31 are replacement claims for claims 1, 2, 3, 9, 10, 11, 13, 14, 15, 17, 18, and 19. (D.I. 249-2 at 2–6 (Appendix A to IRP2019-00527)).

production.[2] (D.I. 254 at 16). Defendant then sought to change its design in September 2018, for which it required approval from L.A. County. (*Id.* at 16). Defendant produced its initial technical production in July 2019. (D.I. 248 at 9). Defendant contends these documents showed that the device did not have a center button, which is a required limitation of the '273 patent. (*Id.*). But Plaintiff notes that "numerous documents produced by Smartmatic as part of its 'core technical documents'" did have the "accused key-pad configuration." (D.I. 254 at 15 n.3 (citing D.I. 252-6 at 6–16)).

Regardless, Defendant filed a petition for IPR on both patents in January 2019. (D.I. 42). This case was stayed in this Court between August 2019 and May 2021 while the PTAB conducted IPR proceedings. (*Id.*; D.I. 54). I ruled on claim construction in July 2022. (D.I. 108). Plaintiff dismissed Count II of its Complaint alleging infringement of the '273 patent three days after the claim construction order issued. (D.I. 116; D.I. 118). Pursuing a patent infringement claim that depends upon a favorable claim construction ruling is hardly extraordinary. After the adverse claim construction ruling, Plaintiff promptly dropped the '273 patent. Until then, Plaintiff had a reasonable basis to believe that Defendant had infringed the patent with an "offer to sell," which had been accepted. There was enough evidence that pointed to potential infringement that Plaintiff did not act frivolously by continuing to assert the '273 patent while it did.

It is true that "a party cannot assert baseless infringement claims and must continually assess the soundness of pending infringement claims[.]" *Taurus IP, LLC v. DaimlerChrysler Corp.*, 726 F.3d 1306, 1328 (Fed. Cir. 2013). It is within my discretion to find a case exceptional on the grounds of a plaintiff's meritless section 101 argument so as to "deter

---

[2] The dollar value of the contract with L.A. County was very substantial.

similarly weak arguments in the future." *Inventor Holdings*, 876 F.3d at 1377–78. On the rare (and I believe only) occasion that I have done so, however, the patent asserted was obviously unpatentable. *See Finnavations LLC v. Payoneer, Inc.*, 2019 WL 1236358, at *1 (D. Del. Mar. 18, 2019) ("I have rarely been more confident in the patent ineligibility of a set of claims or more confident in the unreasonableness of a Plaintiff's decision to sue on a patent."). The issue was raised on a motion to dismiss, and my memory is that the first time I looked at the patent, within a matter of minutes I was sure that it was unpatentable.

The claims at issue in *Finnavations*, like those in *Inventor Holdings*, were directed to financial concepts and were clearly unpatentable because they were similar to those claims found unpatentable in *Alice* itself. *Finnavations*, 2019 WL 1236358, at *1 ("[P]atents which look like *Alice* are ineligible."); *Inventor Holdings*, 876 F.3d at 1379 ("[T]he patent claims here are directed to a fundamental economic practice, which *Alice* made clear is, without more, outside the patent system.").

By contrast, the '471 patent is directed to "a ballot marking device" and "associated method." Though I ultimately found that the claims of the '471 patent were "directed to the abstract idea of allowing voters to have their ballot returned or deposited for tabulation" and were analogous to those found unpatentable in *Voter Verified*, Plaintiff's arguments were not frivolous. (D.I. 243 at 11, 14). I found that the claims of the '471 patent "did not recite or detail" how the conventional elements were "combined or arranged in a non-conventional or non-generic way," but other cases have demonstrated that novel configurations of conventional elements can contain an inventive concept. (*Id.* at 17); *see, e.g., Bascom Glob. Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1350 (Fed. Cir. 2016) (determining the inventive

concept claimed was "the installation of a filtering tool at a specific location, remote from the end-users, with customizable filtering features specific to each end user").

When a party is seeking an exceptional case declaration, one of the difficulties for me is avoiding hindsight bias. In this case, I think there are two good indicators that Plaintiff's pursuit of the case was reasonable. First, I've reread my Markman opinion. (D.I. 108). I rejected Plaintiff's argument on the one disputed claim, but I did not do it summarily and I did not criticize Plaintiff for the argument it was making. The Markman opinion suggests to me that, while I was confident Plaintiff's argument should lose, I did not think it was an unreasonable argument to make. It was a run-of-the-mill losing argument; it does not stand out from the crowd. Once I ruled, Plaintiff immediately dismissed the patent at issue. Second, in regard to the other patent, I consider not only Plaintiff's actions but Defendant's actions. *Voter Verified* was decided by the District Court in 2017 and in the Court of Appeals on April 20, 2018. This case was filed August 17, 2018. Defendant did not file its motion for judgment on the pleadings until more than four years later,[3] on September 28, 2022. (D.I. 147). Defendant was represented by a well-respected international law firm. If it was so apparent that section 101 was a winner, why did Defendant not move on it before it did?[4]

Looking at the totality of the circumstances, I see neither sufficient "frivolousness," bad faith "motivation," or "objective unreasonableness," nor circumstances suggesting a need to "advance considerations of compensation and deterrence." *Octane Fitness*, 572 U.S. at 554 n.6. I find that this is not an "exceptional" case. 35 U.S.C. § 285.

---

[3] As previously noted, this case was stayed for nearly two of those four years, from August 14, 2019 (D.I. 42) to May 11, 2021 (D.I. 54).

[4] I note too that the section 101 opinion is longer than is usual for me when I grant a section 101 motion. I think that is because I did not think it was an open-and-shut case.

IV.  **CONCLUSION**

For the reasons discussed above, I **DENY** Defendant's motion for attorneys' fees under 35 U.S.C. § 285. (D.I. 247).

IT IS SO ORDERED.

Entered this 28th day of February, 2025

_____
United States District Judge